[ORAL ARGUMENT NOT YET SCHEDULED]

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Make the Road New York, *et al.*, | ) ) ) | |
| Plaintiffs-Appellees, | ) ) ) | |
| v. | ) ) ) | No. 19-5298 |
| Kevin McAleenan, *et al.*, | ) ) ) | |
| Defendants-Appellants. | ) ) | |

**UNOPPOSED MOTION TO EXPEDITE APPEAL**

The federal government respectfully requests that the Court establish an expedited schedule for briefing and argument in the above-captioned appeal. Plaintiffs do not object to the schedule proposed herein.

The district court preliminarily enjoined nationwide the Secretary of Homeland Security's enforcement of a notice published in the Federal Register, "Designating Aliens for Expedited Removal," 84 Fed. Reg. 35,409 (July 23, 2019), invoking the Secretary's authority to "designate[]" in his "sole and unreviewable discretion" certain inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period

immediately prior to the date of the determination of inadmissibility," as subject to expedited removal from this country. 8 U.S.C. § 1225(b)(1)(A)(iii).

This Court should expedite this appeal for three reasons. First, Congress has explicitly provided that in cases such as this, challenging the "implementation" of the expedited removal statute, 8 U.S.C. § 1225(b)(1), "[i]t shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any case considered under this paragraph." 8 U.S.C. §§ 1252(e)(3)(A), (D). Second, the district court's decision rests on serious errors of law, including a basic misunderstanding concerning the applicability of the Administrative Procedure Act (APA) to the designation, and so warrants this Court's prompt attention. Third, the district court's order has caused and continues to cause significant disruption to the Executive Branch's authority to regulate immigration and the admission of aliens to this country. The injunction prevents the Executive Branch from employing "one of the few congressionally authorized measures available" to remove the thousands of aliens arriving in this country illegally and absconding into the interior on a daily basis, *see Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019), thereby undermining the government's efforts to combat "the ongoing crisis at the southern border," including "the large number of aliens who enter[] illegally and [are] apprehended and detained within the interior of the United States," to choose

how to contend with the "increasing number of aliens ... apprehended within the United States," and to "ensure the security of the Nation's borders," 84 Fed. Reg. at 35,411. Those harms are precisely the ones that the Secretary's notice sought to address. *See id.*

The government proposes the following briefing schedule:

December 20, 2019: Opening Brief for the Defendants-Appellants

December 27, 2019: Amicus Briefs Supporting Reversal (or in Support of Neither Party)

January 24, 2020: Response Brief for Plaintiffs-Appellees

January 31, 2020: Amicus Briefs Supporting Affirmance

February 14, 2020: Reply Brief for Defendants-Appellants

The government requests that the Court hear argument during the earliest possible date in February. And the government requests that the Court issue its decision at the earliest possible time so that, after this Court's decision, the losing party would be afforded an opportunity to decide whether to ask the Supreme Court to consider the case as soon as possible during the October 2020 Term.

## STATEMENT

Background. Congress has authorized the Department of Homeland Security (DHS) to summarily remove from the United States certain inadmissible aliens who have arrived at or illegally crossed the border without inspection and have no basis

to obtain admission. *See* 8 U.S.C. § 1225(b)(1). Under this summary-removal mechanism—known as "expedited removal"—an alien "who is arriving in the United States" who lacks valid entry documentation or makes material misrepresentations shall be "order[ed] ... removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7); *see also Am. Immigration Lawyers Ass'n v. Reno (AILA)*, 199 F.3d 1352, 1360 (D.C. Cir. 2000) (discussing expedited removal regime). Congress also delegated to the Executive Branch the authority to expand the scope of expedited removal beyond those arriving at the border. The Secretary of Homeland Security "may ... designate[]" certain inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" as subject to expedited removal, and that designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii).

Congress provided that judicial review of certain systemic challenges to the implementation of section 1225(b)(1) is "available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of (i) whether [section 1225(b)(1)], or any regulation issued to

4

implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary of Homeland Security] to implement such section, is not consistent with applicable provisions of [the INA] or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A). Such actions must be brought "no later than 60 days after the challenged section, regulation, directive, guideline, or procedure ... is first implemented." *Id.* § 1252(e)(3)(B).

Prior to the designation at issue in this appeal, certain aliens arriving by land and not entitled to be admitted to the country could be removed under expedited removal procedures if apprehended within 14 days of crossing a land border and 100 air miles from that border. Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877 (Aug. 11, 2004); *see* 8 U.S.C. §§ 1182(a)(6)(C), (a)(7).

On July 23, 2019, the Acting Secretary of Homeland Security invoked his authority under 8 U.S.C. § 1225(b)(1)(A)(iii)(I) and designated as subject to expedited removal "aliens determined to be inadmissible under [8 U.S.C. §§ 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States, and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility." 84 Fed. Reg. at 35,409. The Acting Secretary noted "the large

5

number of aliens who entered illegally and were apprehended and detained within the interior of the United States, and DHS's insufficient detention capacity both along the border and in the interior of the United States," *id.* at 35,411, and explained that the designation would allow DHS "to use more effectively and efficiently its limited resources to fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders." *Id.* The designation also discussed the statutory and regulatory procedures to which aliens subject to expedited removal are entitled. *Id.* The designation was made without advance notice-and-comment procedures, although it requested comments within 60 days from those interested.

District-Court Proceedings. In a suit brought by three organizations before the designation had been applied to a single alien who could have been subject to it, the district court preliminarily enjoined the designation nationwide, on the grounds that DHS had not promulgated the designation using "notice-and-comment procedure," Op. 71-76, and that the designation was arbitrary and capricious because the Secretary did not consider the alleged "flaws in the pre-existing scheme" identified by Plaintiffs and amici through extra-record materials, such that DHS acted "irrational[ly]" by not considering "downsides of adopting a policy that, in many respects, could significantly impact people's everyday lives." Op. 87-90; *see also* Op. 83-93.

6

The district court then issued a nationwide preliminary injunction. Op. 96-102. The district court held that the equities support an injunction because of the "substantially increased risk of ... substantial harm Plaintiffs' members" faced from expedited removal, Op. 98-99; *see also* Op. 96-102, and that a nationwide injunction was appropriate, because the APA required such relief by providing that courts should "'hold unlawful and set aside' the facially defective agency action." Op. 109 (quoting 5 U.S.C. § 706(2)); *see also* Op. 107-120. The court also concluded that this Court's precedents governing final relief following summary judgment required such "'programmatic' relief that affects the rights of parties not before the court," even at the preliminary injunction stage. Op. 110 (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). The court further held that neither 8 U.S.C. § 1252(e)(1) (which generally bars "declaratory, injunctive or other equitable relief") nor 8 U.S.C. § 1252(f) (which bars injunctive relief other than as to aliens in removal proceedings) "overrides traditional understandings of what is supposed to happen when a federal court invalidates an agency rule as violative of procedural mandates of the APA." Op. 11 & n.37.

## ARGUMENT

The federal government respectfully asks this Court to adopt the proposed expedited schedule, in light of Congress's provision that such appeal be expedited to the maximum extent possible, the clear errors of law on which the district court's

decision rests, and the importance of this appeal and the harm caused to the government and the public by delay.

*First*, Congress has explicitly provided that in cases such as this, challenging the "implementation" of the expedited removal statute under 8 U.S.C. § 1252(e)(3), "[i]t shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and *to expedite to the greatest possible extent* the disposition of any case considered under this paragraph." 8 U.S.C. §§ 1252(e)(3)(A), (D) (emphasis added). Given the text of section 1252(e)(3)(D), this Court's Circuit Rules require expedited treatment. Circuit Rule 47.2, titled "Appeal Expedited By Statute ... [,]" provides that once the appealing party "advise[s] the clerks of this court" that an appeal must be expedited by Act of Congress, "[t]he clerk of this court will thereupon enter the appeal upon the docket and prepare an expedited schedule for briefing and argument." Circuit Rule 47.2(A). Section 1252(e)(3)(D) is not cited in Circuit Rule 47.2, but this Circuit's Handbook of Practice and Internal Procedures provides that "[t]he Court accords expedited consideration to a case when required to do so by statute," that "counsel seeking expedited review must file a [formal] motion" only if "expedition is not required by statute," and that the specific statutes referenced in Circuit Rule 47.2 are "not exhaustive." Handbook of Practice and Internal Procedures, III.J, VIII.B. Accordingly, because section 1252(e)(3)(D) required expedition by statute, this

8

Court's Local Rules require expedited treatment, and the Court should adopt the schedule proposed by the government above.

*Second*, the district court's ruling rests on significant errors of law arising from its erroneous conclusion that the APA applies to the Secretary's designation decision. Where "Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm," a "subsequent statute" may supersede APA procedures. *See Asiana Airlines v. F.A.A.*, 134 F.3d 393, 397 (D.C. Cir. 1998) (citing 5 U.S.C. § 559). That is the case here, where section 1225(b)(1)(A)(iii)(I) provides that the Secretary "may apply" section 1225(b)(1)(A)(i)-(ii) to certain aliens "as designated by the [Secretary, and] [s]uch designation shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time."[1] Notice-and-comment procedures are incompatible with the text of the statute and the clear goal underlying it—that the Secretary be able to act with dispatch to address the problem presented by large numbers of aliens entering illegally when they have no legal entitlement whatsoever to remain in the country. "[W]hen Congress creates [such] a comprehensive, freestanding scheme with particularized procedures that are different and unique from those provided by the APA," section 553 does not apply. *Envtl. Integrity Project v. U.S. EPA*, 177 F.

---

[1] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary of Homeland Security. *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

9

Supp. 3d 36, 43 (D.D.C. 2016); *see Bremer v. Johnson*, 834 F.3d 925, 930-31 (8th Cir. 2016) ("[b]y granting 'sole and unreviewable discretion' to make the [designation], Congress conferred on the Secretary the 'power to make decisions without anyone else's advice and consent,'" such that "a notice-and-comment" APA claim is barred); *accord Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018) (similar). Indeed, the three prior expedited removal designations have also been issued without advanced notice and comment—and with an immediate effective date. *See* 84 Fed. Reg. at 35,410-11 (citing examples).

Likewise, the court erred applying the APA's arbitrary-and-capricious standard to the Secretary's decision. Given the broad discretion section 1225(b)(1)(A)(iii) vests in the Secretary, that provision is "drawn" such that this court has "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Nothing about the word "designate," coupled with "sole and unreviewable discretion," lends itself to any meaningful standard the court may apply. There are "no legal norms pursuant to which to evaluate the challenged action," and Plaintiffs have identified no constraints on the agency's case-by-case decisions to institute expedited removal aside from the outer limits imposed by the statute. The district court thus had "no concrete limitation[] to impose on the agency's exercise of discretion." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011). Moreover, by granting the Secretary

10

"sole and unreviewable discretion" to make the designation, Congress did not just confer discretion over the "ultimate decision," but also "the steps that are a necessary and ancillary part of reaching the ultimate decision," *Struniak v. Lynch*, 159 F.Supp.3d 643, 654 (E.D. Va. 2016), including "standards by which [the Secretary] reaches a decision" and "methods" for adopting standards, *Gebhardt*, 879 F.3d at 987, the "manner in which" Secretary "exercises his discretion," *Bremer*, 834 F.3d at 930, "what evidence the agency requires or considers," *id.*, the application of "Congress's" direction to take discretionary action, *Am. Soc. of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 452 (7th Cir. 2002), "the [agency's] reasons," *HP Inc. v. MPHJ Tech. Invs. LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016), "*how* the Secretary exercises—or has exercised" his discretion, *Gebhardt*, 879 F.3d at 987, or other aspects of "the Secretary's decisional process" or "the processes that the Secretary uses" in reaching a decision. *Bourdon v. United States Dep't of Homeland Sec. (DHS)*, --- F.3d ---, 2019 WL 4865825, at *5 (11th Cir. Oct. 3, 2019). Accordingly, the district court's decision is contrary to the weight of authority from other courts of appeals and rests on significant errors of law.

*Third*, a failure to consider the appeal expeditiously could cause the very same serious adverse effects the designation is designed to combat. To start, the injunction profoundly harms the government and the public by preventing the government's carefully delineated scheme for allocating "limited government resources" in the

11

face of "increasing number of aliens ... apprehended within the interior of the United States." 84 Fed. Reg. at 35,411. Aliens subject to expedited removal may be removed "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). But the district court's injunction eliminates that authority for a large class of aliens who entered illegally and have been present for less than two years. Instead, under the district court's injunction, such aliens are entitled to far more time-consuming full removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1225(b)(2)(A). Moreover, aliens subject to such full removal proceedings must "be detained." *Id.* That requirement exacerbates the precise systemic harm the government sought to mitigate—"DHS's insufficient detention capacity," 84 Fed. Reg. at 35,411, by forcing the government to detain aliens that would otherwise be removed expeditiously from the country as Congress intended. As the Secretary explained, that state of affairs forces the government to detain aliens "encountered in the interior of the United States" for, on "average," "51.5 days," compared to "11.4 days" for aliens "placed in expedited removal." *Id.* That in turn prevents the government from achieving the very purpose of the designation: to "more quickly make available additional ICE bed space, which can be used for additional interior arrests and removals." *Id.* And that is further exacerbated by the unprecedented backlog of "pending immigration cases," which as of June, 2019 was "909,034," *id.*, and has since reached nearly one million. *See* Executive Office For Immigration Review

12

Adjudication Statistics, Pending Cases, *available at* https://www.justice.gov/eoir/page/file/1060836/download (last accessed November 13, 2019).

The injunction also "takes off the table one of the few congressionally authorized measures available" to remove the thousands of aliens arriving in this country illegally and absconding into the interior on a daily basis. *See Innovation Law Lab*, 924 F.3d at 510. The injunction thus undermines the government's efforts to combat "the ongoing crisis at the southern border" and "ensure the security of the Nation's borders," by preventing the government from "us[ing] more effectively and efficiently its limited resource." 84 Fed. Reg. at 35,411. The Secretary concluded the designation was necessary to combat that crisis, *see id.*, and the injunction dramatically undermines the "public[s] interest in effective measures to prevent the entry of illegal aliens" at the Nation's borders *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981), as implemented by the public's chosen representatives through section 1225(b)(1) and the Executive Branch.

Finally, the Secretary concluded that the designation was necessary to combat alien smuggling that circumvents prior designations under section 1225(b)(1)(B)by relying on "'safe houses' that are located more than 100 miles from the nearest land border." 84 Fed. Reg. at 35,411-12. The injunction prevents the government from applying expedited removal to aliens found on the interior, thereby encouraging the very illegal entry Congress sought to end through expedited removal. The notice

13

recounts incidents in which DHS encountered aliens more than 100 miles from the border in states on the southern border who cannot, under the current regime held in place by the injunction, be subjected to expedited removal, "limiting the availability of an important authority that Congress has granted to DHS for quickly and efficiently removing certain inadmissible aliens." 84 Fed. Reg. at 35,412. Exercising its expertise and judgment in immigration matters, DHS determined that the designation "will reduce incentives not only to enter unlawfully but also to attempt to travel quickly into the interior of the United States in an effort to avoid the application of expedited removal" under the previously limited scope of expedited removal. *Id.* The injunction ensures that states of affairs continues during the direction of this appeal, thereby undermining a core purpose of expedited removal: to "expedite the removal from the United States of aliens who indisputably have no authorization to be admitted." *AILA*, 199 F.3d at 1355.

In sum: The preliminary-injunction order at issue is governed by a statute requiring expedited treatment of this appeal. That alone warrants expedited treatment. Expedited treatment is further warranted because the injunction rests on serious errors of law and is inflicting profound harm on the government and the public.

## CONCLUSION

The Court should expedite consideration and resolution of this appeal.

14

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

KATHRYNE GRAY
ARCHITH RAMKUMAR
Trial Attorneys

Dated: November 15, 2019            *Attorneys for Defendants*

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

>By: */s/ Erez Reuveni*
>EREZ REUVENI
>Assistant Director
>United States Department of Justice
>Civil Division

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27 because it contains 3166 words. This motion also complies with the typeface and the type-style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

/s/ Erez Reuveni
EREZ REUVENI

1