**No. 19-5298**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

MAKE THE ROAD NEW YORK,
*et al.*,
*Plaintiffs-Appellees*,

*v.*

CHAD WOLF, *et al.*,
*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 18-cv-2369
The Hon. Ketanji Brown Jackson

**BRIEF FOR THE APPELLANTS**

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Phone: (202) 307-4293
e-Mail: erez.r.reuveni@usdoj.gov

*Attorneys for Defendants-Appellants*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### (A)    Parties and Amici

The Plaintiffs-Appellees are Make the Road New York, La Union Del Pueblo Entero, and WeCount!

The Defendants-Appellants are Chad Wolf, in his official capacity as Acting Secretary of the Department of Homeland Security; Matthew Albence, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; Kenneth Cuccinelli, in his official capacity as Acting Director of United States Citizenship and Immigration Services; Mark Morgan, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection; and William Barr, in his official capacity as Attorney General of the United States.

The follow parties participated as amici in district court: the States of California, Connecticut, Delaware, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Vermont, Virginia, and Washington, and the District of Columbia.

### (B)    Rulings under Review

The rulings under review are the opinion and order entered on September 27, 2019 (Dkt. Nos. 40, 41).

**(C)   Related Cases**

This case has not previously been before this Court.  Similar issues are presented in *Centro Presente, Inc. v. Wolf*, No. 19-cv-2369 (D.D.C.) (Jackson, K.B., J.), pending before the same district judge.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iv

GLOSSARY OF ABBREVIATIONS................................................xiv

INTRODUCTION.............................................................................1

STATEMENT OF JURISDICTION .................................................5

STATUTES AND REGULATIONS..................................................6

STATEMENT OF THE ISSUES ......................................................6

STATEMENT OF THE CASE...........................................................6

     A.    **Expedited Removal** ................................................. 6

     B.    **Prior Designations**................................................. 9

     C.    **The July 23 Designation** .................................... 11

     D.    **Proceedings Below** ............................................. 13

SUMMARY OF THE ARGUMENT..............................................17

STANDARD OF REVIEW .............................................................21

ARGUMENT ...................................................................................22

I.     **The District Court Lacked Jurisdiction Over This Case**........................22

II.    **The District Court Erred When It Concluded that the Secretary was Required to Engage in Notice-and Comment Rulemaking.** ...................32

III.   **The District Court Erred in Concluding that the Designation was Arbitrary and Capricious The District Court Erred in Concluding that the Designation was Arbitrary and Capricious**........................................41

IV.   **The District Court Erred in Entering a Universal Injunction Extending to Non-Parties.** ........................................................................47

**CONCLUSION**.................................................................. **67**

**RULE 32 CERTIFICATION**...................................................

**CERTIFICATE OF SERVICE** ...............................................

# TABLE OF AUTHORITIES

## CASE LAW

*Alaka v. Att'y Gen. of U.S.*,
  456 F.3d 88 (3d Cir. 2006) ........................................................................ 30, 32

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  934 F.3d 649, 667-68 (D.C. Cir. 2019) ............................................................ 45

*Am. Soc. of Cataract & Refractive Surgery v. Thompson*,
  279 F.3d 447 (7th Cir. 2002) ............................................................................ 43

*American Immigration Lawyers Ass'n v. Reno*,
  18 F. Supp. 2d 48 (D.D.C. 1998), aff'd, 199 F.3d 1352 (D.C. Cir. 2000) ........... 28

*American Immigration Lawyers Ass'n v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) ....................... 1, 3, 18, 23, 26, 27, 28, 29, 52, 53

*Amgen, Inc. v. Smith*,
  357 F.3d 103 (D.C. Cir. 2004) ............................................................... 29, 34, 43

*Asiana Airlines v. FAA*,
  134 F.3d 393 (D.C. Cir. 1998) .......................................................................... 33

*Assoc. of Flight Attendants-CWA, AFL-CIO v. Huerta*,
  785 F.3d 710 (D.C. Cir. 2015) .......................................................................... 35

*Bakran v. Sec'y, United States Dep't of Homeland Sec.*,
  894 F.3d 557 (3d Cir. 2018) ....................................................................... 30, 42

*Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*,
  814 F.3d 481 (1st Cir. 2016) ............................................................................ 30

*Bourdon v. DHS*,
  940 F.3d 537 (11th Cir. 2019) .................................................................. 5, 20, 43

*Bowles v. Russell*,
  551 U.S. 205 (2007) ........................................................................................ 54

v

*Bremer v. Johnson,
  834 F.3d 925 (8th Cir. 2016) .......................................... 4, 18, 33, 43

California v. Azar,
  911 F.3d 558 (9th Cir. 2018) ................................................. 57

Camp v. Pitts,
  411 U.S. 138 (1973) ............................................................. 46

*Chamber of Commerce of U.S. v. S.E.C.,
  443 F.3d 890, 908 (D.C. Cir. 2006) ......................................... 38, 40

Chaplaincy of Full Gospel Churches v. England,
  454 F.3d 290 (D.C. Cir. 2006) ............................................. 50, 51

Chrysler Corp. v. Brown,
  441 U.S. 281 (1979) ............................................................. 35

Cisneros v. Alpine Ridge Group,
  508 U.S. 10, (1993) ............................................................. 31

Citizens to Preserve Overton Park, Inc. v. Volpe,
  401 U.S. 402 (1971) ............................................................. 46

*Clarian Health West, LLC v. Hargan,
  878 F.3d 346 (D.C. Cir. 2017) ............................................. 34, 36

Coal. for Parity, Inc. v. Sebelius,
  709 F. Supp. 2d 10 (D.D.C. 2010) ............................................. 37

Davis v. Pension Ben. Guar. Corp.,
  571 F.3d 1288 (D.C. Cir. 2009) ............................................... 22

*Dep't of Commerce v. New York,
  139 S. Ct. 2551 (2019) ....................................................... 41, 46

*EarthLink, Inc. v. F.C.C.,
  462 F.3d 1 (D.C. Cir. 2006) ................................................... 39

*East Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ......................................................... 49

*El-Khader v. Monica*,
  366 F.3d 562 (7th Cir. 2004) ......................................................... 32

*\*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ..................................................................... 45

*Florida Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ..................................................................... 46

*\*Gebhardt v. Nielsen*,
  879 F.3d 980 (9th Cir. 2018) ................................................... 33, 43

*Gill v. Whitford*,
  138 S. Ct. 1934 (2018) ................................................................. 47

*Hamama v. Adducci*,
  912 F.3d 869 (6th Cir. 2018) ......................................................... 54

*\*Heckler v. Chaney*,
  470 U.S. 821 (1985) ............................................................... 19, 41

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ......................................................................... 40

*HP Inc. v. MPHJ Tech. Invs. LLC*,
  817 F.3d 1339 (Fed. Cir. 2016) ..................................................... 43

*Innovation Law Lab v. McAleenan*,
  924 F.3d 503 (9th Cir. 2019) ......................................................... 50

*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) ..................................................... 37

*Jilin Pharm. v. Chertoff*,
  447 F.3d 196 (3d Cir. 2006) ......................................................... 30

*Kucana v. Holder*,
558 U.S. 233 (2010) .................................................................. 32

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .................................................................. 26

*Liberty Maritime Corp. v. United States*,
928 F.2d 413 (D.C. Cir. 1991) ................................................. 31

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ................................................ 19, 34, 35, 36

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994) .............................................................. 20, 47

*McLouth Steel Products Corp. v. Thomas*,
838 F.2d 1317 (D.C. Cir. 1988) ............................................... 35

*Mobil Oil Corp. v. Dep't of Energy*,
728 F.2d 1477 (TECA 1983) .................................................... 38

*Nat'l Min. Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) ................................................. 36

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
145 F.3d 1399 (D.C. Cir. 1998) ........................................... 17, 55

*Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*,
435 F.3d 326 (D.C. Cir. 2006) .................................................. 57

*Pacific Gas & Elec. Co. v. FPC*,
506 F.2d 33 (D.C. Cir. 1974) ................................................... 35

*Patchak v. Zinke*,
138 S. Ct. 897 (2018) ............................................................... 24

*Sierra Club v. Jackson*,
648 F.3d 848 (D.C. Cir. 2011) ............................................. 19, 42

*Sorenson Commc'ns Inc. v. F.C.C.,
  755 F.3d 702 (D.C. Cir. 2014)..................................................39, 41

*Struniak v. Lynch,
  159 F. Supp. 3d 643 (E.D. Va. 2016) .......................................20, 42

*Syncor Int'l Corp. v. Shalala,
  127 F.3d 90 (D.C. Cir. 1997) ...................................................34, 36

Time Warner Entm't Co., L.P. v. FCC,
  240 F.3d 1126 (D.C. Cir. 2001)......................................................46

Trump v. Hawaii,
  138 S. Ct. 2392 (2018) ...................................................................55

Trump v. IRAP,
  137 S. Ct. 2080 (2017) ..............................................................47, 50

*United States Ass'n of Reptile Keepers, Inc. v. Jewell,
  106 F. Supp. 3d 125 (D.D.C. 2015)...........................................56, 57

United States v. Cortez,
  449 U.S. 411 (1981)......................................................................50

University of Tex. v. Camenisch,
  451 U.S. 390 (1981)......................................................................47

Va. Society for Human Life v. Fed. Election Comm'n,
  263 F.3d 379 (4th Cir. 2001)........................................................56

Williams v. Lew,
  819 F.3d 466 (D.C. Cir. 2016)......................................................26

Winter v. NRDC,
  555 U.S. 7 (2008).........................................................................48

*Zhu v. Gonzales,
  411 F.3d 292 (D.C. Cir. 2005).....................................................29

# FEDERAL STATUTES

5 U.S.C. § 553(b)(3)(A) ...................................................................... 19

5 U.S.C. § 553(b)(3)(A)-(B) ................................................................. 4

5 U.S.C. § 553(b)(3)(B) ...................................................................... 19

5 U.S.C. § 553(b)(B) ..................................................................... 34, 37

5 U.S.C. § 701(a)(2) ............................................................................ 5

5 U.S.C. § 703 .................................................................................. 56

5 U.S.C. § 705 ............................................................................. 21, 56

5 U.S.C. § 706 ......................................................................... 5, 21, 41

5 U.S.C. § 706(2) ........................................................................ 17, 55

6 U.S.C. § 557 .................................................................................... 7

8 U.S.C. § 1103(a)(5) ....................................................................... 32

8 U.S.C. § 1151–1381 ...................................................................... 31

8 U.S.C. § 1158 .................................................................................. 7

8 U.S.C. § 1182(a)(6)(C) ............................................................... 7, 11

8 U.S.C. § 1182(a)(7) .................................................................... 7, 11

8 U.S.C. § 1184(c)(6)(F) .................................................................. 32

8 U.S.C. § 1221-1232 .................................................................. 21, 52

8 U.S.C. § 1225(b) ............................................................................ 23

8 U.S.C. § 1225(b)(1)(A)(i) .......................................................... 7, 12

8 U.S.C. § 1225(b)(1)(A)(ii) ...................................................................... 12

8 U.S.C. § 1225(b)(1)(A)(iii) ......................................................... 1, 5, 6, 7, 45

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ........................................... 4, 11, 18, 19, 37

8 U.S.C. § 1225(b)(1)(B)(iii)(I) ...................................................................... 9

8 U.S.C. § 1225(b)(1)(C) ........................................................................... 9, 12

8 U.S.C. § 1252(a)(2)(B)(ii) ......................................................................... 30

8 U.S.C. § 1225(b)(1) ............................................................................... 7, 13

8 U.S.C. § 1225(b)(1)(C) .............................................................................. 12

8 U.S.C. § 1229a .............................................................................................. 8

8 U.S.C. § 1252 ............................................................................................. 14

8 U.S.C. § 1252(a)(2)(A) ............................................................................. 17

8 U.S.C. § 1252(a)(2)(A)(iii) .......................................................................... 9

8 U.S.C. § 1252(a)(2)(B)(ii) .......................................... 4, 15, 18, 29, 30, 31

8 U.S.C. § 1252(e)(1) .............................................................................. 5, 17, 21

8 U.S.C. § 1252(e)(2) ...................................................................................... 9

8 U.S.C. § 1252(e)(3) .......................................................................... 5, 13, 17, 22

8 U.S.C. § 1252(e)(3)(A) ................................................... 3, 17, 21, 22, 23

8 U.S.C. § 1252(e)(3)(B) ............................................................................... 22

8 U.S.C. § 1252(e)(3)(C) ................................................................................. 6

8 U.S.C. § 1252(f) .................................................................................... 17, 21

8 U.S.C. § 1252(f)(1) ............................................................... 52

28 U.S.C. § 1292(a)(1) ............................................................... 6

28 U.S.C. § 1331 .............................................. 13, 14, 23, 24

28 U.S.C. § 2342 ............................................................... 52

## FEDERAL REGULATIONS

8 C.F.R. § 208.30(d) ............................................................... 8

8 C.F.R. § 208.30(d)(4) ............................................................... 8

8 C.F.R. § 208.30(d)(5) ............................................................... 8

8 C.F.R. § 235.3(b)(1)(ii) ...................................................... 8, 9, 12

8 C.F.R. § 235.3(b)(2)(i) ............................................................... 8

8 C.F.R. § 235.3(b)(4) ............................................................... 12

8 C.F.R. § 235.3(b)(5)(i) ............................................................... 12

8 C.F.R. § 235.3(b)(6) ...................................................... 8, 12

8 C.F.R. § 235.3(b)(ii) ............................................................... 37

8 C.F.R. § 1003.42(d) ............................................................... 8

8 C.F.R. § 1003.42(f) ............................................................... 9

8 C.F.R. § 1208.30(g)(2) ............................................................... 8

8 C.F.R. § 1208.30(g)(2)(iv)(A) ............................................................... 8

# FEDERAL RULES FOR APPELLATE PROCEDURE

Fed. R. App. P. 32(a)(5) ................................................................. 1

Fed. R. App. P. 32(a)(7)(B) ........................................................... 1

# FEDERAL REGISTER

62 Fed. Reg. 10,312 ...................................................................... 9

67 Fed. Reg. 68, 923 ................................................................... 10

67 Fed. Reg. 68, 925 ................................................................... 40

69 Fed. Reg. 48,877 ............................................................... 2, 10

82 Fed. Reg. 4,902 ..................................................................... 11

82 Fed. Reg. 4,904 ..................................................................... 40

84 Fed. Reg. 35,409 ..................................................................... 2

84 Fed. Reg. 35,410-11 ............................................................... 33

84 Fed. Reg. 35,411 .............................................................. 2, 50

84 Fed. Reg. 35,411-12 ........................................................ 20, 44

84 Fed. Reg. 35,411-14 ..................................................... 5, 20, 45

84 Fed. Reg. 35,412 ................................................................... 35

84 Fed. Reg. 35,413 ........................................................ 19, 37, 38

84 Fed. Reg. 35,413-14 ............................................................... 45

# LEGISLATIVE HISTORY

H.R. Rep. 104-828 at 209 ..................................................................... 1

H.R. Rep. No. 1980 ............................................................................ 56

S. Rep. No. 752 ................................................................................. 56

# GLOSSARY OF ABBREVIATIONS

A.M. Tr.                          Hearing Transcript. A.M. Session, ECF
                                  32, App.40-136

APA                               Administrative Procedure Act

App.                              Appendix, followed by page numbers

AR                                Administrative Record, ECF 26

Board                             Board of Immigration Appeals

Compl.                            Complaint, ECF 1, App.1-40

DHS                               Department of Homeland Security

DOJ                               Department of Justice

ECF                               Docket Entry for District Court,
                                  followed by page numbers

IJ                                Immigration Judge

INA                               Immigration and Nationality Act

INS                               Immigration and Naturalization Service

Mot.                              Motion for Preliminary Injunction, ECF
                                  13-1
Op.
                                  District Court's Memorandum Opinion,
                                  ECF 40, App.212-337

Order                             District Court's Order Preliminary
                                  Injunction, ECF 41, App.338

| | |
|---|---|
| P.M. Tr. | Hearing Transcript. P.M. Session, ECF 33, App.137-211 |
| Secretary | Secretary of Homeland Security |
| USCIS | United States Citizenship and Immigration Services |

## INTRODUCTION

This Court should vacate the district court's nationwide preliminary injunction enjoining the Acting Secretary of Homeland Security's exercise of his "sole and unreviewable discretion" to designate certain aliens illegally present in the United States for processing for expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(iii).

Since 1996, Congress has provided the Secretary (or his predecessor) authority under which he "may ... designate[]" any class of inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," as subject to expedited removal, 8 U.S.C. § 1225(b)(1)(A)(iii)—a mechanism for swiftly removing from the United States "aliens who indisputably have no authorization to be admitted," H.R. Rep. 104-828 at 209. Congress provided that such a designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii). This Court upheld, against a facial constitutional challenge, the expedited removal statute and regulations implementing it in *American Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 199 F.3d 1352 (D.C. Cir. 2000).

Since 2004, certain aliens encountered within 100 miles of a land border and within 14 days of illegally crossing the border were designated as subject to expedited removal. *See Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877 (Aug. 11, 2004). In recent years, however, the numbers of aliens entering the country illegally and absconding into the interior beyond the 14-day or 100-mile thresholds has dramatically increased. *See Designating Aliens for Expedited Removal*, 84 Fed. Reg. 35,409, 35,411 (July 23, 2019).

On July 23, 2019, noting "the large number of aliens who entered illegally and were apprehended and detained within the interior of the United States, and DHS's insufficient detention capacity both along the border and in the interior of the United States," the Acting Secretary invoked his authority to designate as subject to expedited removal certain aliens encountered anywhere in the United States within two years of illegally crossing the border. 84 Fed. Reg. at 35,411. The Secretary explained that the designation would allow DHS "to use more effectively and efficiently its limited resources to fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders," and "to alleviate some of the burden and capacity issues currently faced by DHS and DOJ by allowing DHS to remove certain aliens encountered in the interior more quickly, as opposed to placing those aliens in more time-consuming removal proceedings,"

thereby exacerbating the "historic backlog of removal cases"—over 900,000 pending immigration cases as of June 2019. *Id.*

Despite the broad and unreviewable discretion conferred on the Secretary to make the designation—and despite the designation's sound policy aims—three organizations, none of whose members have ever been subject to the Secretary's designation, filed this suit, seeking a preliminary injunction enjoining operation of the designation nationwide, on the theory that the designation was required to undergo notice-and-comment rulemaking and that it was arbitrary and capricious under the Administrative Procedure Act (APA). The district court agreed with both of those arguments, and preliminarily enjoined the Secretary from implementing the designation. Opinion (Op.) 1-120 (App.214-333)

The district court's injunction should be vacated.

To start, the district court lacked jurisdiction over this case. Op. 31-43. The only provision authorizing district-court jurisdiction over systemic challenges to a new expedited removal designation, 8 U.S.C. § 1252(e)(3)(A), does not authorize this lawsuit. This Court has already held that that provision may be invoked "by, and only by, aliens against whom … new [expedited removal] procedures ha[ve] been applied." *AILA*, 199 F.3d at 1360. This case involves no alien against whom the new procedures have been applied, and so the district court lacked jurisdiction. Jurisdiction is separately barred by the Immigration and Nationality Act's (INA)

3

bar on judicial review of decisions that the Secretary makes in his "sole and unreviewable discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). The designation is just such a decision.

Even if the district court had been right to reach the merits, it erred as a matter of law on those issues too. The district court erred in concluding that the designation was subject to the APA's notice-and-comment procedures. Op. 66-83. The decision to designate aliens as subject to expedited removal is exempt from the APA's rulemaking requirements: "such designation," the expedited removal statute provides, "shall be in the *sole and unreviewable* discretion of the [Secretary] and *may be modified at any time*," 8 U.S.C. § 1225(b)(1)(A)(iii)(I) (emphases added). "By granting 'sole and unreviewable discretion' to make the [designation], Congress conferred on the Secretary the 'power to make decisions without anyone else's advice and consent,'" foreclosing a claim challenging the lack of "notice-and-comment" procedures. *Bremer v. Johnson*, 834 F.3d 925, 930-31 (8th Cir. 2016). Even apart from that point, the designation is independently exempt from notice-and-comment requirements on two additional grounds: the designation is a statement of policy that need not undergo notice-and-comment rulemaking and (separately) in making the designation the Secretary properly invoked the good-cause exception to notice-and-comment procedures. *See* 5 U.S.C. § 553(b)(3)(A)-(B).

The district court erred as well in reviewing the designation under the APA's arbitrary-and-capricious standard, 5 U.S.C. § 706. Op. 56-61, 83-96. The designation is a decision that is "in the sole and unreviewable discretion" of the agency and so is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That means that both the actual decision and "the Secretary's decisional process is ... unreviewable"—under the arbitrary-and-capricious standard or otherwise. *Bourdon v. DHS*, 940 F.3d 537, 544 (11th Cir. 2019). And even if the arbitrary-and-capricious standard did apply, the designation would satisfy that standard. The Secretary explained why he invoked section 1225(b)(1)(A)(iii), 84 Fed. Reg. at 35,411-14, and the record supports his decision.

Finally, the district court's nationwide injunction defies Article III and equitable principles dictating that preliminary injunctive relief may be no broader than necessary to redress the plaintiffs' injuries. Op. 107-20. The injunction is also irreconcilable with the INA's prohibition on injunctions of the Secretary's designation authority other than as to individual aliens party to the case who are actually subject to the designation. *See* 8 U.S.C. § 1252(e)(1), (3), (f).

## STATEMENT OF JURISDICTION

Plaintiffs invoked 8 U.S.C. §§ 1252(e)(3) and 1331 in district court. Compl. (App.1-39) ¶ 16. The district court issued its preliminary-injunction order on September 27, 2019. The government timely appealed on October 25, 2019. *See* 8

U.S.C. § 1252(e)(3)(C). This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATUTES AND REGULATIONS

Relevant statutes and regulations are included in an addendum.

## STATEMENT OF THE ISSUES

This appeal presents four issues for review:

I.  Whether the INA barred the district court from exercising jurisdiction over this case.

II.  Whether the district court erred in concluding that the Acting Secretary of Homeland Security was required to use notice-and-comment rulemaking in designating aliens unlawfully present for two years or less as subject to expedited removal procedures under 8 U.S.C. § 1225(b)(1)(A)(iii).

III.  Whether the district court erred in concluding that the Acting Secretary's designation was arbitrary and capricious.

IV.  Whether the district court erred in entering a nationwide injunction enjoining the Acting Secretary's designation as applied to non-parties.

## STATEMENT OF THE CASE

### A.  Expedited Removal

Congress has authorized the Department of Homeland Security (DHS) to summarily remove from the United States certain aliens who arrive at ports of

entry or who recently entered the country. *See* 8 U.S.C. § 1225(b)(1). Under this summary-removal mechanism—known as expedited removal—an alien "who is arriving in the United States" who an immigration officers determines lacks valid entry documentation or makes material misrepresentations shall be "order[ed] ... removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7).

Congress delegated to the Executive Branch the authority to apply expedited removal beyond those just recently arriving in the United States. The Secretary of Homeland Security "may ... designate[]" certain classes of inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" as subject to expedited removal, and that designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii).[1]

Implementing regulations establish procedures to be used before effectuating an expedited removal order. Immigration officers must "advise the alien of the charges against him or her," provide "an opportunity to respond to those charges in

---

[1] Under the Homeland Security Act of 2002, many immigration functions of the Immigration and Naturalization Service (INS) were transferred from the Department of Justice to DHS. *See* 6 U.S.C. § 557. The designation authority now

7

the sworn statement," and provide an interpreter if needed. 8 C.F.R. § 235.3(b)(2)(i). An alien may "present evidence" "that he or she was admitted or paroled into the United States," or was "physically present ... continuously for the 2-year period immediately prior to the date of determination of inadmissibility," and therefore ineligible for expedited removal. *Id.* § 235.3(b)(1)(ii), (b)(6). And "any removal order," the "sworn statement," and any claims concerning an alien's status, "must be reviewed and approved by the appropriate supervisor before the order is considered final." *Id.* § 235.3(b)(7).

Additional procedures apply if an alien asserts an "intention to apply for asylum ... or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(ii). In that situation, an alien is provided a non-adversarial interview with an asylum officer at which the officer determines whether the alien has a "credible fear of persecution," and is also provided the rights to *de novo* review of that determination by an immigration judge, to consult with a person of the alien's choosing during the credible fear process, and to an interpreter. *Id*. § 1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (B)(1)(B)(iv), (v); *see* 8 C.F.R. §§ 208.30(d), (d)(4), (d)(5); 1003.42(d), 1208.30(g)(2). If the asylum officer or immigration judge determines that the alien has a credible fear of persecution, the alien is placed in full removal proceedings under 8 U.S.C. § 1229a. *Id*. § 208.30(f). If the officer and immigration judge find

lies with the Secretary rather than with the Attorney General.

that the alien lacks such a fear, the alien shall be "removed from the United States without further hearing or review." 8 U.S.C. §§ 1225(b)(1)(B)(iii)(I), (b)(1)(C); 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. §§ 1003.42(f), 1208.30(g)(2)(iv)(A).

### B.    Prior Designations

The Secretary (and previously the Attorney General) has designated aliens for expedited removal under section 1225(b)(1)(A)(iii) on four prior occasions. In 1997, the Attorney General issued a regulation applying expedited removal to aliens arriving in the United States at a port of entry and aliens interdicted in international or United States waters. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312 (Mar. 6, 1997). The Attorney General also established a mechanism for later designations of aliens subject to expedited removal. *See* 8 C.F.R. § 235.3(b)(1)(ii). The Attorney General observed that "a proposed expansion of the expedited removal procedures may occur at any time and may be driven either by specific situations such as a sudden influx of illegal aliens motivated by political or economic unrest or other events or by a general need to increase the effectiveness of enforcement operations at one or more locations." 62 Fed. Reg. at 10,312.

In 2002, the INS Commissioner designated as eligible for expedited removal aliens who arrived in the United States by sea, were not paroled or admitted into

the United States, and "have not been physically present in the United States continuously for the two-year period prior to the determination of inadmissibility under" the designation. *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg. 68,923 (Nov. 13, 2002).

In 2004, the Secretary designated additional aliens for expedited removal through a Federal Register notice, under which DHS officials could apply expedited removal to certain aliens encountered within 100 air miles of the border and within 14 days of their date of illegal entry regardless of the alien's method of arrival. 69 Fed. Reg. 48,877. The 2004 Notice explained that in the interest of focusing limited resources "upon unlawful entries that have a close spatial and temporal nexus to the border," the 2004 designation did not implement "the full nationwide expedited removal authority available to DHS." *Id.* at 48,879. It did, however, expressly reserve to DHS the option of "implementing the full nationwide enforcement authority of the statute through publication of a subsequent Federal Register notice." *Id.*

And in 2017, the Secretary extended all prior designations to Cuban nationals, who had previously been exempted from expedited removal. *See Eliminating Exception To Expedited Removal Authority for Cuban Nationals*

*Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (Jan. 17, 2017).

### C.   The July 23 Designation

On July 23, 2019, the Acting Secretary invoked his authority under section 1225(b)(1)(A)(iii)(I) to designate as subject to expedited removal "aliens determined to be inadmissible under [8 U.S.C. § 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States, and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," who were not covered by previous designations.  84 Fed. Reg. at 35,409.  The Acting Secretary noted "the large number of aliens who entered illegally and were apprehended and detained within the interior of the United States, and DHS's insufficient detention capacity both along the border and in the interior of the United States," and explained that the designation would allow DHS "to use more effectively and efficiently its limited resources to fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders." *Id.* at 35,411.  This would in turn "alleviate some of the burden and capacity issues currently faced by DHS and DOJ by allowing DHS to remove certain aliens encountered in the interior more quickly, as opposed to placing those aliens in more time-consuming removal

proceedings," thereby exacerbating the "historic backlog of removal cases"—with 909,034 pending immigration cases as of June 2019. *Id.* Consistent with prior designations, the July 23 designation provides that aliens "have the burden of proving that they are not inadmissible and satisfy the continuous physical presence requirement." *Id.* (citing 8 C.F.R. § 235.3(b)(1)(ii)). An "alien otherwise subject to expedited removal" will receive "a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States." *Id.* (citing 8 C.F.R. § 235.3(b)(6)). As provided by statute, "[a]liens otherwise subject to expedited removal who indicate either an intention to apply for asylum or a fear of persecution or torture will be given further review by an asylum officer including an opportunity to establish a 'credible fear,' and thus potential eligibility for asylum." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i), (b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4)). And aliens "subject to expedited removal" "will receive prompt review of that determination if they claim under oath, after being warned of the penalties for perjury, that they have been admitted for permanent residence, admitted as a refugee, granted asylum, or are a U.S. citizen." *Id.* (citing 8 U.S.C. § 1225(b)(1)(C); 8 C.F.R. § 235.3(b)(5)(i)).

### D. Proceedings Below

On August 6, 2019, three organizations—but no individuals affected by the designation—filed this suit in D.C. district court. As the basis for subject-matter

jurisdiction, they invoked the general federal-question statute, 28 U.S.C. § 1331, and a provision of the INA, 8 U.S.C. § 1252(e)(3), which provides that "[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia" if suit is initiated within "sixty days" of when the challenged action "is first implemented." Plaintiffs maintained that jurisdiction was proper under the latter provision because the designation "implemented" the expedited removal statute, 8 U.S.C. § 1225(b)(1), and suggested 28 U.S.C. § 1331 supplied jurisdiction in the alternative. Compl. ¶¶ 2-3, 13, 16, 44-51.

On the merits, Plaintiffs alleged that the designation violates the APA, the Due Process Clause, and the Suspension Clause. Compl. ¶¶ 130-155; Mot. 15-21, 36-38. As relevant to this appeal, Plaintiffs claimed that the designation violates the APA because it: (1) was improperly issued without notice-and-comment rulemaking (Count 1), Compl. ¶¶ 130-34; and (2) "fail[s] to articulate a reasoned explanation" (Count 5), *id.* ¶¶ 150-51. Plaintiffs sought a nationwide preliminary injunction, barring the designation from being applied to any alien potentially subject to it. Mot. (ECF 13-1)

On September 27, the district court issued a preliminary injunction, enjoining implementation of the designation nationwide. Op. 1-120.

On jurisdiction, the court concluded that 28 U.S.C. § 1331 provided jurisdiction over Plaintiffs' challenge, and rejected the government's arguments that the INA's jurisdictional regime, 8 U.S.C. § 1252, barred judicial review. *See* Op. 31-36. Section 1331, the court explained, "provides subject-matter jurisdiction for a federal court to consider challenges to agency action such as the APA claims that Plaintiffs bring here." Op. 33. The court rejected the government's argument that section 1252(e)(3) permits suit only by aliens subject to expedited removal procedures, reasoning that "nothing in the text of" that provision "requires that a *determination* that a particular individual will be placed in expedited removal proceedings be made in order for the D.C. district court to have the power to consider a challenge to the *implementation* of the statutory provision governing expedited removal." Op. 37 (emphases in original); *see also* Op. 36-41. The court also held that Congress could not have meant to limit jurisdiction to challenges brought by aliens subject to expedited removal procedures because that would be at "odds with the fact that a challenge must be brought within sixty days of the first implementation of a challenged regulation." Op. 39. The court reasoned that requiring claims to be raised by "a person who has received an individualized expedited-removal determination" within the 60-day window "erect[ed] a virtually unscalable threshold barrier to this Court's power to consider claims that its statute plainly authorizes." Op. 39-40. The court also concluded that 8 U.S.C.

§ 1252(a)(2)(B)(ii), which bars judicial review of any "decision or action of ... the Secretary of Homeland Security the authority for which is specified" to be "in the discretion of ... the Secretary," did not apply because that provision appeared in a separate subsection of section 1252 than the provision that "expressly relates" to expedited removal, and because it appears in a subsection of section 1252 titled "denials of discretionary relief." Op. 42; *see also* Op. 42-43.

On the merits, the court held that the designation violated the APA because it was issued without notice-and-comment procedures. *See* Op. 71-82. The court reasoned that the designation is a "substantive rule" required to undergo "notice-and-comment procedures" because it "establishes a standard of conduct which has the force of law" by "provid[ing] immigration officers with previously unavailable authority to place certain undocumented non-citizens on the expedited removal track." Op. 76; *see* Op. 71-76. The court also held that section 1225(b)(1)(A) was not written in such a way to "suggest[] that Congress intended to displace" APA requirements, Op. 80-81, and that DHS lacked "good cause" to forego notice and comment based on concerns of a "surge" of migrants to the border because DHS's failure to actually implement the designation before the court issued its order "contradict[ed] and undermin[ed]" any assertion of exigency. Op. 81-82.

The court then held that the designation was arbitrary and capricious. Op. 83-93. The court faulted the Acting Secretary for not considering the alleged

"flaws in the pre-existing [expedited removal] scheme" identified by Plaintiffs and amici through extra-record materials. Op. 87-90. In the court's view, the agency was required to consider the "downsides of adopting a policy that, in many respects, could significantly impact people's everyday lives," Op. 87; *see* Op. 87-90, and was required to "do some research" on—and address—the impacts of "authoriz[ing] the swift ejection of someone who lives in the interior of the country and has been here for up to two years." Op. 94.

The court held that the equities supported an injunction because of the "substantially increased risk of ... substantial harm Plaintiffs' members" faced from expedited removal, Op. 98-99; *see also* Op. 96-102, and the absence of any harm to DHS other than "perhaps, the sunk costs of training expenditures the agency has already made," Op. 104; *see also* Op. 103-05.

Having concluded that an injunction was appropriate, the court held that the injunction should extend universally, to all aliens who could be affected by the designation. Op. 107-20. The court thought that the APA required such relief by providing that courts should "'hold unlawful and set aside' the facially defective agency action." Op. 109 (quoting 5 U.S.C. § 706(2)). The court also believed that D.C. Circuit precedent required such "'programmatic' relief that affects the rights of parties not before the court." Op. 110 (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). The court further held

that neither 8 U.S.C. § 1252(e)(1) (which bars "declaratory, injunctive or other equitable relief") nor 8 U.S.C. § 1252(f) (which bars injunctive relief other than as to aliens in removal proceedings) "overrides traditional understandings of what is supposed to happen when a federal court invalidates an agency rule as violative of procedural mandates of the APA." Op. 111 & n.37.

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's judgment and vacate the preliminary injunction.

I. The district court erred in exercising jurisdiction. Title 8 U.S.C. § 1252(e)(3) provides the sole basis for jurisdiction to challenge the expedited removal statute and its implementation. *See* 8 U.S.C. § 1252(a)(2)(A), (e). Under that provision, the court has jurisdiction over "challenges on [the] validity of the system," but only if Plaintiffs are subject to "orders under section 1225(b)(1)." *Id.* (title), (e)(3)(A). Section 1252(e)(3) thus grants jurisdiction only if there is a reviewable "determination[] under section 1225(b) of this title." *Id.* § 1252(e)(3)(A). As this Court has held, organizational plaintiffs may not invoke this Court's jurisdiction under section 1252(e)(3). *AILA*, 199 F.3d at 1360. "Congress meant to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied." *Id.* This case involves no alien against whom the designation has been applied, and so the

district court lacked jurisdiction. And even if organizations could sue, jurisdiction is foreclosed because the INA precludes "jurisdiction to review ... any ... decision or action of ... the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of ... the Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii). The designation decision is "specified" to be "in the discretion of" the Secretary, and so review is barred.

II. The district court erred in holding that the designation was subject to the APA's notice-and-comment procedures. The decision to designate aliens as subject to expedited removal is exempt from the APA, because "such designation shall be in the *sole and unreviewable discretion* of the [Secretary] and may be *modified at any time*," 8 U.S.C. § 1225(b)(1)(A)(iii)(I) (emphasis added). "By granting 'sole and unreviewable discretion' to make the [designation], Congress conferred on the Secretary the 'power to make decisions without anyone else's advice and consent,'" such that "a notice-and-comment" APA claim is barred. *Bremer*, 834 F.3d at 930-31.

Notice-and-comment procedures also do not apply to "general statements of policy," 5 U.S.C. § 553(b)(3)(A), like the designation, which merely "advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993). And even were the designation a legislative rule, it would still be exempt from notice-and-

comment requirements because such procedures would be "impracticable," 5 U.S.C. § 553(b)(3)(B), given Congress's directive that expedited removal's scope "may be modified at any time," 8 U.S.C. § 1225(b)(1)(A)(iii)(I), and contrary to the "public interest," 5 U.S.C. § 553(b)(3)(B), because "delayed implementation could lead to a surge in migration across the southern border across a notice-and-comment period," threatening "national security and public safety." 84 Fed. Reg. at 35,413.

III. The district court erred in deeming the designation arbitrary and capricious. The designation is not subject to arbitrary-and-capricious review. Section 1225(b)(1)(A)(iii) is "drawn" such that a court has "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Nothing about the word "designate," coupled with "sole and unreviewable discretion," lends itself to any meaningful standard a court may apply, so a court has "no concrete limitation[] to impose on the agency's exercise of discretion." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011). And by granting the Secretary "sole and unreviewable discretion" to make the designation, Congress conferred discretion over both the "ultimate decision" and also "the steps that are a necessary and ancillary part of reaching the ultimate decision," *Struniak v. Lynch*, 159 F. Supp. 3d 643, 654 (E.D. Va. 2016), and "the Secretary's decisional process," *Bourdon*, 940 F.3d at 544 (collecting cases).

Even if a cognizable arbitrary-and-capricious claim could be brought, the record supports the Secretary's conclusions that the designation would allow DHS "to use more effectively and efficiently its limited resources to fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders," given "the ongoing crisis at the southern border, the large number of aliens who entered illegally and were apprehended and detained within the interior of the United States, and DHS's insufficient detention capacity both along the border and in the interior." 84 Fed. Reg. at 35411-12; *see id.* at 35411-14.

IV.    The court also erred in issuing nationwide injunctive relief on behalf of every alien who might ever be subject to the designation.  Such relief far exceeds anything necessary to provide the organizational Plaintiffs' members "complete relief."  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).  Even if section 1252(e)(3) supplies jurisdiction over the case, it separately limits available relief by prohibiting such injunctions: "no court may ... enter declaratory, injunctive, or other equitable relief ... except as *specifically authorized* by a subsequent paragraph of this subsection."  8 U.S.C. § 1252(e)(1) (emphasis added).  The district court was authorized only to make a "determination" whether a particular expedited removal policy is valid; the review scheme does not "specifically authorize" injunctive relief.  *Id*. § 1252(e)(3)(A).  The injunction was also prohibited by 8 U.S.C. § 1252(f), which provides that "no court (other than the

Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1232], other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated." Finally, the APA, which authorizes courts to issue "set aside" relief following a *final* determination that the agency's action is "arbitrary," "not in accordance with law," or "without observance of procedure required by law," 5 U.S.C. § 706, does not authorize such relief at the preliminary-injunction stage, when a court merely concludes that the rule likely violates the APA's requirements and where "relief pending review" is appropriate only "to the extent necessary to prevent irreparable injury." *Id.* § 705

## STANDARD OF REVIEW

District-court rulings on jurisdiction, the justiciability of APA claims, and "whether the movant has established" each of the preliminary-injunction factors are reviewed *de novo*. *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009).

## ARGUMENT

## I. The District Court Lacked Jurisdiction Over This Case

The district court erred when it held that it had jurisdiction over this case. Op. 31-43. This Court should vacate the district court's judgment in full because the district court had no jurisdiction to issue it.

*First*, 8 U.S.C. § 1252(e)(3)—the provision specifically addressing judicial review over systemic challenges to changes in the expedited removal system— does not authorize this suit.  Section 1252(e)(3) authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court, "limited to determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law."  8 U.S.C. § 1252(e)(3)(A).  Such suits "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure ... is first implemented."  *Id.* § 1252(e)(3)(B).

Under these provisions, only an individual who is subject to expedited removal procedures at the time a suit is initiated may invoke section 1252(e)(3). Section 1252(e)(3), titled "[c]hallenges on [the] validity of the system," authorizes review of "implementation" of certain expedited removal procedures only if Plaintiffs are in fact subject to "determinations under section 1225(b) of this title." The triggering provision's reference to "[d]eterminations under section 1225(b)" requires just that—a "determination."  That is further demonstrated by the fact that

section 1252(e)(3) appears in a section titled "[j]udicial review of *orders* under section 1225(b)(1)." (Emphasis added.) Section 1252(e)(3) thus grants jurisdiction only if there is a reviewable "determination[]" or "order[]" "under section 1225(b)." 8 U.S.C. § 1252(e)(3)(A). As this Court has held, these provisions, combined with others in section 1252, demonstrate that "Congress meant to allow litigation challenging the new [expedited removal] system by, and only by, *aliens against whom the new procedures had been applied*." *AILA,* 199 F.3d at 1360 (emphasis added); *see id.* at 1358 ("We cannot see anything in these provisions allowing litigants ... to raise claims on behalf of those not party to the lawsuit."). Thus, organizations—like Plaintiffs—may not invoke section 1252(e)(3). *Id.*

The district court asserted jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331, reasoning that, regardless of section 1252's limitations on review, section 1331 "provides subject-matter jurisdiction for a federal court to consider challenges to agency action such as the APA claims that Plaintiffs bring here, as a general matter." Op. 33; *see also* Op. 31-36. That view disregards section 1252's careful limitations on federal-court jurisdiction. Section 1252(a)(2), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)," "*[n]otwithstanding any other provision of law* ... no court shall have jurisdiction to review ... *except as provided in subsection (e)* [i.e., section 1252(e)(3)]" "a decision by the Attorney General to invoke the provisions of such

section," or "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A)(ii), (iv). Section 1252(a)(2)(A) squarely removes from federal courts *any* jurisdiction to review issues "relating to section 1225(b)(1)" other than as explicitly permitted by section 1252(e)(3), and thus eliminates section 1331 as a basis for district-court jurisdiction. *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (phrase "notwithstanding any other provision of law" in jurisdictional provision encompasses 28 U.S.C. § 1331).

The district court also concluded that section 1252(e)(3) permits suits by organizations and is not limited to suits by aliens actually subject to expedited removal procedures, reasoning that "nothing in the text of" that provision "requires that a *determination* that a particular individual will be placed in expedited removal proceedings be made in order for the D.C. district court to have the power to consider a challenge to the *implementation* of the statutory provision governing expedited removal." Op. 37 (emphases in original); *see also* Op. 36-41. That reasoning ignores that section 1252(e)(3)'s *conjunctive* reference to "determinations under section 1225(b) of this title *and* its implementation" (emphasis added), which shows that only aliens subject to such procedures may challenge implementations of section 1225(b)(1). It also ignores that section 1252(e)(3) appears in a subsection of section 1252 titled "Judicial review of *orders*

24

under section 1225(b)(1)" (emphasis added), and that this Court has held that "Congress meant to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied." *AILA*, 199 F.3d at 1360.

The district dismissed *AILA* as limited to this Court's holding concerning "third-party standing." Op. 40-41. That is not a plausible reading of this Court's decision. In *AILA*, this Court addressed whether "organizational plaintiffs seek[ing] to vindicate the rights of unnamed third parties—namely, aliens who have been or will be processed pursuant to" new expedited removal procedures— could demonstrate "third-party standing," which this Court views as a form of "prudential standing." 199 F.3d at 1357.[2] This Court viewed that as an exercise in statutory construction to determine what "Congress meant to allow." *Id.* at 1359. Reviewing section 1252, the Court concluded that "Congress meant to allow actions only by aliens who have been subjected to the summary procedures contained in § 1225(b) and its implementing regulations." *Id.* In particular, the Court relied on section 1252(e)(3)(B)'s 60-day limitations period, *id.*, section 1252(e)(1)(B)'s bar on class action challenges under section 1252(e), *id.*, and

---

[2] Although the Supreme Court rejected reference to this analysis as "prudential standing" with respect to the zone-of-interests test in *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 127 (2014), it did not do so for third-party standing. *See id.* at 127 n.3. In this Circuit, third-party standing remains a

section 1252(f)'s provision that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [the expedited secondary inspection provisions] other than with respect to the application of such provisions to an individual alien against whom the proceedings under such chapter have been initiated," *id.* (alteration in original). This Court held that those provisions indicate that "Congress must have contemplated that lawsuits challenging [implementation of section 1225(b)(1)] would be brought, if at all, by individual aliens who—during the sixty-day period—were aggrieved by the statute's implementation," and that "[o]ne cannot come away from reading this section without having the distinct impression that Congress meant to allow litigation challenging the new system [i.e., the expedited removal system] by, and only by, aliens against whom the new procedures had been applied." *Id.* at 1359-60. Though framed in terms of third-party standing, the Court's holding turned on its statutory interpretation of section 1252 and the "congressional intent" of that provision. *Id.* at 1360, 1363. That reading of the statute's purpose and reach is inseparable from the Court's ultimate holding. *See id.* at 1360 ("What we have just written about congressional intent influences our analysis of the judicially-created third party standing doctrine as it applies to the cases before us."); *id.* at 1364 ("To

---

"prudential" gloss on a Court's jurisdiction. *See, e.g.*, *Williams v. Lew*, 819 F.3d 466, 475 (D.C. Cir. 2016).

allow third party standing in the face of [section 1252] would be to contradict the principles on which the standing doctrine rests").

The district court also thought that Congress could not have meant to limit jurisdiction to actual aliens subject to expedited removal because that would be at "odds with the fact that a challenge must be brought within sixty days of the first implementation of a challenged regulation," thereby "erect[ing] a virtually unscalable threshold barrier to this Court's power to consider claims that its statute plainly authorizes." Op. 39-40. But in *AILA*, this Court reversed a decision using the same reasoning as the district court here. 199 F.3d at 1360, 1363. The district court there concluded that section 1252(e)(3) must be read to permit "actions to be brought by more than just individual aliens subject to expedited removal orders" because "such an action would probably not be brought in time" under the 60-day limitations period "if Congress intended that only aliens subject to summary removal orders be allowed to bring such an action." *AILA*, 18 F. Supp. 2d at 48. This Court rejected that reasoning as "a large stretch," concluding that the fact that "there is no possibility of bringing a challenge at all" if not brought within 60-days "is precisely what Congress intended." *AILA*, 199 F.3d at 1363.

In any event, the district court's concern that reading section 1252(e)(3) as this Court already has would effectively preclude judicial review, Op. 39-40, is misplaced, because DHS never actually implemented the designation. To

"implement" means "to give practical effect to and ensure of actual fulfillment by concrete measures." Webster's Third International Dictionary 1134 (1987). But as of September 6, the date the district court heard oral argument, DHS had not yet "give[n] practical effect" or taken "concrete measures" to "ensure actual fulfillment" of the designation, because training requirements had not yet been completed. A.M. Tr. 35:12-14, 54:5-14-55:8, 76:20-22 (App.74, 93-94, 115) And after the district court put the government to the "choice," while the district court considered and ruled on the preliminary-injunction motion, of delaying implementation of the designation or implementing the designation but requiring the government to facilitate emergency litigation on behalf of each affected alien, the government agreed to delay implementation. *See* P.M. Tr. 162:14-23 (App.201); ECF 31. The district court then ultimately enjoined the designation. Thus, DHS has never in fact implemented the designation. If this Court vacates the injunction, aliens actually subject to the designation, once it is in fact *implemented*, will have 60 days from that date to bring any justiciable challenge in the district court. But that Plaintiffs chose to rush to court before any such implementation even occurred is no basis to upend section 1252(e)(3), which permits challenges "by, and only by, aliens against whom the new procedures had been applied." *AILA*, 199 F.3d at 1360.

*Second*, even if the district court was correct that organizations may invoke section 1252(e)(3), another provision barred Plaintiffs' APA claims. "If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective." *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004). The INA includes such a provision, which says that "[n]otwithstanding any other provision of law ... no court shall have jurisdiction to review ... any ... decision or action of ... the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of ... the Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii). This provision applies to situations where a statute "calls upon [the agency's] expertise and judgment unfettered by any statutory standard whatsoever," *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005), or to decisions or actions "where Congress has taken the additional step to specify that the sole authority for the action is in the [Secretary]'s discretion," *Alaka v. Att'y Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006), *overruled on other grounds*, *Bastardo-Vale v. Barr*, 2019 WL 3772097 (3d Cir. 2019) (en banc). The use of the phrase "sole and unreviewable discretion," which modifies the "designation" the Secretary makes under section 1225(b)(1)(A)(iii), "precludes judicial review of the Secretary's ... determination" under that provision. *See Bakran v. Sec'y, United States Dep't of Homeland Sec.*, 894 F.3d 557, 562 (3d Cir. 2018). That discretion is further

demonstrated by section 1225(b)(1)(A)(iii)'s provision that the Secretary may modify a "designation" under that provision "at any time." *See, e.g.*, *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016) (reading phrase "may, at any time" as covered by section 1252(a)(2)(B)(ii)); *Jilin Pharm. v. Chertoff*, 447 F.3d 196, 203 (3d Cir. 2006) (same).

The district court noted that "[a]t first glance, one might think that" 8 U.S.C. § 1252(a)(2)(B)(ii) "obviously precludes this Court's exercise of subject-matter jurisdiction over Plaintiffs' APA claims, because section 1225(b)(1)(A)(iii) of the INA grants the [Secretary] 'the sole and unreviewable discretion' to designate the classes of non-citizens subject to expedited removal." Op. 41-42. But the district court declined to embrace that view, on the ground that section 1252(a)(2)(B)(ii) appears in a separate subsection of section 1252 than "section 1252(a)(2)(A)," the provision that "expressly relates" to expedited removal. Op 42. But that reasoning ignores Congress's use of the prefatory "[n]otwithstanding any other provision of law" in section 1252(a)(2)(B)(ii), which "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, (1993). The fact that the "notwithstanding" clause appears in a different subsection of section 1252 is irrelevant. That unambiguous text provides a clear statement that such discretionary decisions not be subject to judicial review, and "supersede[s] all other

laws." *Liberty Maritime Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991) ("clearer statement of law" than a "'notwithstanding clause'" "is difficult to imagine").

The district court also concluded that section 1252(a)(2)(B) did not apply because it appears in a subsection of section 1252 titled "denials of discretionary relief." Op. 42. But the more specific text provides that "no court shall have jurisdiction to review ... any other *decision or action* ... specified under *this subchapter* to be in the discretion of the [Secretary]." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphases added). "'This subchapter' refers "to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigration.'" *Kucana v. Holder*, 558 U.S. 233, 239 (2010). There are at least "thirty-two" provisions in that "subchapter" "that make explicit the grant of 'discretion' to the Attorney General or the Secretary of Homeland Security," *Alaka*, 456 F.3d at 97 n.7, many of which do not involve "denials of discretionary relief." *See, e.g.*, 8 U.S.C. §§ 1103(a)(5), 1184(c)(6)(F), 1225(a)(4), 1302(c), 1305(b); *accord El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004) (section 1252(a)(2)(B)(ii) "bars courts from reviewing any discretionary decisions … made under the authority of sections 1151 through 1378 of Title 8."). But all such actions or decisions are specified "to be in the discretion" of the Secretary, and are thus subject to section 1252(a)(2)(B)(ii)'s bar. *Kucana*, 558 U.S. at 239.

The district lacked jurisdiction and the injunction should be vacated in full.

## II. The District Court Erred When It Concluded that the Secretary was Required to Engage in Notice-and Comment Rulemaking.

The district court erred when it concluded that the designation was a "substantive rule" required to undergo "notice and comment procedures." Op. 71; *see also* Op. 72-82.

*First*, in the INA designation provision, Congress displaced the APA's notice-and-comment requirements. Where "Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm," a "subsequent statute" may supersede APA procedures. *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998) (citing 5 U.S.C. § 559). That is what Congress did here. Section 1225(b)(1)(A)(iii)(I) provides that the Secretary "may apply" section 1225(b)(1)(A)(i)-(ii) to certain aliens "as designated by the [Secretary]" and that "[s]uch designation shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." Notice-and-comment procedures are incompatible with that text and its aim—that the Secretary be able to act with dispatch to address the problem presented by large numbers of aliens entering illegally when they have no entitlement to remain in the country. "By granting 'sole and unreviewable discretion' to make the [designation], Congress conferred on the Secretary the 'power to make decisions without anyone else's advice and consent,'" such that "a notice-and-comment"

APA claim is barred. *Bremer*, 834 F.3d at 930-31 (quoting Black's Law Dictionary 565 (10th ed. 2014) (*s.v.* "sole discretion")); *accord Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018) (rejecting argument that agency "was required to go through the notice-and-comment process" because such claims "challenge[] *how* the Secretary exercises—or has exercised—his or her "sole and unreviewable discretion"). Indeed, like the designation here, prior designations have also been issued without notice and comment with an immediate effective date. *See* 84 Fed. Reg. at 35,410-11 (citing examples).

The district court did not address these authorities. It believed that "[n]othing in [section 1225(b)(1)(A)(iii)] speaks to how the agency is to reach its conclusion regarding the category of aliens to which expedited removal will apply," or "relieves the agency from its obligation to make that discretionary decision in the ordinary course, consistent with any otherwise applicable procedural requirements." Op. 58. But that ignores Congress's use of the phrase "sole and unreviewable discretion," which means that Congress intended the Secretary to "make decisions without anyone else's advice and consent." *Bremer*, 834 F.3d at 930-31; *accord Amgen*, 357 F.3d at 113 ("[i]f a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is ... procedurally defective").

*Second*, the designation was not required to undergo notice-and-comment rulemaking because it is not a "substantive, legislative rule[]." *Clarian Health West, LLC v. Hargan*, 878 F.3d 346, 356 (D.C. Cir. 2017). Rather, it is a "general statement[] of policy" that is exempt from notice-and-comment. 5 U.S.C. § 553(b)(B). A general statement of policy, among other things, "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln*, 508 U.S. at 197. General statements of policy "are binding on neither the public nor the agency," and the agency "retains the discretion and the authority to change its position ... in any specific case." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). By contrast, a "substantive rule" subject notice-and-comment rulemaking is one that is "finally determinative of the issues or rights to which it is addressed." *Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974). These rules are "binding" and have the "force of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979).

The designation is a general statement of policy. The designation advises the public that DHS intends to exercise its discretionary authority to the full extent permitted under section 1225(b)(1)(A)(iii) going forward. *See Lincoln*, 508 U.S. at 197. And the designation makes clear that it does not require officers to exercise discretion in any particular way. *See McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1319 (D.C. Cir. 1988). Rather it provides—as shown by the

repeated use of the word "may"—that officers retain authority "as an exercise of prosecutorial discretion" to choose whether to place aliens subject to the designation in either expedited or full removal proceedings even where aliens are "otherwise eligible for placement into expedited removal proceedings." 84 Fed. Reg. at 35,412; *see Assoc. of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 718 (D.C. Cir. 2015) ("language like 'may' and 'should' instead of 'shall' or 'must' suggests that the provisions that follow are meant to be precatory"). The designation thus has "no binding effect" and leaves individual officers discretion in choosing whether to apply the designation to individual aliens "regardless of whether the criteria" for expedited removal "are met." *Clarion*, 878 F.3d at 358.

The district court concluded that the designation "provides immigration officers with previously unavailable authority to place certain undocumented non-citizens on the expedited removal track," Op. 75, such that it "'modifies or adds to a legal norm based on the agency's own authority.'" Op. 76 (quoting *Syncor*, 127 F.3d at 95). But that is backwards. DHS has *always* had the authority to designate aliens for expedited removal. DHS has not "promulgated substantive rules" above and beyond those already legislated by Congress, and so has not "modifie[d] or add[ed]" to any legal norm. *Syncor*, 127 F.3d at 95. Instead, DHS has simply indicated how it will exercise "discretionary power" it *already has*. *See Lincoln*,

508 U.S. at 197. No immigration officer is *required* under the designation to process an amenable alien under the designation. Instead, immigration officers are "genuinely left free to exercise discretion." *Clarian*, 878 F.3d at 358. Accordingly, the designation "merely explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014).

*Third*, the designation is exempt from notice-and-comment requirements because the Secretary had "good cause" to find that "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). The impracticability and public-interest prongs are satisfied here.

On impracticability, as the Acting Secretary found, "the application of the APA's notice-and-comment requirements would defeat a major purpose of the expedited removal provision: [t]o allow the Secretary to authorize immigration officers to respond rapidly, effectively, and flexibly to border security and public safety challenges." 84 Fed. Reg. at 35,413. The designation cannot be "effective immediately" or "modified at any time," as the statute and its implementing regulation provides, 8 U.S.C. § 1225(b)(1)(A)(iii)(I) (emphasis added); *see also* 8 C.F.R. § 235.3(b)(ii), if notice-and-comment is required, and so it is impracticable

to provide such notice. *See Jifry v. FAA*, 370 F.3d 1174, 1176 (D.C. Cir. 2004) (statute that permits but does not mandate action "at any time," coupled with national-security concerns, satisfied good cause); *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 20 (D.D.C. 2010) (good cause satisfied where "Congress has expressly said that the Secretaries may exercise their judgment in deciding whether interim final rules may be appropriate to implement statutory provisions").

The district court reasoned that notice-and-comment rulemaking was not impracticable because "the mere fact that section 1225(b)(1)(A)(iii)(I) states that DHS may modify the designation as to who is subject to expedited removal 'at any time,' does not mean Congress wanted DHS to be allowed to modify the designation … at a moment's notice." Op. 80. But as explained, that is precisely what Congress intended by assigning the designation decision to the Secretary's "sole and unreviewable discretion" and permitting the Secretary to change a designation "at any time." *See supra* 31-33.

On the public interest, the Secretary concluded that "delayed implementation could lead to a surge in migration across the southern border during a notice-and-comment period," threatening "national security and public safety," and causing possible "destabilizing effect[s] on the region," and "significant loss of human life." 84 Fed. Reg. at 35,413. That is, "the very announcement of [the] proposed rule itself [could] be expected to precipitate activity by affected parties that would

harm the public welfare." *Chamber of Commerce of U.S. v. S.E.C.*, 443 F.3d 890, 908 (D.C. Cir. 2006) (citing *Mobil Oil Corp. v. Dep't of Energy*, 728 F.2d 1477, 1492 (TECA 1983)). Indeed, the Acting Secretary's experience, backed by record evidence, "supports the inference that smugglers might similarly communicate" the designation's "potentially relevant change in U.S. immigration policy" and in turn precipitate changes in immigration patterns, warranting the application of the good-cause exception. 84 Fed. Reg. at 35,413; *see* App.354-76.

The district court rejected the government's public-interest argument on the grounds that it need not "defer" to the agency's predictive judgments concerning a surge. Op. 81. That is wrong. As this Court has held, while it reviews "the agency's legal conclusion of good cause ... de novo," it "defer[s] to an agency's factual findings and *expert judgments therefrom*, unless such findings and judgments are arbitrary and capricious." *Sorenson Commc'ns Inc. v. F.C.C.*, 755 F.3d 702, 706 (D.C. Cir. 2014) (emphasis added). Here, the agency explained the exigencies it faced and the incentives that aliens have to respond to immigration policies quickly, "creat[ing] a tremendous pull factor that is spurring this illegal immigration and creating an ongoing humanitarian and security crisis." App.577; *see* App.481 (noting "surges of illegal immigration at the southern border with Mexico" and "policy shifts"); App.523 (surges in response to changes in asylum policies); App.774 ("clear interdependency between the detained population, the

surge of families and unaccompanied children (UCs) at the southwest border, and overall transportation and removal expenditures"); App.865 (impact of "surges" on "immediate availability of detention beds").  Based on this record, the Acting Secretary found that delay would "incentive[ize aliens] to enter unlawfully [and] also to attempt to travel quickly into the interior of the United States in an effort to avoid the application of expedited removal."  84 Fed. Reg. at 35412.  The Acting Secretary is in the best position to make such predictive judgments.  *EarthLink, Inc. v. F.C.C.*, 462 F.3d 1, 12 (D.C. Cir. 2006) ("predictive judgments about areas that are within the agency's field of discretion and expertise are entitled to particularly deferential review").  Those judgments were reasonable, particularly in this context. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010) ("The Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to its empirical conclusions.").  And they were consistent with past practice, which did not employ notice-and-comment procedures.  *See* 67 Fed. Reg. at 68,925; 82 Fed. Reg. at 4904

The district court also concluded that DHS's conduct in delaying implementation of the designation undermined any argument of an emergency.  Op. 81-83.  But that is backwards: the good-cause exception is predictive—it concerns situations where "the very announcement of a proposed rule itself can be

expected," to cause the predicted harms. *Chamber of Commerce.*, 443 F.3d at 908. It is therefore assessed based on the agency's predictive judgments made at the time the designation issued. The delay in actual implementation of the designation does not affect the date after which a person crossing the border may now be subject to the new expedited removal designation, or the Secretary's predictive judgment that aliens may attempt to circumvent the designation by crossing the border before the designation is operative, and the district court was wrong to "second-guess" that prediction. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2571 (2019). And in any event, the district court cannot rely on extra-record evidence that post-dates the issuance of the designation. *See Sorenson*, 755 F.3d at 707 (court assesses "good cause" based on the "record").

## III. The District Court Erred in Concluding that the Designation was Arbitrary and Capricious

The district court erred when it concluded that the designation was subject to arbitrary-and-capricious review and that DHS acted "irrational[ly]" in issuing the designation. Op. 87-90; *see also* Op. 83-93.

To begin, the designation is a decision that "is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and thus not subject to an arbitrary-and-capricious claim under 5 U.S.C. § 706. Given the sweep of section 1225(b)(1)(A)(iii)—providing, again, that a designation under that provision "shall be in the *sole and unreviewable discretion* of the [Secretary] and *may be modified*

*at any time*," *id.* (emphases added)—the statute is "drawn" such that this court has "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. The action the statute authorizes the Secretary to take at his "sole and unreviewable discretion," to "designate," means "[t]o mark out and make known; to point out; to name; indicate." Black's Law Dictionary 447 (6th ed. 1990). Nothing about the phrase "designate," coupled with "sole and unreviewable discretion," lends itself to any meaningful standard the court may apply. There are "no legal norms pursuant to which to evaluate the challenged action," and Plaintiffs have identified no constraints on the agency's case-by-case decisions to institute expedited removal aside from the outer limits imposed by the statute. *Sierra Club*, 648 F.3d at 855. The court thus has "no concrete limitation[] to impose on the agency's exercise of discretion." *Id.* Instead, the fact that the Secretary's decision is at his "sole and unreviewable discretion," means the decision is "committed to agency discretion by law." *Bakran*, 894 F.3d at 562.

The district court believed that "it is more likely that Congress intended to confer to the agency the ultimate authority to make the decision of who will be subject to expedited removal under the statute, which is not the same thing as giving the agency sole discretion to determine the manner in which that decision will be made." Op. 57. But by granting the Secretary "sole and unreviewable

41

discretion" to make the designation, Congress conferred discretion over both the "ultimate decision" and also over "the steps that are a necessary and ancillary part of reaching the ultimate decision." *Struniak*, 159 F. Supp. 3d at 654. Congress, by choosing the verb "designate," and modifying it by the phrase "sole and unreviewable discretion," "extended the Secretary's discretion to the action of [designating] rather than only to the final [designation.]" *Bourdon*, 940 F.3d at 542. That includes "standards by which [the Secretary] reaches a decision" and "methods" for adopting standards, *Gephardt*, 879 F.3d at 987, the "manner in which" Secretary "exercises his discretion," *Bremer*, 834 F.3d at 930, "what evidence the agency requires or considers," *id.*, the application of "Congress's" direction to take discretionary action, *Am. Soc'y of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 452 (7th Cir. 2002), "the [agency's] reasons," *HP Inc. v. MPHJ Tech. Invs. LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016), "how the Secretary exercises—or has exercised" his discretion, *Bremer*, 834 F.3d at 930-31, and other aspects of "the Secretary's decisional process" or "the processes that the Secretary uses" in reaching a decision. *Bourdon*, 940 F.3d at 544 (observing that six courts of appeals have concluded that Congress's use of the phrase "sole and unreviewable discretion" means "the Secretary's decisional process is ... unreviewable"). Because the statute renders the exercise of discretion

unreviewable, "a court may not inquire whether a challenged agency decision is arbitrary [or] capricious." *Amgen*, 357 F.3d at 113.

Even if the designation were subject to arbitrary-and-capricious review, it would satisfy such review. The record reasonably supports the Secretary's conclusions that the designation would allow DHS "to use more effectively and efficiently its limited resources to fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders," given "the ongoing crisis at the southern border, the large number of aliens who entered illegally and were apprehended and detained within the interior of the United States, and DHS's insufficient detention capacity both along the border and in the interior." 84 Fed. Reg. at 35,411-12; *see id.* at 35,411-14 (describing "burden and capacity issues currently faced by DHS," numbers of aliens encountered yearly on the interior who could be removed under the new Notice, detention constraints faced by DHS, impacts of immigration court backlog, alien smuggling that circumvents prior designations by relying on "'safe houses' that are located more than 100 miles from the nearest land border," and the many statutory and regulatory procedural protections aliens subject to the Notice are entitled to). Those conclusions are amply supported by the record. App.340-426, 562-1102 (providing statistical data on migration patterns, detention capacity, immigration court backlog, alien smuggling, and apprehensions in the United States).

The district court held that the designation was arbitrary and capricious because the Acting Secretary did not consider the "downsides of adopting a policy that, in many respects, could significantly impact people's everyday lives." Op. 87-90; *see also* Op. 56-59, 83-93. In the court's view, the government was required to "do some research regarding" the impacts of "authoriz[ing] the swift ejection of someone who lives in the interior of the country and has been here for up to two years" for its decision to be reasoned, Op. 94, and the failure to do so was "irrational." Op. 88, 91. The district erred in concluding that the Secretary did not consider whether the pre-existing procedures were adequate. The Secretary did just that, canvassing the regulations in place and noting that they must be applied to anyone subject to the designation. *See* 84 Fed. Reg. at 35,413-14. Moreover, Congress has already determined that aliens illegally present for two years or less otherwise eligible for expedited removal are categorically not entitled to further procedures than those provided by Congress and the agency by regulation. *See* 8 U.S.C. § 1225(b)(1)(A)(iii). So the district court was wrong to conclude that the Secretary failed to consider "relevant factors." Op. 70-71. And even if the Secretary needed to consider whether there were good reasons not to extend expedited removal to the full scope authorized by Congress—something the exercise of discretion does not require—the agency *did* consider and address that. 84 Fed. Reg. at 35411-14; *see FCC v. Fox Television Stations, Inc.*, 556 U.S. 502,

515 (2009) ("reasoned explanation" requirement satisfied if agency shows action "is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates").  The district court also erred in second-guessing the weight the Secretary accorded the factors he considered by requiring the agency to "do some research."  Op. 94.  The court "must give appropriate deference to predictive judgments that necessarily involve the expertise and experience of the agency," *Time Warner Entm't Co., L.P. v. FCC*, 240 F.3d 1126, 1133 (D.C. Cir. 2001), and "may not substitute [its] judgment for that of the Secretary," *Dep't of Commerce*, 139 S. Ct. at 2569.

Finally, the district court was wrong that the Acting Secretary acted irrationally by not considering alleged "flaws in the pre-existing scheme" identified by Plaintiffs and amici through extra-record materials.  Op. 87-90.  In a "pre-enforcement challenge" "the fact that petitioner can point to a hypothetical case in which the rule might lead to an arbitrary result does not render the rule facially invalid." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 667-68 (D.C. Cir. 2019).  Regardless, Plaintiffs cannot amass a cherry-picked, self-serving record for litigation, and then submit it to the court insisting that the agency should have considered it.  APA review is limited to the "record that was before the Secretary at the time he made his decision," *Citizens to Preserve Overton Park,*

*Inc. v. Volpe*, 401 U.S. 402, 420 (1971), "not some new record made initially in the reviewing court," *Camp v. Pitts*, 411 U.S. 138, 142 (1973). And, accordingly, even if the district court was correct that the record did not contain sufficient evidence that the Secretary considered the relevant factors, an injunction was not permitted: "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

## IV.   The District Court Erred in Entering a Universal Injunction Extending to Non-Parties

Even if an injunction were warranted, the district court erred in issuing a nationwide preliminary injunction benefitting non-parties. Op. 107-20.

*First*, the injunction conflicts with Article III and principles of equity. Under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1934 (2018), and the rule in equity is that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen*, 512 U.S. at 765. These principles apply with even greater force to a preliminary injunction, an equitable tool designed merely to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "[T]he purpose of" preliminary equitable relief "is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves

forward." *Trump v. IRAP*, 137 S. Ct. 2080, 2087 (2017). Courts thus "need not grant the total relief sought by the applicant but may mold [their] decree to meet the exigencies of the particular case." *Id.*

Under these principles, the injunction is vastly overbroad and should be rejected—or at least vacated for everyone other than Plaintiffs' bona fide members subject to the designation. It goes far beyond the injuries that Plaintiffs allege to reach non-party, non-member aliens in every corner of the United States, even though Plaintiffs could never suffer harm from the designation's application to those with whom they have no relationship. Indeed, Plaintiffs invoked the district court's Article III authority exclusively under a theory of associational standing— that is, possible harm to actual bona fide members of their organizations. *See* Pls. Br. on Jurisdiction 1-6 (ECF 23); Op. 43-48. Likewise, the only actual alleged irreparable harm that Plaintiffs claimed was the possibility that "at least one of each organization's members" may be subject to "the [designation]." Op. 98; Mot. 41-44 (ECF 13-1). Under Article III and principles of equity, then, nationwide relief benefitting non-parties could be justified only if an injunction running to the Plaintiffs' actual members subject to the designation would not provide "complete relief" to Plaintiffs' putative injury of possible removal of their members. Plaintiffs made no such showing in district court, as was their burden, *see Winter v. NRDC*, 555 U.S. 7, 20 (2008), nor could they. An injunction as to aliens actually

47

processed for expedited removal who Plaintiffs identify as members of their organizations would provide them full interim relief. P.M. Tr. 140:2-142:3.

The district court believed that such an injunction "would create nearly insurmountable practical problems, because to claim their prize of not being subjected to expedited removal by court order, the undocumented non-citizens who are members of Plaintiffs' organizations would first have to identify themselves to the government, which, of course, is the first step in a chain of events that might well lead to their deportation." Op. 115. But that is how injunctions work: to benefit from an injunction premised on alleged harm to their *members*, Plaintiffs would have to identify those members, and in doing so, would be able to procure full relief for them. *See* P.M. Tr. 140:15-19 (government counsel proposing such a mechanism). That the district court may think that Plaintiffs' members should not have to identify themselves is no basis to issue relief far broader and more burdensome than necessary. In any event, if the government cannot feasibly administer an injunction of properly limited scope, then it can choose to provide relief more broadly to avoid the risk of contempt; but the district court has no business imposing a nationwide injunction over the government's objection for the purported benefit of non-parties seeking to avoid deportation. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 764 (9th Cir. 2018) (aliens lack any "right" to be present "illegally").

The district court's failure to apply these principles is especially problematic given that considerations of harm and the equities strongly favor the government.

The injunction inflicts profound harm on the government. *Contra* Op. 103-05. The injunction prevents the government from devoting as it deems best its "limited ... resources" to address the "increasing number of aliens ... apprehended within the United States" at a time of an "ongoing crisis at the southern border." 84 Fed. Reg. at 35,411. Moreover, in holding that the Secretary may not make designations immediately when the need arises, the injunction "takes off the table one of the few congressionally authorized measures available" to remove the thousands of aliens arriving in this country illegally and absconding into the interior on a daily basis, *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019), and frustrates the "public interest in effective measures to prevent the entry of illegal aliens" at the Nation's borders, *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981). The court's failure to even acknowledge these compelling harms, *see IRAP*, 137 S. Ct. at 2087, conflicts with Article III and equitable principles.

Plaintiffs face no comparable harms. The district court thought that the risk of "harm [to] Plaintiffs' members"—the possibility they might face expedited removal—warranted nationwide relief. Op. 98-99; *see also* Op. 96-105. But Plaintiffs offered only vague speculations premised on subjective fears that some unidentified "members" "could" at some future date be subject to the immigration laws of this country (Mot. 41-42) *if* the Executive decides to enforce the statute as to them. Such speculation is not remotely the "great and certain"—and "actual and

not theoretical"—harm that this Court requires to demonstrate irreparable harm. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). And the *possibility* that "members who would be legally subject to the expanded expedited removal procedures," Op. 97; *see* Op. 96-99, does not show "such imminence that equitable relief is urgently necessary," *England*, 454 F.3d at 298—and certainly not nationwide relief.

*Second*, the INA itself prohibits the injunction. Section 1252(e)(1)(A) provides that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title *except as specifically authorized in a subsequent paragraph of this subsection*." (Emphasis added.) As to section 1252(e)(3), the sole remedy authorized is a "determination[]" on the *merits* of "whether [section 1225(b)], or any regulation issued to implement such section, is constitutional" or "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." Such a "determination" is the only form of relief specifically authorized by section 1252(e)(3). But even if section 1252(e)(3) could be understood to authorize vacatur of an agency action a court found invalid on a *final judgment* as a form of "other equitable relief," the

word "determination" would not ordinarily connote *preliminary* injunctive relief, and had Congress intended otherwise it would have used language like that in the Hobbs Act, explicitly empowering a court "to enjoin ... the validity of" agency orders. 28 U.S.C. § 2342. Section 1252(e)(3) does not provide for any *interim* relief premised on such a determination.

Instead, the only authority for such relief is found at section 1252(f), which provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions part IV of this subchapter [*i.e.* 8 U.S.C. §§ 1221-1232] other than with respect to the *application of such provisions to an individual alien against whom proceedings under such part have been initiated*." (Emphasis added.) The district court's injunction runs afoul of this prohibition by enjoining "operation" of section 1225(b)(1)(A)(iii)(I), which confers on the Secretary the authority to "modif[y]" expedited removal designations "at any time," and therefore authorized the Secretary to apply section 1225(b)(1)(A) to any alien subject to it. The injunction enjoined application of section 1225(b)(1)(A) as written to every alien who is currently (or in the future will be) present anywhere in the United States for more than 14 days and less than two years subject to the designation. But just as Congress authorized litigation "by, and only by, aliens against whom the new procedures had been applied," *AILA*, 199 F.3d at 1360, it authorized preliminary relief only as to "alien[s] against

52

whom proceedings under *such part* have been initiated," meaning aliens who are placed in expedited removal proceedings under the designation. 8 U.S.C. § 1252(f)(1). Sections 1252(e)(1) and (f) thus foreclose *any* injunctive relief, as Plaintiffs identify no alien against whom "proceedings ... have been initiated." At the least, those provisions foreclose injunctive relief broader than necessary to provide relief to actual members of the Plaintiff organizations who are in or likely to be imminently in expedited removal proceeding under the designation.

The district court did not address section 1252(e)(1)(A) at all. Nor did it acknowledge section 1252(e)(1)(B), which prohibits "certify[ing] a class under Rule 23." As this Court has explained, that latter provision means that Congress did not "intend[] to permit actions on behalf of a still wider group of aliens, actions in which no class representative appears as a party and the plaintiffs are unconstrained by the requirements of [Rule] 23." *AILA*, 199 F.3d at 1364. The district court's universal injunction produces the same result that Congress foreclosed, benefitting hundreds of thousands of aliens "none of whom are parties to the lawsuit," and "unconstrained by" Rule 23. *Id*. at 1364.

As to Section 1252(f), the district court asserted that its injunction "has nothing whatsoever to do with restraining the operation of the statute." Op. 111, n.37. But the district court created requirements for the Secretary's exercise of his statutory authority under section 1225(b)(1)(A)(iii) found nowhere in the statute.

53

Using an injunction to re-write the statute to include limitations on the government's authority "that [do] not exist in the statute" is what section 1252(f) forecloses. *Hamama v. Adducci*, 912 F.3d 869, 879-80 (6th Cir. 2018).

The district court also concluded that sections 1252(e)(3) and (f) could not "override traditional understandings of what is supposed to happen when a federal court invalidates an agency rule as violative of procedural mandates of the APA." Op. 111 & n.37. That is wrong. Section 1252(a)(2)(A) unambiguously provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), ... no court shall have jurisdiction" over matters "relating to section 1225(b)(1)" other than "as provided in subsection (e)." And Section 1252(f) separately provides that "regardless of the nature of the action or claim," no court "other than the Supreme Court," may issue an injunction with respect to section 1225(b) other than with respect to individual aliens in actual removal proceedings. The "notwithstanding any other provision of law" and "[r]egardless of the nature of action or claim" clauses encompass *any* statute or claim, including an APA claim. The Court's contrary conclusion is also at odds with the settled rule that Congress can curtail the jurisdiction and equitable authority of the lower federal courts, and did so here unambiguously through sections 1252(e) and 1252(f). *See Bowles v. Russell*, 551 U.S. 205, 211 (2007) ("[o]nly Congress may determine a lower federal court's subject-matter jurisdiction"). Indeed, the APA itself forecloses the district court's

reading. Section 702 provides that "[n]othing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Section 1252 is precisely such a statute "forbid[ding]" the universal relief the district court granted.

Even if the APA, rather than the INA, governed the scope of relief, the district court again erred in concluding that the APA required a nationwide remedy. The court concluded that the APA required such relief by providing that courts should "'hold unlawful and set aside' the facially defective agency action." Op. 109 (quoting 5 U.S.C. § 706(2)). The court also concluded that this Court's precedent required such "'programmatic' relief that affects the rights of parties not before the court." Op. 110 (quoting *Nat'l Mining*, 145 F.3d at 1409). Neither conclusion is defensible. First, nothing in the APA indicates that a nationwide injunction is appropriate at the *preliminary-injunction* stage. The APA provides only that a court may "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). But no part of that text specifies whether any rule, if found likely to be invalid, should be set aside on its face or as applied to the challenger. *Cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) ("No statute expressly grants district courts the power to issue universal injunctions."). In the absence of a clear statement to the contrary, this Court should adopt the reasonable—rather than sweeping—reading of the "set aside" language. *See Va.*

*Society for Human Life v. Fed. Election Comm'n*, 263 F.3d 379, 393 (4th Cir. 2001) ("Nothing in the language of the APA, however, requires us to exercise such far-reaching power."). The APA itself provides that absent a statutory review provision, the proper "form of proceeding" is a traditional suit for declaratory or injunctive relief that is subject to the rules constraining equitable relief as being limited to determining the rights of the parties before the court. 5 U.S.C. § 703. Consistent with such equitable principles, the APA should be read to limit such interim relief to the parties before it. *See* 5 U.S.C. § 705 (relief pending review is appropriate only "to the extent necessary to prevent irreparable injury."). Indeed, the APA's very reference to actions for "declaratory judgments" makes clear that no injunction—much less a nationwide injunction—is compelled by the APA when agency action is held unlawful. *See id.*; *see also* H.R. Rep. No. 1980, 79th Cong., 2d Sess. 42 (1946) (referring to possibility of suits for declaratory relief to "determine the validity or application of a rule or order"); *see also* S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).

Second, the district court's reliance on *National Mining* is misplaced. That case dealt with a *final judgment*, "where the court had already held that the rule at issue was unlawful and should be vacated." *United States Ass'n of Reptile Keepers, Inc. v. Jewell*, 106 F. Supp. 3d 125, 128 (D.D.C. 2015), *aff'd sub nom. United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131 (D.C. Cir.

2017). In this case, by contrast, "the [district] [c]ourt has not finally determined that the [designation] is unlawful," so "the need for narrow tailoring ... is particularly important," and any "injunction should be limited in scope to protect only" parties to the case. *Id.* at 126, 129; *see Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) ("district court should not have enjoined agency from applying challenged regulation to any party when an injunction covering plaintiff alone adequately protects it from the feared prosecution"); *accord California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (narrowing a nationwide preliminary injunction to apply "only to the plaintiff[s]" as that would "provide complete relief to them").

## CONCLUSION

The Court should reverse the district court's order and vacate the injunction.

Dated: December 20, 2019        Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
District Court Section

United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Phone: (202) 307-4293
e-Mail: erez.r.reuveni@usdoj.gov

KATHRYNE GRAY
ARCHITH RAMKUMAR
Trial Attorneys

*Attorneys for Defendant-Appellants*

# RULE 32 CERTIFICATION

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

1.     This brief contains 13,000 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(e)(1).

2.     The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division