ORAL ARGUMENT NOT YET SCHEDULED
_____

**No. 19-5298**
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

MAKE THE ROAD NEW YORK, *et al.,*

*Plaintiffs-Appellees*,

v.

CHAD WOLF, et al.,

*Defendants-Appellants*.
_____

On Appeal from the United States District Court
for the District of Columbia
No. 1:19-cv-02369
Hon. Ketanji Brown Jackson
_____

**BRIEF FOR THE APPELLEES**
_____

Trina Realmuto
Kristin Macleod-Ball
American Immigration Council
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

Karolina J. Walters
American Immigration Council
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7520

*Attorneys for Plaintiffs-Appellees*

Anand Balakrishnan
Omar C. Jadwat
Lee Gelernt
Michael Tan
Celso Perez
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600
abalakrishnan@aclu.org

*(Additional Counsel on Next Page)*

Jonathan K. Youngwood
Susannah S. Geltman
Joshua Polster
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Adrienne V. Baxley
Simpson Thacher & Bartlett LLP
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5822

Stephen B. Kang
Julie Veroff
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Arthur B. Spitzer
Scott Michelman
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Plaintiffs-Appellees certify as follows:

### A. Parties and Amici

All parties, intervenors and amici appearing in this Court are listed in the Brief for the Appellants.

### B. Rulings Under Review

Reference to the ruling under review appears in the Brief for the Appellants.

### C. Related Cases

This case has not previously been before this or any other court. Counsel for Appellees are aware of one related case within the meaning of D.C. Circuit Rule 28(a)(1)(C): *Centro Presente, Inc. v. Wolf*, No. 1:19-cv-02840 (D.D.C.) (Jackson, K.B., J.), pending before the same district judge.

# TABLE OF CONTENTS

GLOSSARY OF ABBREVIATIONS .................................................xiv

INTRODUCTION ....................................................................1

STATUTES AND REGULATIONS...................................................3

STATEMENT OF ISSUES............................................................3

STATEMENT OF THE CASE ........................................................4

    A. Expedited Removal and Its Previous Applications. ..................................... 4

    B. Expedited Removal Procedures.............................................. 6

        1. *Inspection* ...................................................... 6

        2. *Credible Fear* .................................................. 7

    C. The Substantial Record of Serious Problems with Expedited Removal. ....... 8

    D. The Administration Dramatically Expanded Expedited Removal Without Addressing the Flaws of the Existing System or Inviting Pre-Promulgation Public Comment. ..................................................12

    E. Proceedings Below. ...........................................................13

STANDARD OF REVIEW .........................................................16

SUMMARY OF ARGUMENT .......................................................16

ARGUMENT......................................................................18

    I. 8 U.S.C. § 1252(e)(3) Provides Jurisdiction. .............................................18

    II. The Court Has Jurisdiction Over Plaintiffs' Procedural Challenges. ...........23

        A. Section 1252(a)(2)(B)(ii) Does Not Preclude Review. ...........................24

        B. Section 1225(b)(1)(A)(iii) Accords Discretion Only to an Ultimate *Designation* and Thus Does Not Preclude Review Over Plaintiffs' Procedural Challenges. ........................................................26

III.    Defendants Violated the APA's Procedural Requirements. ....................29

    A. The Rule Violated Notice-and-Comment. ...............................................30

        1. Congress Did Not Expressly Supersede the APA's Notice-and-Comment Requirements. ....................................................................30

        2. The Rule is Legislative. ...................................................................31

        3. Defendants Have Not Shown "Good Cause" to Bypass Notice-and-Comment. ........................................................................................32

    B. The Rule Is Arbitrary and Capricious. ...................................................35

        1. Plaintiffs' Arbitrary and Capricious Claim is Reviewable. ................35

        2. Defendants Failed to Consider Important Aspects of the Problem. .....37

        3. Defendants' Counterarguments Lack Merit. ......................................39

IV.    The Preliminary Injunction Is Warranted. ...............................................42

    A. The Preliminary Injunction Is Not Overbroad. ......................................42

    B. The INA Does Not Prohibit the Preliminary Injunction. ........................44

    C. Plaintiffs Will Suffer Irreparable Harm Absent the Injunction, and the Balance of Equities Strongly Supports the Injunction. ...........................49

CONCLUSION .................................................................................................53

## TABLE OF AUTHORITIES

**Cases**

*Abourezk v. Reagan*,
   785 F.2d 1043 (D.C. Cir. 1986) ........................................................36

*Advocate Health Care Network v. Stapleton*,
   137 S. Ct. 1652 (2017) ........................................................................19

*Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
   429 F.3d 1136 (D.C. Cir. 2005) ...............................................37, 40

*AILA v. Reno*,
   18 F. Supp. 2d 38 (D.D.C. 1998). .....................................................23

*AILA v. Reno*,
   199 F.3d 1352 (D.C. Cir. 2000) .............................17, 21, 22, 23

*Am. Hosp. Ass'n v. Bowen*,
   834 F.2d 1037 (D.C. Cir. 1987) ........................................................32

*Am. Med. Ass'n v. Reno*,
   57 F.3d 1129 (D.C. Cir. 1995) .........................................................30

*Am. Wild Horse Pres. Campaign v. Perdue*,
   873 F.3d 914 (D.C. Cir. 2017) .........................................................39

*Amgen, Inc. v. Smith*,
   357 F.3d 103 (D.C. Cir. 2004) .........................................................29

*Asiana Airlines v. FAA*,
   134 F.3d 393 (D.C. Cir. 1998) ..............................................30, 31

*Bakran v. Sec'y, U.S. Dep't of Homeland Sec.*,
   894 F.3d 557 (3d Cir. 2018) ...............................................................28

*Bourdon v. U.S. Dep't of Homeland Sec.*,
   940 F.3d 537 (11th Cir. 2019) ..........................................................28

*Bowen v. Mich. Acad. of Family Physicians*,
   476 U.S. 667 (1986) ..............................................................................26

iv

*Bridges v. Wixon*,
   326 U.S. 135 (1945).........................................................................50

*Califano v. Yamasaki*,
   442 U.S. 682 (1979).........................................................................44

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018)...........................................................43

*Catawba County v. EPA*,
   571 F.3d 20 (D.C. Cir. 2009) ....................................................30, 31

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ........................................................51

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001).........................................................................25

*Council of S. Mountains, Inc. v. Donovan*,
   653 F.2d 573 (D.C. Cir. 1981) ........................................................34

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019).....................................................................36

*E. Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018)...........................................................51

*EPIC v. U.S. Dep't Homeland Sec.*,
   653 F.3d 1 (D.C. Cir. 2011) ............................................................32

*Esch v. Yeutter*,
   876 F.2d 976 (D.C. Cir. 1989) ........................................................41

*Florida Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985).........................................................................42

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992).........................................................................36

*Genuine Parts Co. v. EPA*,
   890 F.3d 304 (D.C. Cir. 2018) ........................................................37

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013) ...........................................................16

*Grace v. Whitaker*,
   344 F. Supp. 3d 96 (D.D.C. 2018) ...................................... 46, 47, 48, 49

*Hamama v. Adducci*,
   912 F.3d 869 (6th Cir. 2018)...........................................................49

*Harmon v. Thornburgh*,
   878 F. 2d 484 (D.C. Cir. 1989) ......................................................42

*Heckler v. Chaney*,
   470 U.S. 821 (1985)........................................................................35

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
   709 F.3d 44 (D.C. Cir. 2013) ...........................................................41

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ...........................................................................35

*Innovation Law Lab v. McAleenan*,
    924 F.3d 503 (9th Cir. 2019)...........................................................52

*I.N.S. v. St. Cyr*,
   533 U.S. 289 (2001)........................................................................26

*James Madison Ltd. by Hecht v. Ludwig*,
   82 F.3d 1085 (D.C. Cir. 1996) ........................................................41

*Jankovic v. Int'l Crisis Group*,
   494 F.3d 1080 (D.C. Cir. 2007) ......................................................42

*Jifry v. FAA*,
   370 F.3d 1174 (D.C. Cir. 2004) ..................................................32, 33

*Jilin Pharm. v. Chertoff*,
   447 F.3d 196 (3d Cir. 2006)............................................................29

*Judulang v. Holder*,
   565 U.S. 42 (2011)..........................................................................37

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
  909 F.3d 446 (D.C. Cir. 2018) ...........................................................42

*Kucana v. Holder*,
  558 U.S. 233 (2010)................................................................20, 25

*Kurapati v. U.S. Citizenship & Immigration Servs.*,
  775 F.3d 1255 (11th Cir. 2014)...........................................................29

*Lincoln v. Vigil*,
  508 U.S. 182 (1993)................................................................30

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990)...........................................................43

*Lyttle v. United States*,
  867 F. Supp. 2d 1256 (M.D. Ga. 2012) ...........................................11

*Mantena v. Johnson*,
  809 F.3d 721(2d. Cir. 2015)...........................................................29

*Matter of Lujan-Quintana*,
  25 I&N Dec. 53, (BIA 2009) ...........................................................11

*McNary v. Haitian Refugee Ctr.*,
  498 U.S. 479 (1991)................................................................26, 27

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) ...................................................31

*Mills v. Dist. of Columbia*,
  571 F.3d 1304 (D.C. Cir. 2009) ...................................................50

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)................................................................37

*Murphy Exploration & Production Co. v. U.S. Dep't of the Interior*,
  252 F.3d 473 (D.C. Cir. 2001) ...................................................19

*Nat'l Assoc. of Farmworkers Orgs. v. Marshall*,
  628 F.2d 604 (D.C. Cir. 1980) ...................................................43

vii

*Nat'l Lifeline Ass'n v. FCC*,
    915 F.3d 1102 (D.C. Cir. 2019) ...........................................................34, 39, 41

*Nat'l Mining Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014) ...........................................................32

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
    145 F.3d 1399 (D.C. Cir. 1998) ...........................................................42, 44, 48

*Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*,
    435 F.3d 326 (D.C. Cir. 2006) ...........................................................43

*New Jersey v. EPA*,
    626 F.2d 1038 (D.C. Cir. 1980) ...........................................................52

*Nken v. Holder*,
    556 U.S. 418 (2009)...........................................................47, 53

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) ...........................................................21

*Osorio-Martinez v. Att'y Gen.*,
    893 F.3d 153 (3d Cir. 2018)...........................................................38

*ParkView Med. Assocs., L.P. v. Shalala*,
    158 F.3d 146 (D.C. Cir. 1998) ...........................................................27

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946)...........................................................44

*Reno v. Catholic Soc. Servs., Inc.*,
    509 U.S. 43 (1993)...........................................................27

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ...........................................................49

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010)...........................................................49

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011) ...........................................................36

*Sorenson Commc'ns Inc. v. FCC*,
    755 F.3d 702 (D.C. Cir. 2014) ....................................................33, 34

*Time Warner Entm't Co., L.P. v. FCC*,
    240 F.3d 1126 (D.C. Cir. 2001) .................................................35, 40

*TRW Inc., v. Andrews*,
    534 U.S. 19 (2001).........................................................................48

*United States v. Cortez*,
    449 U.S. 411(1981).......................................................................52

*United States v. Huazo-Garcia*,
    2018 WL 2306890 (E.D. Wash. May 21, 2018) ................................12

*United States v. Ramirez-Diaz*,
    359 F. Supp. 3d 994 .....................................................................12

*United States v. Wilson*,
    503 U.S. 329 (1992)......................................................................46

*Va. Society for Human Life v. Fed. Election Comm'n*,
    263 F.3d 379 (4th Cir. 2001) ........................................................43

*Warth v. Seldin*,
    422 U.S. 490 (1975)......................................................................23

*Washington Post v. Robinson*,
    935 F.2d 282 (D.C. Cir. 1991) .......................................................42

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) .......................................................42

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008) .........................................................................49

*Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*,
    758 F.2d 669 (D.C. Cir. 1985) ..................................................50, 51

*Zadvydas v. Davis*,
    533 U.S. 678 (2001).......................................................................24

## Statutes

5 U.S.C. § 553 ............................................................1, 31

5 U.S.C. § 553(b) ......................................................14, 17

5 U.S.C. § 559 .................................................................30

5 U.S.C. § 701(a)(2)................................................35, 36

5 U.S.C. § 706(2)(A)........................................14, 18, 43

6 U.S.C. § 557 .................................................................. 5

8 U.S.C. § 1105a (1995) ................................................. 4

8 U.S.C. § 1154(a)(1)(A)(viii)(I)...................................28

8 U.S.C. § 1155 ............................................................... 2

8 U.S.C. § 1182(a)(6)(C) ................................................ 6

8 U.S.C. § 1182(a)(7)....................................................... 6

8 U.S.C. § 1225(a)(4)....................................................... 7

8 U.S.C. § 1225(b)....................................................19, 45

8 U.S.C. § 1225(b)(1) ............................................5, 19, 47

8 U.S.C. § 1225(b)(1)(A)(i) ...........................................6,7

8 U.S.C. § 1225(b)(1)(A)(ii) .........................................6, 8

8 U.S.C. § 1225(b)(1)(A)(iii) ...................... 14, 15, 26, 49

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ..................5, 24, 30, 33

8 U.S.C. § 1225(b)(1)(A)(iii)(II) .................................... 5

8 U.S.C. § 1225(b)(1)(B)(iii) ...................................................... 8

8 U.S.C. § 1225(b)(1)(B)(v) ....................................................... 8

8 U.S.C. § 1225(b)(1)(C) ............................................................ 6

8 U.S.C. § 1232(a)(2)(B) ...........................................................11

8 U.S.C. § 1232(a)(5)(D) ...........................................................11

8 U.S.C. § 1252 (1995) .............................................................. 4

8 U.S.C. § 1252(a)(2) ................................................................ 7

8 U.S.C. § 1252(a)(2)(B) .....................................................17, 25

8 U.S.C. § 1252(a)(2)(B)(ii) .......................................................24

8 U.S.C. § 1252(a)(ii) ................................................................20

8 U.S.C. § 1252(a)(iv) ...............................................................20

8 U.S.C. § 1252(e) ............................................................ 7, 19, 44, 45

8 U.S.C. § 1252(e)(1)(A). ..................................................46, 47, 48

8 U.S.C. § 1252(e)(1)(B) ....................................................47, 48

8 U.S.C. § 1252(e)(2) ........................................................45, 46, 48

8 U.S.C. § 1252(e)(3) .................3, 13, 14, 16, 18, 19, 20, 21, 23, 24, 43, 44, 45, 47

8 U.S.C. § 1252(e)(3)(A) ....................................................18, 45

8 U.S.C. § 1252(e)(3)(A)(ii) .......................................................20

8 U.S.C. § 1252(e)(3)(B) ....................................................18, 20

8 U.S.C. § 1252(e)(3)(D) .............................................................20

8 U.S.C. § 1252(e)(4)...........................................................................45, 46

8 U.S.C. § 1252(e)(4)(B) .....................................................................48, 49

8 U.S.C. § 1252(f)(1) ................................................................................49

22 U.S.C. § 6474......................................................................................... 9

42 U.S.C. § 13951(t)(12)(A) ....................................................................29

Adam Walsh Child Protection and Safety Act of 2006 ("AWA"), Pub. L. No. 109-248, § 402(a)(2) ...........................................................................28

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),
Pub. L. No. 104-208, 110 Stat. 3009-546 (Sept. 30, 1996)................................. 5

**Regulations**

8 C.F.R. § 208.30................................................................................. 8

8 C.F.R. § 208.30(d)(4)......................................................................... 8

8 C.F.R. § 208.30(g)(1)......................................................................... 8

8 C.F.R. § 235.3(b)(1)(ii)......................................................................33

8 C.F.R. § 235.3(b)(2)(i) ....................................................................... 7

8 C.F.R. § 235.3(b)(2)(ii) ...................................................................... 7

8 C.F.R. § 235.3(b)(4)........................................................................... 8

8 C.F.R. § 235.3(b)(4)(ii). ..................................................................... 8

8 C.F.R. § 235.3(b)(5)........................................................................... 6

8 C.F.R. § 235.3(b)(7)........................................................................... 7

8 C.F.R. § 242.16(a) (1995) .................................................................. 4

67 Fed. Reg. 68,924 (Nov. 13, 2002) ...................................................... 6

69 Fed. Reg. 48,877 (Aug. 11, 2004). .................................................... 6

84 Fed. Reg. 35,409 (July 23,2019) ......................................... 13, 33, 39

Exec. Order No. 13767, Border Security and Immigration Enforcement
    Improvements, 82 Fed. Reg. 8793 (Jan. 30, 2017) ............................12

## Other Authorities

Antonin Scalia & Bryan A. Garner, *Reading Law (2012)* ....................................47

H.R. Rep. No. 105-480 .......................................................................... 9

Memorandum from John Kelly, Implementing the President's Border Security and
    Immigration Enforcement Improvements Policies (Feb. 20, 2017) ...................12

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act |
| App. | Appendix |
| AWA | Adam Walsh Child Protection and Safety Act of 2006 |
| BIA | Board of Immigration Appeals |
| Br. | Brief for the Appellants |
| CBP | Customs and Border Protection |
| DHS | Department of Homeland Security |
| ECF | Docket Entry for the District Court |
| IIRIRA | Illegal Immigration Reform and Immigrant Responsibility Act of 1996 |
| IJ | Immigration Judge |
| INA | Immigration and Nationality Act |
| Rule | Designating Aliens for Expedited Removal, 84 Fed. Reg. 35,409 (July 23, 2019) |
| Tr. | Transcript |
| USCIRF | United States Commission on International Religious Freedom |
| USCIS | United States Citizenship and Immigration Services |

## INTRODUCTION

The government's decision to expand expedited removal to reach any noncitizen, anywhere in the United States, who cannot affirmatively prove two years of continuous presence, is a dramatic change in both the use of expedited removal procedures and immigration law. Hundreds of thousands of noncitizens with substantial connections to the United States will lose their entitlement to a full hearing on whether they are to be deported away from their families and homes. Instead, they may be summarily issued a removal order, and deported in a matter of days, or in some cases hours.

This expansion of expedited removal is unlawful and unconstitutional. The narrow question on this appeal, however, is whether the Department of Homeland Security ("DHS") can completely bypass the basic procedural requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 *et. seq.*, to reach this monumental decision. As the district court correctly found, it cannot.

For more than two decades, expedited removal was primarily limited to individuals presenting at the border or those who were present for fewer than 14 days. The new expansion presents new challenges. Proving continuous two years residence is more difficult than proving 14 days'

1

residence. Living in the U.S. for significant periods will often lead to avenues for relief from removal.

There is a voluminous public record of the serious flaws in the expedited removal process, even when applied to a much narrower group of recent entrants. The expedited removal system has resulted in wrongful deportations of U.S. citizens, legal permanent residents, and bona fide asylum seekers, often to countries where they face the risk of persecution, torture, or death. If the government had not violated the APA, it would have had to consider and address this record and the likely consequences of applying the deeply flawed procedures in this new context.

There was no reason to bypass the APA here. President Trump directed DHS to expand expedited removal in January 2017. However, DHS let two and a half years go by before acting on that instruction, and did not enforce its new authority for weeks after it acted. Following the APA's requirements would not have unduly delayed the agency.

Defendants' appeal relies on a slew of jurisdictional objections arguing that the district court was barred from reviewing their failure to comply with the APA. But Congress specifically authorized suits, like this one, that promptly raise systematic challenges to the implementation of the expedited removal statute. Defendants fail to acknowledge that authorization

and instead rely on a strained reading of other provisions and a mischaracterization of Plaintiffs' claims. The arguments they raise on the merits are easily dismissed. There is neither statutory authorization nor good cause for Defendants to bypass notice-and-comment, and the Rule and its underlying record contain no indication that Defendants considered the consequences of applying expedited removal's flawed procedures to the new class of noncitizens.

Defendants finally argue that the district court lacked authority to set aside the Rule pending final judgment, and should have limited relief to members of the Plaintiff organizations. Not so. Enjoining the Rule pending final judgment is consistent with the ordinary remedy in APA cases and the judicial review scheme that Congress established for systemic expedited removal challenges.

The preliminary injunction should be affirmed.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are included in an addendum.

## STATEMENT OF ISSUES

1. Whether the district court correctly exercised jurisdiction under 8 U.S.C. § 1252(e)(3).

2. Whether the district court correctly held there is judicial review over Plaintiffs' procedural challenges to the decision to expand expedited removal.

3. Whether the district court correctly held that Plaintiffs were likely to succeed on their claims that the decision to expand expedited removal

    a. violated the notice-and-comment procedures of the APA; and

    b. was arbitrary and capricious.

4. Whether the district court correctly enjoined the challenged Rule pending final resolution of the case.

## STATEMENT OF THE CASE

### A. Expedited Removal and Its Previous Applications.

Before 1996, all noncitizens were entitled to a full hearing in immigration court before they could be excluded or deported from the United States. Noncitizens had the opportunity to prepare their case, retain and rely on the assistance of counsel, and present and confront evidence before an immigration judge ("IJ"). They also were entitled to an administrative appeal and subsequent federal court review. *See* 8 U.S.C. § 1105a (1995); 8 U.S.C. § 1252 (1995); 8 C.F.R. § 242.16(a) (1995).

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546

(Sept. 30, 1996). IIRIRA retained full removal hearings as the standard procedure, while also creating a highly truncated process called "expedited removal." 8 U.S.C. § 1225(b)(1). Congress directly authorized the use of expedited removal for noncitizens seeking admission at ports of entry, but also authorized the Secretary of Homeland Security to expand its application.[1] Congress specified that the Secretary must issue a "designat[ion]" before subjecting new groups of noncitizens to expedited removal. *See id.* § 1225(b)(1)(A)(iii)(I). At maximum, the Secretary can designate large numbers of noncitizens inside the United States who were not lawfully admitted or paroled into the country, and not continuously present for two or more years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

For more than 20 years, the government did not attempt to expand expedited removal to its statutory maximum. At least one prior high-level administration official warned against such an expansion because of concerns individuals would be illegally removed. *See* ECF 13-36 (Alan Gomez, *Trump's Quick Deportation Plan May Be Illegal, Past Immigration Chiefs Say*, USA Today (Feb. 24, 2017)).

Instead, the government made only two lesser expansions. In 2002, the government applied expedited removal to a narrow group of individuals inside the

---

[1] Although Congress initially delegated the designation power to the Attorney General, subsequent statutory and regulatory changes conferred that power on DHS. *See* 6 U.S.C. § 557.

5

country who arrived by *sea* and were not continuously present for two years. *See* 67 Fed. Reg. 68,924, 68,925–26 (Nov. 13, 2002).[2] In 2004, the government expanded expedited removal to people who were apprehended within 100 air miles of a land border and had not been physically present for 14 days. *See* 69 Fed. Reg. 48,877, 48,880–81 (Aug. 11, 2004).

**B. Expedited Removal Procedures.**

Expedited removal is a one- or two-stage process: the first is inspection by an immigration officer; the second, where applicable, is a credible fear interview by an asylum officer.

1. *Inspection*

The immigration officer must first determine if the individual is "inadmissible" as a noncitizen who has engaged in fraud or lacks valid entry documents. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (ii) (citing 8 U.S.C. §§ 1182(a)(6)(C), (a)(7)). If the individual claims to be a U.S. citizen, lawful permanent resident, or refugee or asylee, then they are entitled to limited additional review. *See id.* § 1225(b)(1)(C); 8 C.F.R. § 235.3(b)(5). Otherwise, the officer "shall" order the individual removed "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."

---

[2] On a typical day, only about 5% of individuals whom Customs and Border Protection processes arrive by sea. *See* ECF 13-28, 2 (U.S. Customs & Border Protection, Snapshot: A Summary of CBP Facts and Figures (May 2019)).

8 U.S.C. § 1225(b)(1)(A)(i). During this process, the officer may allow the person to withdraw their application for admission and leave the country; this averts the penalty of a removal order, which can make a noncitizen permanently inadmissible. *Id.* § 1225(a)(4).

The inspection stage typically lasts mere hours. *See* ECF 13-34, 13 (Human Rights Watch, *You Don't Have Rights Here* (2014)) (reporting that interviews are "much shorter" than 45 minutes). The individual is detained and denied the ability to contact or rely on counsel. ECF 13-31, 10 (U.S. Comm'n on Int'l Religious Freedom, *Barriers to Protection: The Treatment of Asylum Seekers in Expedited Removal* (2016) (noting that the noncitizen is "[n]ot allowed to meet with [an] attorney") ("2016 USCIRF Study")); ECF 13-14, 4 (Hartzler Decl.). The detainee "generally has no way to gather evidence." *Id.* The officer's decision is subject only to a supervisor's paper review. 8 C.F.R. §§ 235.3(b)(2)(i), (ii). There is no administrative appeal. *Id.* §§ 235.3(b)(2)(ii), (7). And unless the person claims to have citizenship or certain forms of lawful status, there is no judicial review. *See* 8 U.S.C. §§ 1252(a)(2), (e).

2. *Credible Fear*

For many, the process ends at the inspection stage. Those who state an intention to apply for asylum or express fear of return to their country of origin may get to the second, "credible fear" stage, which entails an interview with an

asylum officer concerning their fears of persecution. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), (B); 8 C.F.R. § 235.3(b)(4); *id.* § 208.30. If the individual shows "a significant possibility . . . that [they] could establish eligibility for asylum," 8 U.S.C. § 1225(b)(1)(B)(v), they are placed into regular removal proceedings. If they fail that interview, they can take a limited appeal of that determination to an IJ, but do not receive a full hearing on their claims. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(II)–(III); 8 C.F.R. § 208.30(g)(1).

Defendants detain noncitizens during the credible fear stage. *Id.* § 235.3(b)(4)(ii). Noncitizens may consult with "a person or persons of [their] choosing" to prepare for their interviews, and that person(s) may—at the asylum officer's discretion—be permitted to attend the interview and present a statement. *Id.* § 208.30(d)(4). But in practice, Defendants restrict that right. *See, e.g.,* ECF 13-31, 10 ("[n]on-citizen has no right to legal representation").[3] The government believes there is no judicial review of a credible fear denial.

### C. The Substantial Record of Serious Problems with Expedited Removal.

Defendants have long been on notice of widespread flaws in the expedited removal process, even in its narrower implementation. Most prominently, Congress commissioned studies by the U.S. Commission on International

---

[3] *Accord* ECF 13-6, 3 (Beckett Decl.); ECF 13-14, 4; ECF 13-15, 7 (White Decl.).

Religious Freedom ("USCIRF") to respond to advocates' and community members' concerns with the implementation of expedited removal.[4]

USCIRF conducted two studies, in 2005 and 2016. Both times, USCIRF saw "serious problems . . . which put some asylum seekers at risk of improper return." ECF 13-30, 24–25 (USCIRF, *Report on Asylum Seekers in Expedited Removal* (2005) ("2005 USCIRF Study")). *See also* ECF 13-31, 13 (2016 USCIRF Study) (reporting "continuing and new concerns about [Customs and Border Protection ("CBP")] officers' interviewing practices and the reliability of the records they create" and "certain CBP officers' outright skepticism, if not hostility, toward asylum claims . . . .").

The USCIRF studies reported numerous problems with both the inspection and credible fear stages, including:

- systemic interpretation failures, *see* ECF 13-31, 27 (lack of interpreters for indigenous languages); *id.* at 28 (inadequate interpretation services at interviews);[5]

_____

[4] *See* 22 U.S.C. § 6474 (authorizing study); s*ee also* H.R. Rep. No. 105-480, pt. 3, at 17 (1998) (recognizing that immigration officers "may not always be following INS procedures designed to ensure that potential asylum claimants are properly referred" for interviews).

[5] *See also* ECF 13-7, 2–3 (Willis Decl.); ECF 13-18, 2 (Warden-Hertz Decl.); ECF 13-13, 2 (Rodriguez Decl.); ECF 13-9, 3 (Fluharty Decl.); ECF 13-12, 3 (Yang Decl.); ECF 13-10, 3 (Schneider Decl.); ECF 13-16, 3 (Lunn Decl.); ECF 13-14, 3; ECF 13-15, 5.

- officers taking statements from noncitizens that are "often inaccurate and nearly always unverifiable," ECF 13-30, 55, 74; *see also* ECF 13-31, 21.[6]

- the failure to refer noncitizens who express a fear of return for credible fear screenings, *see* ECF 13-30, 35 (reporting failure to refer in 15% of observed cases);[7]

- and interference with noncitizens' efforts to express fear of return, *see* ECF 13-31, 22, 31–32 (describing CBP officers telling asylum seekers not to speak, "it's better if you just ask to be deported," "we're going to throw you out," and that they should apply for asylum in Mexico).[8]

Unsurprisingly, a system with so little oversight and so many systemic deficiencies has resulted in numerous erroneous removals. These errors have been widely publicized in congressional hearings, news articles, reports, and court

---

[6] *See also* ECF 13-32, 12 (Borderland Immigration Council, *Discretion to Deny* (2017)); ECF 13-7, 2; ECF 13-6, 2–3; ECF 13-18, 2; ECF 13-12, 3; ECF 13-16, 3; ECF 13-10, 3; ECF 13-15, 4; ECF 13-14, 4; ECF 13-17, 3 (Jones Decl.); ECF 13-8, 2 (Cartwright Decl.).

[7] *See also* ECF 13-34, 11 (fewer than half of individuals surveyed who claimed fear of return were referred for screenings); ECF 13-26, 12–22 (Letter from Nat'l Immigrant Justice Ctr. et al. to U.S. Dep't of Homeland Sec. Office of Civil Rights & Civil Liberties (Nov. 13, 2014)); ECF 13-14, 5; ECF 13-6, 2; ECF 13-7, 3; ECF 13-12, 2–3; ECF 13-16, 2–3; ECF 13-9, 3; ECF 13-17, 3.

[8] *See also* ECF 13-26, 13, 21–23 (reporting officers "yell[] at noncitizens or forc[e] them to sign forms they do not understand," and "directly discourage asylum seekers" with misinformation about asylum law); ECF 13-32, 11–12; ECF 13-9, 2; ECF 13-16, 4–5; ECF 13-12, 2–3; ECF 13-10, 2–3.

decisions. Immigration officers have:

- incorrectly subjected noncitizens who were present for 14 days or more to expedited removal. *See, e.g.,* ECF 13-33, 37 (American Civil Liberties Union, *American Exile* (2014)) (describing erroneous expedited removal of an individual who had lived in the United States for 14 years);[9]

- failed to identify unaccompanied children, who by statute cannot be subjected to expedited removal. 8 U.S.C. §§ 1232(a)(2)(B), (5)(D). *See, e.g.,* ECF 13-33, 45–46 ("[I]n one three-week observation period alone, [an attorney] found that 34 of the 61 unaccompanied children who were repatriated had been classified as adults");[10]

- removed U.S. citizens, s*ee, e.g.*, *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1272–73 (M.D. Ga. 2012) (U.S. citizen erroneously issued expedited removal order);[11] and

- failed to advise noncitizens that they may request to withdraw their

---

[9] *See also* ECF 13-11, 2 (Delfunt Decl.) (same, for individual with three years' continuous residence).

[10] *See also* ECF 13-17, 3 (describing expedited removal of 16-year-old abuse survivor who feared return to Mexico).

[11] *See also* ECF 13-41 (*Maria de la Paz v. Jeh Johnson*, No. 1:14-CV-016 (S.D. Tex. habeas petition filed Jan. 24, 2014) (same); *Matter of Lujan-Quintana*, 25 I&N Dec. 53, 55 (BIA 2009) (same); ECF 13-37 (Ian James, *Wrongly Deported, American Citizen Sues INS for $8 Million*, L.A. Times (Sept. 3, 2000)); ECF 13-9, 3; ECF 13-33, 18–24.

applications for admission, *see, e.g.,* ECF 13-14, 5–6 (explaining "officers advise almost no one" of their right to request to withdrawal).[12]

## D. The Administration Dramatically Expanded Expedited Removal Without Addressing the Flaws of the Existing System or Inviting Pre-Promulgation Public Comment.

Despite these well documented flaws, on January 25, 2017, President Trump signed an Executive Order directing DHS to expand expedited removal to the maximum scope authorized by statute. Exec. Order No. 13767, Border Security and Immigration Enforcement Improvements, 82 Fed. Reg. 8,793, 8,796 (Jan. 30, 2017) (ECF 13-22). On February 20, 2017, then-DHS Secretary John Kelly announced he would expand expedited removal. Memorandum from John Kelly, Implementing the President's Border Security and Immigration Enforcement Improvements Policies (Feb. 20, 2017) (ECF 13-42). However, DHS took no further action for over two years.

On July 23, 2019, DHS published a Rule in the Federal Register immediately implementing President Trump's directive, without following the APA's notice-and-comment procedures or the general requirement that rules be published at least 30 days before they become effective. The Rule allows

---

[12] *Accord* ECF 13-15, 3. *See also, e.g., United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 999–1000 (D. Or. 2019) (invalidating expedited removal order on this basis); *United States v. Huazo-Garcia*, 2018 WL 2306890, at *2, *4 (E.D. Wash. May 21, 2018) (same).

immigration officers to apply expedited removal to noncitizens encountered *anywhere* in the country who cannot show that they have been continuously present for at least two years. *See* Designating Aliens for Expedited Removal, 84 Fed. Reg. 35,409, 35,409 (July 23, 2019) ("Rule").

DHS did not provide any advance comment period. If it had, the public would have put evidence before the agency concerning the differences between expedited removal's previous applications and its new expansion, and the consequences of applying expedited removal's flawed procedures to the new class of noncitizens. The Rule nowhere acknowledges these issues.

The Rule stated that it became immediately effective upon publication, on July 23, 2019. *See id.*

### E. Proceedings Below.

On August 6, 2019, approximately two weeks after DHS issued the Rule, Plaintiffs Make the Road New York, La Union del Pueblo Entero, and WeCount!—three membership organizations that represent immigrant communities and have individual members subject to the Rule—filed suit pursuant to 8 U.S.C. § 1252(e)(3), and sought a preliminary injunction.

On August 15—three weeks after the Rule was published—Defendants represented to the district court that they had not yet placed anyone into expedited removal pursuant to the Rule but intended to do so "beginning September 1." ECF

22, 3 (Aug. 15 Tr.). At oral argument on September 6, however, Defendants stated that they had still not used the Rule and could not say when they planned to. App.74, 123 (Sept. 6 Tr.). Defendants agreed to preserve the status quo for three weeks, until September 27, to give the district court time to rule on the pending preliminary injunction motion. ECF 31, 2 (Joint Status Report).

On September 27, the district court held that Plaintiffs were likely to succeed on their claims that the Rule violates the APA's requirements of notice-and-comment and reasoned decision-making. *See* 5 U.S.C. §§ 553(b), (c), 706(2)(A). The district court declined to reach Plaintiffs' remaining claims.

The court held that it had jurisdiction to review the Rule because "[8 U.S.C. § 1252(e)(3)] preserv[es] challenges to the validity of the system . . . .," brought within 60 days of implementation. App.250. The court rejected Defendants' position that the statute limits jurisdiction only to individuals subject to an expedited order of removal, in light of the statute's text and the perverse results that Defendants' interpretation would produce. App.243–56.

The court held that Plaintiffs had demonstrated associational standing and thus Article III standing. App.256–62. Defendants do not argue otherwise on appeal.

The court further held that Congress did not bar review over Plaintiffs' APA claims by providing in 8 U.S.C. § 1225(b)(1)(A)(iii) that the "designation" of

additional groups for expedited removal "shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time." App.276–77. The court concluded that although Section 1225(b)(1)(A)(iii) bars challenges to the agency's ultimate decision to designate noncitizens for expedited removal, it did not bar challenges to the "*process* the agency employs to reach that conclusion." App.278.

On the merits, the district court held the Rule was subject to the APA's notice-and-comment requirements, App.292–93, 295, and found no good cause to bypass those procedures. App.293–96. Moreover, the court held the Rule was likely "promulgated in an arbitrary and capricious fashion," App.296, because DHS had failed to consider widely-available evidence of the serious flaws in the expedited removal process and their impact on the new class of noncitizens covered. App.305.

Finally, the court preliminarily enjoined the Rule. App.338. The court rejected Defendants' request to limit relief to Plaintiffs and their members, explaining that Defendants' proposal was "entirely impractical," would not give Plaintiffs complete relief, and was "flatly inconsistent" with the ordinary rule of providing programmatic relief in APA cases. App.219–20.

## STANDARD OF REVIEW

The district court's legal conclusions are reviewed de novo, and its findings

of fact for clear error. *Gordon v. Holder*, 721 F.3d 638, 644 (D.C. Cir. 2013)

(citation omitted). The district court's weighing of the preliminary injunction

factors, and its ultimate decision to grant relief, are reviewed for abuse of

discretion. *Id.*

## SUMMARY OF ARGUMENT

The district court should be affirmed.

The administration's unprecedented decision to expand expedited removal to

apply to hundreds of thousands of noncitizens with substantial connections to the

United States is precisely the sort of "implementation" decision over which

Congress affirmatively provided judicial review. *See* 8 U.S.C. § 1252(e)(3).

Defendants take the position that Section 1252(e)(3) limits jurisdiction to

claims brought by individual Plaintiffs who have received an expedited removal

order. Br.23. But nothing in the text of the statute supports that position.

Defendants' interpretation would undermine Congress's clear intent to guarantee

judicial review over "implementation" of the expedited removal statute. It would

provide Defendants unchecked discretion to manipulate the availability of judicial

review by controlling when expedited removal is applied, and by depriving

impacted parties of clear notice of when judicial review is available. *See* Point I, *infra*.

This Court's decision in *AILA v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000), does not compel an alternate conclusion. The Court did not and could not have addressed the question here, as the plaintiffs in *AILA* were asserting third-party standing claims, which Plaintiffs do not advance.

The Court has jurisdiction to review Plaintiffs' claims that the Rule was issued in violation of the APA's procedural requirements. The Immigration and Nationality Act's ("INA") bar on discretionary decisions, 8 U.S.C. § 1252(a)(2)(B), does not apply to the decision to expand expedited removal. Even if it did, the provision providing the Secretary power to designate noncitizens provides "sole and unreviewable discretion" over only the ultimate "designation" and not over the process by which "such designation" is reached. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I); Point II, *infra*.

Defendants violated the APA's notice-and-comment procedures. *See* 5 U.S.C. §§ 553(b),(c). As this Court has repeatedly held, these procedures apply unless Congress clearly states otherwise. No language in the INA supersedes or conflicts with those requirements. Nor have Defendants shown good cause to waive them. *See* Point III.A., *infra*.

17

The Rule is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). Defendants did not consider the consequences of applying expedited removal's flawed procedures to the new class of noncitizens. *See* Point III.B., *infra*.

Finally, the preliminary injunction should be affirmed. The ordinary relief in APA cases is that a procedurally invalid rule is vacated. Moreover, Section 1252(e)(3) directs a single district court to rule on the validity of new implementations of expedited removal. Defendants' proposal to narrow the injunction to Plaintiffs' members is impractical and would not provide effective relief. *See* Point IV, *infra*.

## ARGUMENT

### I.  8 U.S.C. § 1252(e)(3) Provides Jurisdiction.

By its plain language, Section 1252(e)(3) affirmatively provides that judicial review "is available" of both "determinations under Section 1225(b) of this title *and* its implementation." 8 U.S.C. § 1252(e)(3)(A) (emphasis added). Section 1252(e)(3)(B) requires that suits be brought "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." *Id*. Plaintiffs brought their suit within the 60-day deadline. The statute therefore provides review. App.251–52.

1.    Defendants claim that Section 1252(e)(3) makes review "available" *only* where there is a "determination under Section 1225(b)." Defendants take a

"determination" to mean an individual order of expedited removal. Br.24. But that is not what 1252(e)(3) says. Defendants' give no meaning to the "and its implementation" clause, rendering it superfluous. *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) ("[E]ach word Congress uses is there for a reason."). Moreover, the antecedent of "*its* implementation" is the singular *"statute*," not the plural "determinations," confirming that judicial review is provided both to "determinations under section 1225(b)(1)" *and* the "implementation" of Section 1225(b)(1). If Congress had wanted to make the existence of a "determination" or an "expedited removal order" a necessary predicate for any Section 1252(e)(3) action, it could have done so.

Defendants attempt to support their interpretation by pointing to the title of Section 1252(e), which refers to "[j]udicial review of orders under section 1225(b)(1)." Br.23. But the title of subsection (e)(3) refers to "challenges on [the] validity of the system." And ultimately, no title is as significant as the text of the statute itself, which plainly provides for review. *See Murphy Exploration & Production Co. v. U.S. Dep't of the Interior*, 252 F.3d 473, 481 (D.C. Cir. 2001) (A statute's "title cannot be used to 'limit the plain meaning of the text.'").

Nor do the other provisions Defendants cite support their argument. *See* Br.23–24 (citing 8 U.S.C. §§ 1252(a)(ii), (iv)). In each Congress specifically preserved review "as provided in subsection [1252](e)."

The statute in fact provides *expansive* review over claims relating to

expedited removal "regulation[s], . . . written policy directive[s], written policy

guideline[s], or written procedure[s]," so long as they are brought within 60 days

of "implementation." 8 U.S.C. § 1252(e)(3)(A)(ii).

2.      Defendants further assert that "implementation" comes (at the earliest)

the first day a person is ordered removed under the new Rule. Br.28. The text of

Section 1252(e)(3) does not support that assertion. Rather, it focuses on review of

*written* policies and procedures, *not* their application to individual cases. And it

nowhere indicates congressional concern with suits being brought too *soon*; on the

contrary, the text aims at resolving systemic expedited removal issues as quickly as

possible. *See* 8 U.S.C. §§ 1252(e)(3)(B) (suit must be filed "no later than" 60 days

after implementation), (e)(3)(D) (providing for expeditious consideration).

3.      Under Defendants' interpretation of the 60-day deadline and who can

bring a Section 1252(e)(3) challenge, they would have "a free hand to shelter

[their] own decisions" from review. *Kucana v. Holder*, 558 U.S. 233, 252 (2010).

For instance, Defendants could announce a national policy but put only a single

noncitizen in expedited removal without public notice, thereby (under their

interpretation) triggering the 60-day clock. That lone, likely *pro se*, noncitizen may

have no idea how to seek recourse in federal court, and would be swiftly deported.

The 61st day after that lone deportation, Defendants could begin subjecting

thousands of individuals to expedited removal, then claim the statutory clock began running, unbeknownst to the public, with the removal of the first noncitizen. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 140 (D.D.C. 2019) (rejecting argument that review vests only after "determination" in individual plaintiffs' cases).

The history of this case underscores the risks of Defendants' interpretation. Though the Rule itself was publicly declared as "immediately effective" in the Federal Register, after Plaintiffs filed suit, Defendants revealed that they had *privately* intended to wait at least 40 days before enforcing the Rule. And even when *that* day came, Defendants could not say when they would begin enforcement in earnest. Absent this lawsuit, Defendants' enforcement plans would be hidden from the public and those directly impacted by the Rule—meaning that if Defendants' interpretation of Section 1252(e)(3) were right, the public would not have known when the 60 day clock started. Congress cannot have intended such an absurd and unfair judicial review scheme.

4.    Defendants claim that *AILA v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000), precludes jurisdiction here. Br.23 (citing *AILA*, 199.F.3d at 1360). But that is not what *AILA* held.

The part of *AILA* on which Defendants rely addressed a third-party standing claim by organizations who alleged that the expedited removal "system violates, *not [the plaintiff organization's] rights or the rights of their members*, but the

constitutional and statutory rights of unnamed aliens who were or might be subject to the statute and regulations." *Id.* at 1357 (emphasis added). The Court's concern with plaintiffs' "unbounded" theory of standing was that it would "sweep in nearly all aliens anywhere in the world" and "impose[] no confining influence on the scope of the lawsuit." *Id.* at 1359.

Accordingly, *AILA*'s analysis was framed and guided by third-party standing doctrine. First, the Court determined that the plaintiff organizations had *not* met the prudential test for third-party standing because they failed to show a "hindrance to the third-party's ability to protect his or her own interests." *Id.* at 1362. Second, the Court considered whether Congress had expressed an *affirmative* intent to "relax the prudential standing rules" barring third-party standing, and—upon review of the statute—concluded Congress had not. *Id.* at 1364. The Court did not ask the relevant question here, which is whether the statute expresses an *affirmative* intent to withdraw jurisdiction over parties who meet traditional standing requirements. As explained *supra*, nothing in the statute does so.

Thus, the language Defendants cite from *AILA* is inapplicable. The Court in *AILA* did not have occasion to address the availability of individual pre-enforcement standing under the statute, because no such parties were before it. The Court *was* presented with associational standing claims, which it dismissed *not* because such standing was categorically unavailable, but because the *AILA*

22

plaintiffs had not established associational standing. *AILA*, 199 F.3d at 1357; *see also AILA v. Reno*, 18 F. Supp. 2d 38, 51 (D.D.C. 1998). Thus, instead of holding that there is a broad prohibition on Section 1252(e)(3) suits brought by organizations, as Defendants suggest it did, this Court simply considered whether the ordinary associational standing requirements were met.

Here, in contrast, it is undisputed that Plaintiffs have established Article III associational standing. Each Plaintiff organization has identified at least one individual member who faces the imminent injury of being placed into expedited removal under the Rule. App.257–59. The Plaintiff organizations' interests are germane to the members' interests, and the matter does not require the members' participation. App.261. As such, the Plaintiffs are "appropriate representative[s]" of their members, whose claims confine the scope of the lawsuit. *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

Finally, the Court's analysis even specific to the third-party standing claim relied heavily on the factual backdrop. More than 10,000 noncitizens had been subject to expedited removal in the 60-day period, thus raising the question of why no injured parties were before the Court. *AILA*, 199 F.3d at 1363.

## II.   The Court Has Jurisdiction Over Plaintiffs' Procedural Challenges.

Defendants argue there is no judicial review of *any* part of the decision to expand expedited removal. Br.24. That cannot be squared with the express intent

of Congress to provide for review of implementations of the expedited removal system. *See* 8 U.S.C. § 1252(e)(3).

Defendants argue that two sections of the INA work in tandem to remove judicial review over Plaintiffs' claims. Their argument begins with Section 1252(a)(2)(B)(ii), which they claim bars judicial review of *all* agency decisions "the authority for which is specified . . . to be in the discretion of the Secretary." They locate the necessary "specified" discretion in Section 1225(b)(1)(A)(iii)(I), which provides the authority to designate noncitizens for expedited removal. That statute states that "such designation shall be in the sole and unreviewable discretion" of the Secretary. *Id.*

Defendants are wrong on both statutes. Neither applies to bar review of Plaintiffs' challenges.

A.    **Section 1252(a)(2)(B)(ii) Does Not Preclude Review.**

Section 1252(a)(2)(B)(ii) bars review only where a plaintiff seeks review of a discretionary ruling, not review of a legal claim. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that Section 1252(a)(2)(B)(ii) did not bar review of a legal claim challenging a discretionary detention decision). For that reason alone, it does not bar review over Plaintiffs' claims, which attack the Rule's violation of the APA's mandatory procedures.

Section 1252(a)(2)(B) also does not apply because it bars review of only discretionary denials of immigration relief. App.254–56. The provision's title states that it applies to "Denials of discretionary relief," meaning substantive decisions on a noncitizen's right remain in the United States. Subsection (B)(i) likewise provides that "no court shall have jurisdiction to review [] any judgment regarding the granting of relief under" five specified sections, all of which refer to forms of discretionary immigration relief. *See Kucana*, 558 U.S. at 247–48.

Subsection (B)(ii), at issue here, is a catch-all that applies to "any *other* decision or action" specified under this subchapter to be discretionary. 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). To render the "any other decision or action" language consistent with the whole sentence, it must be read to apply *only* to those "other" decisions similarly implicated in the denial of discretionary relief. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (explaining that a "residual clause" should be interpreted as limited by "the enumerated categories . . . which are recited just before it"). The last clause of the sentence reinforces this reading, as it preserves jurisdiction over "the granting of relief under section 1158(a)"—*i.e.*, asylum decisions. *See Kucana*, 558 U.S. at 248 (observing the "[o]ther decisions . . . shielded from court oversight" by Section 1252(a)(2)(B)(ii) "are of a like kind" to the remainder of the statute); *id.* (listing statutes related to admission or relief).

**B.    Section 1225(b)(1)(A)(iii) Accords Discretion Only to an Ultimate *Designation* and Thus Does Not Preclude Review Over Plaintiffs' Procedural Challenges.**

By its plain terms, Section 1225(b)(1)(A)(iii) accords discretion only to "designations"—not to the unlawful adoption of such designations, without adherence to the APA's procedural requirements.

1.    There is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670–71 (1986); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001). Defendants have not provided "clear and convincing evidence" in the text of Section 1225(b)(1)(A)(iii) to meet their "heavy burden" of showing that Congress prohibited judicial review of Plaintiffs' challenges to the process used to reach the designation. *Bowen*, 476 U.S. at 671.

Consistent with *Bowen*, courts narrowly read language similar to that in Section 1225(b)(1)(A)(iii) to preserve review over claims that challenge a defect in the decision-making process, rather than the ultimate decision itself. In *McNary v. Haitian Refugee Ctr.,* 498 U.S. 479 (1991), the Court considered a statute that barred review "of a *determination* respecting *an application*" for immigration status. *Id.* at 483–84, 491–92. The Court held that "'a determination' describes a single act rather than a group of decisions or a practice or procedure employed in making decisions." *Id.* at 492. Where a challenger does "not seek a substantive

26

declaration that they are entitled to" status in an individual case, but rather

challenges the process by which the decision was reached, a bar on "review of

[the] determination" did not preclude review of such collateral issues. *Id.* at 495.

*Accord Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993). In *ParkView*

*Med. Assocs., L.P. v. Shalala*, 158 F.3d 146 (D.C. Cir. 1998), this Court construed

a bar on judicial review of "the *decision* of the Secretary" to deny a hospital

reclassification request as "leav[ing] hospitals free to challenge the general rules

leading to denial." *Id.* at 148 (emphasis added).

The statute here accords discretion narrowly over "such designation," and

not the act or process of designating. Plaintiffs' claims do not challenge this

ultimate designation, but simply the failure to follow a required process in reaching

it. App.272. Specifically, Plaintiffs' notice-and-comment claim requires

Defendants to follow a generally-applicable process for agency decision-making.

Likewise, Plaintiffs' arbitrary and capricious claim focuses on Defendants' failure

to consider widely-available evidence in its decision-making. As the district court

explained, neither claim dictates Defendants' ultimate decision: Defendants may

make the same designation, so long as they adhere to the required procedures. *Id.*

2.    Defendants do not address the statute's specific choice to apply

discretion to "such designation." Instead, Defendants rely on out-of-circuit cases

interpreting the Adam Walsh Child Protection and Safety Act of 2006 ("AWA"),

27

Pub. L. No. 109-248, § 402(a)(2), 120 Stat. 587, 622 (Jul. 27, 2006), codified at 8

U.S.C. § 1154(a)(1)(A)(viii)(I), to argue that the phrase "sole and unreviewable"

precludes Plaintiffs' claims. *See* Br.29, 32–33, 41–42. That reliance is misplaced.

The AWA provides that a citizen convicted of certain offenses against minors may

not petition for a visa "unless the [DHS Secretary], in [his] sole and unreviewable

discretion, *determines* that the citizen poses no risk[.]" 8 U.S.C. §

1154(a)(1)(A)(viii)(I) (emphasis added). The cases Defendants cite distinguished

*Bowen* and its progeny by interpreting the term "determine" as a verb—"rather

than a noun like 'decision' that refers only to the final conclusion"—thus

extending "discretion to the act of the determining rather than only to the final

determination." *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 542–43

(11th Cir. 2019). *See also, e.g., Bakran v. Sec'y, U.S. Dep't of Homeland Sec.*, 894

F.3d 557, 563 (3d Cir. 2018) ("determines" means "to come to a decision

concerning as the result of investigation or reasoning") (internal quotation marks

omitted). In contrast, the term "such designation" can only refer to the single, final

decision.

Defendants also cite cases about visa revocations under 8 U.S.C. § 1155, to

suggest that use of the phrase "at any time" removes review over procedures

leading up to a discretionary decision. Br. 29–30 (citing, *inter alia*, *Jilin Pharm. v.*

*Chertoff*, 447 F.3d 196, 203 (3d Cir. 2006)). But in that context, courts have held

that judicial review remains over the procedure surrounding the substantive decision. *See*, *e.g.*, *Mantena v. Johnson*, 809 F.3d 721, 728 (2d. Cir. 2015) ("no party has provided authority to suggest that the *procedure* surrounding the substantive decision is . . . shielded."); *Kurapati v. U.S. Citizenship & Immigration Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) (recognizing that if "USCIS failed to follow the correct procedure in revoking the [] petitions, that failure was not within USCIS's discretion").[13]

## III.    Defendants Violated the APA's Procedural Requirements.

Defendants issued the Rule in violation of the mandatory procedures of the APA: notice-and-comment and reasoned decision-making. Both requirements exist to ensure that an agency reaches an ultimate decision in an informed and reasoned fashion. The "notice-and-comment requirement helps to ensure that the rule is subjected to thoroughgoing analysis and critique by interested parties and the agency." *Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995). The prohibition on arbitrary and capricious decision-making "promotes thought by the decision-maker and compels him to cover the relevant points and eschew irrelevances." *Id.*

---

[13] Similarly, the statutory language in *Amgen, Inc. v. Smith* targeted "[*t*]*he development* of the [prospective payment] classification system . . . including other adjustments," 42 U.S.C. § 1395l(t)(12)(A), and thus covered the process by which the system was created along with the system itself. 357 F.3d 103, 111 (D.C. Cir. 2004) (emphasis added).

A.    **The Rule Violated Notice-and-Comment.**

1. **Congress Did Not Expressly Supersede the APA's Notice-and-Comment Requirements.**

A "[s]ubsequent statute may not be held to supersede or modify" APA requirements "except to the extent that it does so expressly." 5 U.S.C. § 559. Accordingly, this Court has "looked askance at agencies' attempts to avoid the standard notice and comment procedures" and directed that exceptions "must be narrowly construed and only reluctantly countenanced in order to assure that an agency's decisions will be informed and responsive." *Asiana Airlines v. FAA*, 134 F.3d 393, 396 (D.C. Cir. 1998) (internal quotation marks omitted). Congress must either specify that the APA's notice-and-comment procedures are not required, *see, e.g.*, *Catawba County v. EPA*, 571 F.3d 20, 32 (D.C. Cir. 2009), or "establish[] procedures so clearly different from those required by the APA that it must have intended to displace the norm." *Asiana Airlines*, 134 F.3d at 397.

Defendants assert that Section 1225(b)(1)(A)(iii)(I) displaces the APA by according "sole and unreviewable" discretion to a "designation," and indicating that it may be made at "any time." Br.32–33. But, as already addressed, the statute eliminates judicial review only over the substantive "designation," and not the process by which the designation is reached. Point II.B, *supra*. Notice-and-comment procedures go to that process, regardless of whether the ultimate designation is judicially reviewable. *Cf. Lincoln v. Vigil*, 508 U.S. 182, 195 (1993)

(notice-and-comment claim addresses issues "quite apart from the matter of substantive reviewability"). And the mere refusal to put temporal limits on the agency's designation authority cannot be read to bypass regular APA procedures.

The statute does not provide an *express* statement that the APA's notice-and-comment procedures do not apply. *Compare, e.g., Catawba County*, 571 F.3d at 32 (express displacement provided by statement that "[p]romulgation or announcement of a designation . . . shall not be subject to the provisions of sections 553" relating to notice-and-comment).

Nor does the "at any time" language impose "clearly different" procedural requirements that cannot be "harmonize[d] with simultaneous application of § 553." *Asiana Airlines*, 134 F.3d at 398. As the district court explained, the language simply provides that "DHS can modify the . . . designation at any time after the enactment of IIRIRA in 1996, without additional authorization from Congress." App.269–70 (emphasis omitted).

### 2.  The Rule is Legislative.

"[A] binding rule promulgated pursuant to a delegation of legislative authority is the clearest possible example of a legislative rule."  *Mendoza v. Perez*, 754 F.3d 1002, 1022 (D.C. Cir. 2014). The Rule easily satisfies this standard. Congress delegated to the Secretary the authority to modify the scope of expedited removal, which the Rule invokes. Moreover, the Rule "impose[s] legally binding

obligations or prohibitions on regulated parties . . . that would be the basis for an enforcement action . . . ." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014). Under the Rule, noncitizens who fail to show that they have been continuously present for two years are subject to expedited removal. Thus, it cannot remotely be said that the Rule "has no legal impact." *See id.* at 252.

Defendants rely on the discretion the Rule accords line officers to choose whether to place an individual into expedited removal. Br.35–36. But that is precisely the point—before, DHS officers had *no* discretion to put a noncitizen who was present for more than 14 days into expedited removal. The Rule now permits what was previously prohibited. Thus, the Rule "establishes a standard of conduct which has the force of law in subsequent proceedings." *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046 (D.C. Cir. 1987) (internal quotations marks omitted). Moreover, the "less-than-uniform impact" of a legislative rule does not turn it into a policy statement. App.290. What is "significant" is that even discretionary applications of a new standard will "bring adverse consequences." *EPIC v. U.S. Dep't Homeland Sec.*, 653 F.3d 1, 7 (D.C. Cir. 2011).

### 3.  Defendants Have Not Shown "Good Cause" to Bypass Notice-and-Comment.

Defendants claim "good cause" on both impracticability and public interest grounds. But the APA "excuses notice and comment in emergency situations, or where delay could result in serious harm." *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C.

Cir. 2004) (citations omitted). Defendants have not met the "meticulous and demanding" test to demonstrate "good cause." *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014).

As to impracticability, Defendants' sole argument is that notice-and-comment procedures are inconsistent with Section 1225(b)(1)(A)(iii)(I)'s statement that a designation may be "modified at any time."[14] But, as explained in Point III.A.1, *supra*, this language does not exempt the agency from notice-and-comment. Nor does it demonstrate impracticability, as Defendants *are* free to modify a designation "at any time," so long as they proceed through notice-and-comment. *Compare Jifry*, 370 F.3d at 1176 (finding impracticability where bypassing notice-and-comment was "necessary to prevent a possible imminent hazard to aircraft, persons, and property within the United States").

With regard to public interest, Defendants speculate that delay would cause "a surge in migration across the southern border during a notice-and-comment period," threaten "national security and public safety," and cause "destabilizing effect[s]" and "significant loss of human life." Br.37 (citing 84 Fed. Reg. at 35,413). But Defendants' own actions undermine any claim of urgency. If a delay would trigger a catastrophic surge, Defendants would not have announced the

---

[14] Defendants rely on language in 8 C.F.R. § 235.3(b)(1)(ii) providing that a "designation shall become effectively immediately upon issuance," but a regulation cannot trump the procedures Congress mandated in the APA.

expansion on February 20, 2017, only to publish the Rule *more than two years later* on July 23, 2019. App.295–96.

Defendants have utterly failed to meet their burden. *See Sorenson*, 755 F.3d at 706–07 (explaining good cause must be supported by "factual findings," not "unsupported assertion" or evidence "too scant to establish a[n]. . . emergency"); *Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 581 (D.C. Cir. 1981) (good cause shown where rule was of "life-saving importance"). There is nothing in the record demonstrating that large numbers of migrants would suddenly rush across the border before a final rule could be promulgated. Defendants' few record citations say nothing on this topic. *See* Br.38–39 (citing App.577 (noting "outdated laws"—not policy shifts—create a "pull factor"); App.481 (noting that DHS "faces a challenging task" due to "policy shifts related to recent EOs," and not that "surges" had occurred in response to policy changes); App.523 (noting that increase in asylum and credible fear cases has presented DHS with enforcement challenges); App.774 (incorrect, unrelated citation); App.865 (noting "surges" may require more detention beds); *see also* App.354–76 (describing migration trends over six years, without identifying any surges in response to policy changes); App.351 (same, for past two years).

Although Defendants seek deference to its "predictive judgments," *see* Br.39, there can be no deference without evidentiary support. *See Nat'l Lifeline*

*Ass'n v. FCC*, 915 F.3d 1102, 1113 (D.C. Cir. 2019); *Time Warner Entm't Co., L.P. v. FCC*, 240 F.3d 1126, 1133 (D.C. Cir. 2001).[15] Defendants' view of noncitizens' migration decisions also strains credulity. What noncitizen would know enough about agency rules to exploit the delay caused by notice-and-comment procedures, but *not* know that—because the Rule expands expedited removal throughout the United States and includes all those present for less than two years—their recent entry would not even protect them from the Rule's application?

### B. The Rule Is Arbitrary and Capricious.

#### 1. Plaintiffs' Arbitrary and Capricious Claim is Reviewable.

Defendants again argue no court can review Plaintiffs' arbitrary and capricious claim because a designation is committed to the Secretary's "sole and unreviewable" discretion. Br.40–43. As explained in Point II.B, *supra*, Defendants are wrong.

Defendants further contend that the designation "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Br.40–41 (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). But Section 701(a)(2) is restricted "to those rare

---

[15] Defendants cite *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), but there the Supreme Court deferred to the government's judgments regarding the prevention of terrorist attacks. *See id.* at 34-35. Defendants assert no comparable national security concerns here.

circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) (internal quotation marks omitted). This inquiry looks to "the overall statutory scheme" to ascertain the "'law to apply.'" *Franklin v. Massachusetts*, 505 U.S. 788, 819–20 (1992).

The INA is not "drawn so that it furnishes no meaningful standard." *Dep't of Commerce*, 139 S. Ct. at 2568. The expedited removal statute delineates a process by which officers decide whether expedited removal applies and whether noncitizens should receive further proceedings on their claims for protection or regarding lawful status. *See* Statement, *supra*, at Part B. Defendants were required to consider the ability to administer these standards accurately and fairly when applying expedited removal to the new class of noncitizens. *Cf. Abourezk v. Reagan*, 785 F.2d 1043, 1051 (D.C. Cir. 1986) (holding that INA "emphatically did not commit the decision to exclude an alien to standardless agency discretion").[16]

---

[16] Defendants cite *Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011), but there the agency's refusal to stop construction of two emitting facilities fell within its permissible enforcement discretion. *Id.* at 856–57. Here, Plaintiffs do not even challenge a nonenforcement decision. *See Dep't of Commerce*, 139 S. Ct. at 2568 (explaining that Section 701(a)(2)'s exception is "generally limited" to decisions "traditionally" deemed discretionary, like nonenforcement decisions) (internal quotation marks and citations omitted).

### 2. Defendants Failed to Consider Important Aspects of the Problem.

The APA requires agencies to "provide a reasoned explanation for [their] action[s]." *Judulang v. Holder*, 565 U.S. 42, 45 (2011). An agency may not "entirely fail[] to address an important aspect of the problem . . . ." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Genuine Parts Co. v. EPA*, 890 F.3d 304, 307 (D.C. Cir. 2018) (invalidating action where agency "entirely failed . . . to address evidence that runs counter to the agency's decision").

In the past two decades, study after study—including two Congressionally-commissioned reports—has documented the numerous problems with the expedited removal system. *See* ECF 13-30 (2005 USCIRF Study); ECF 13-31(2016 USCIRF Study). *See* Statement, *supra*, at Part C. Those problems include the application of expedited removal to individuals not subject to the statute, widespread coercion, failure to adhere to regulatory procedures, and interpretation failures. *See* App.297, 300–02; *see also, e.g.*, ECF 13-30 (2005 USCIRF Study); ECF 13-31 (2016 USCIRF Study); Statement, *supra*, at Part C. This evidence was extensive and well-known to the government. *Cf. Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1147 (D.C. Cir. 2005) (holding rule regarding driver training was arbitrary and capricious for overlooking findings and recommendations in earlier report).

Defendants then took this deeply flawed system and applied it to a new population. The combination of the flawed system and the scope of the new application creates a high risk of error. The vast majority of undocumented immigrants have lived here for over two years. ECF 13-35, 7–8 (Ctr. for Migration Studies, U.S. Undocumented Population Continued to Fall from 2016 to 2017, and Visa Overstays Significantly Exceed Illegal Crossings for the Seventh Consecutive Year (Jan. 16, 2019)) (suggesting that as of 2016, less than 4% of undocumented population present for less than two years had entered without inspection). Yet because of the geographic scope of the Rule, the *entire* population of undocumented immigrants is subject to expedited removal unless they can affirmatively prove their continuous presence, thus heightening the risk of erroneous removals.

Similarly, the flawed system will be applied to a new class whose eligibility for expedited removal presents a more complex inquiry. Proving continuous presence, while detained and alone, would be challenging for a U.S. citizen or lawful permanent resident, let alone an undocumented person. What is more, noncitizens already living in the United States may be seeking immigration relief that could put them outside expedited removal's reach. *See, e.g., Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 170–71 (3d Cir. 2018) (discussing parole based on application for Special Immigrant Juvenile Status). Individuals may have other

defenses, such as having lawful status or U.S. citizenship, that are complex and difficult to articulate. Yet in adopting the Rule, Defendants showed no awareness of the problems with their existing system or the consequences of applying it to large numbers of people in the interior. *See* App.299–302, 305–06.

This is textbook arbitrary and capricious action. *See, e.g.*, *Nat'l Lifeline Ass'n*, 915 F.3d at 1113 (holding agency failed to consider that elimination of subsidy would cause "many low-income consumers on Tribal lands [to] lose access to affordable telecommunications service"); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 930–31 (D.C. Cir. 2017) (finding agency had failed to address "relevant environmental concern" and "denied its very existence"). *See also* App.299 (concluding that "agency cannot possibly conduct reasoned, non-arbitrary decision making concerning policies that might impact *real* people and not take such *real life circumstances* into account.").

### 3.  Defendants' Counterarguments Lack Merit.

Defendants justify the Rule based on the Secretary's conclusion that it would allow DHS to "'more effectively and efficiently . . . fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders.'" Br.43 (quoting 84 Fed. Reg. at 35,411). DHS was certainly entitled to base its expansion on such considerations. However, DHS failed to consider the well-known flaws in

the expedited removal process, and the consequences of imposing it onto a new population. *See* App.300–01.

Defendants also state that the Secretary considered the adequacy of the existing procedures by "noting that [existing regulations] must be applied to" the new class. Br.44. But again Defendants did not examine evidence of the flawed use of those procedures and the consequences of applying them. *See* App.299–302, 205–06.

Nor did the district court substitute its own judgment for the Secretary's. *See* Br.45. The court merely found the agency solely considered the Rule's benefits, without also considering its adverse impacts. *See* App.300–01, 306–08; *see also, e.g., Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d at 1147.[17]

Defendants complain that the district court relied on extra-record materials. Br.45–46. However, Defendants' administrative record is incomplete. The over-5,000 page record omits *any* studies of the deficiencies of the expedited removal process—including two widely-cited congressionally-commissioned reports. *See* ECF 13-30 (2005 USCIRF Study); ECF 13-31 (2016 USCIRF Study).

---

[17] Defendants also cite *Time Warner Entm't Co., L.P.*, 240 F.3d at 1133, but there the Court *declined* to defer to the agency's judgment because it had put forth no evidence in support of its rule.

Even were the record complete, the Court should consider much of Plaintiffs' allegedly extra-record evidence as it demonstrates how Defendants failed to examine relevant factors. Examination of extra-record evidence is permitted where "the procedural validity of the [agency's] action . . . remains in serious question," *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), and "the administrative record itself is so deficient as to preclude effective review." *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013). This exception includes cases, as here, where "the agency failed to consider factors which are relevant to its final decision . . . ." *Esch*, 876 F.2d at 991 (internal quotation marks omitted). *See also James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996).

Indeed, Plaintiffs' counsel provided Defendants extensive evidence of problems in the expedited removal system prior to publication of the Rule. *See* ECF 13-27, 2–13 (May 1, 2019 letter from Plaintiffs' counsel providing 30 supporting exhibits, including ECFs 13-24–13-26; 13-30–13-34; 13-37; 13-41); ECF 13-27, 14–15 (acknowledging receipt, two weeks prior to Rule). That this information nonetheless does not appear in the record underscores Defendants' failure to consider relevant factors.[18]

---

[18] This Court should also consider government documents and public records that are subject to judicial notice. *See* ECF 13-23–13-26; 13-28–13-31; 13-40–13-41.

Finally, the injunction is entirely consistent with *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985). The district court did not create a new record, but reviewed the inadequacies of the agency's current one. The injunction leaves the agency free to engage in "additional investigation or explanation" should it wish to reissue the Rule in the same or modified form. *Id*. at 744.

## IV.    The Preliminary Injunction Is Warranted.

### A.    The Preliminary Injunction Is Not Overbroad.

Defendants argue that the district court improperly entered a "nationwide injunction" and that relief should be restricted to Plaintiffs' "identified" members. Br.46–48. However, the ordered remedy is consistent with the relief presumptively available in APA actions. App.322–23. Section 706(2)(A) empowers courts to "hold unlawful and *set aside* agency action"—including agency rules. *Id*. (emphasis added). Thus, when federal courts determine that a rule is unlawful, "'the ordinary result is that the *rules* are vacated—not that their application to the individual [plaintiffs] is proscribed.'" *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*,

---

*See also Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) (taking judicial notice of government reports); *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (same, of existence of legislative records); *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (court records); *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (newspaper articles).

878 F.2d 484, 495 n.21 (D.C. Cir. 1989)) (emphasis added). *See also id.* (discussing *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), and concluding that "all nine justices" appeared to share the same view). The government cites no case by this Court to the contrary.[19]

Defendants argue that this "ordinary result" applies only to final judgments, not preliminary relief. Br.56–57. But courts can grant the same relief on a preliminary basis, *see, e.g., Nat'l Assoc. of Farmworkers Orgs. v. Marshall,* 628 F.2d 604, 622 (D.C. Cir. 1980), and there were good reasons to do so here.[20] Nationwide relief is consistent with the purpose of Section 1252(e)(3), which provides for "challenges on [the] validity of the *system.*" *Id.* (emphasis added). No prudential concerns weigh against nationwide relief. Because Section 1252(e)(3) venues systemic challenges exclusively in the District of Columbia, there is no need to promote inter-circuit percolation or prevent forum shopping. *Compare California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018). To the contrary, practical considerations support the injunction. Absent broader relief, other similarly

---

[19] Defendants rely on one sentence from *Va. Society for Human Life v. Fed. Election Comm'n*, 263 F.3d 379, 393 (4th Cir. 2001), but that decision does not square with this Court's precedent. Defendants also invoke general "principles of equity," *see* Br.46–47, but none of the cases they cite concern injunctions under the APA.

[20] Defendants cite *Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326 (D.C. Cir. 2006), but that case did not even involve preliminary relief; the Court overturned the vacatur of the agency's policies because Nebraska had not sought vacatur in the first place. *See id.* at 330.

situated plaintiffs would seek relief before the same court on identical claims, creating unnecessary and duplicative litigation. *See Nat'l Mining Ass'n*, 145 F.3d at 1409.

Moreover, as the district court found, Defendants' alternative proposal—whereby Plaintiffs' members would be required to disclose their identities to the very agency that seeks their deportation—is unworkable. Because members would be chilled from coming forward, Defendants' proposal would effectively eliminate relief. *See* App.328 (explaining that remedies must "work *in practice*."). Thus, Defendants have failed to show that a narrowed injunction would provide complete relief to Plaintiffs.

### B.    The INA Does Not Prohibit the Preliminary Injunction.

Defendants contend that the INA bars the injunction. Br.51–55. But nothing in Section 1252(e) specifies the relief available in a Section 1252(e)(3) suit. Given that silence, the ordinary rule applies: "Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).

Defendants assert that Section 1252(e)(3) does specify a remedy, namely, "a 'determination'" of the legality of a written policy or rule. Br.51. But Section

44

1252(e)(3)'s use of "determinations" is not about relief, but the scope of *review*. It makes clear that a court can decide constitutional challenges to Section 1225(b), or statutory and other legal challenges to a regulation or other written policy implementing Section 1225(b). *See* 8 U.S.C. § 1252(e)(3)(A) ("Judicial *review . . .* shall be limited to determinations of whether" the challenged rule or policy is contrary to law, or the statute or regulation is constitutional) (emphasis added).

In contending otherwise, Defendants warp the term "determination" beyond recognition. They assert that "determination" is a form of relief—the exclusive form, they say, Br.51—but that is not how the word "determination" is used elsewhere in Section 1252(e). For example, in an individual habeas case, the statute limits the "determinations" a court can make to certain *conclusions* and separately addresses the "remedy or relief" the court can order *based on such conclusions. See* 8 U.S.C. §§ 1252(e)(2), (e)(4). So, too, Section 1252(e)(3) limits the issues the court can decide, but unlike an individual habeas, the statute does not limit the remedies that are permissible based on such a decision.

Defendants do not say what kind of relief they believe a "determination" to be. In another case before this Court, however, they have conceded that "declaratory" and "set aside relief" *would* be available in a Section 1252(e)(3) action. Appellants' Reply Br. at 10, *Grace v. Barr*, No. 19-5013 (D.C. Cir. Aug. 22, 2019). Yet Defendants have never explained how the statutory term

45

"determination" can be read to include declaratory relief and the setting aside of unlawful policies, but *not* injunctions. The reality is Defendants are reading far more into that term than it can bear.

And indeed, Defendants' contrary suggestion leads to absurd results. *See United States v. Wilson*, 503 U.S. 329, 334 (1992) (canon against absurd results). On their view, no interim injunctive relief would be available at all—even for individual plaintiffs who would otherwise be removed to torture or persecution pursuant to an illegal policy. Congress could not have intended to authorize a legal action in which the court was unable to order an effective remedy even for an individual who brought the action. *See Grace v. Whitaker*, 344 F. Supp. 3d 96, 142–43 (D.D.C. 2018). Nor could Congress have intended to put courts to the choice "between justice on the fly or participation in what may be an idle ceremony" when they cannot reach a decision "quickly enough to afford relief to the party aggrieved . . . ." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted).

Defendants contend, however, that Section 1252(e)(1)(A) bars injunctive relief. Br.51. That statute provides that "no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) except as specifically authorized in a subsequent paragraph of this subsection . . . ." 8 U.S.C. § 1252(e)(1)(A).

Section 1252(e)(1)(A) does not bar any relief here. This case is not an individual "action pertaining to *an order* to exclude *an alien* in accordance with section 1225(b)(1)," *id.* (emphasis added), but rather a "[c]hallenge[] on [the] validity of the system." *Id.* § 1252(e)(3). And even if a Section 1252(e)(3) challenge were somehow an "action pertaining to an order to exclude an alien," that "action" still would be exempt from the bar on equitable relief because the *suit* is "specifically authorized in a subsequent paragraph"—namely, Section 1252(e)(3).

Defendants contest that reading, arguing that Section 1252(e)(1)(A) requires that the *relief* be "specifically authorized," rather than the *action*. Br.51. That is wrong for several reasons. First, as noted, Section 1252(e)(3) does not specifically authorize *any* relief, so this interpretation would render Congress' systemic review provision impotent. Second, the nearest-reasonable-referent canon undermines Defendants' conclusion. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 152–53 (2012). Here, the nearest reasonable referent of "specifically authorized" is "action," not "relief." Third, the statutory structure undermines Defendants' argument. The immediately following subsection, Section 1252(e)(1)(B), echoes the same language and likewise refers to an "action"—not relief— being "authorized under a subsequent paragraph." *See Grace*, 344 F. Supp. 3d at 142.

47

Furthermore, Defendants' reading of Section 1252(e)(1)(A) as limiting remedies would render language in a subsequent provision superfluous. *Id.*; *see also TRW Inc., v. Andrews*, 534 U.S. 19, 31 (2001) (surplusage canon). Section 1252(e)(4)(B) provides that in a habeas action under Section 1252(e)(2), "the court may order no remedy or relief other than to require that the petitioner be provided a hearing . . . ." 8 U.S.C. § 1252(e)(4)(B). If Defendants were right that Section 1252(e)(1)(A) precluded all injunctive and equitable relief unless that relief were specifically authorized, it would be unnecessary to specify in Section 1252(e)(4)(B) that no other relief was available.

Defendants suggest that the injunction in this case is tantamount to class-wide relief, which is prohibited by Section 1252(e)(1)(B). Br.53. But it is undisputed that courts may hold an agency policy unlawful and order that it no longer be applied—the standard APA remedy—in cases that are not class actions. *See, e.g.*, *Nat'l Min. Ass'n*, 145 F.3d at 1409–10; *see also Grace*, 344 F. Supp. 3d at 144 n.31.

Finally, Defendants wrongly contend that the injunction is prohibited by Section 1252(f)(1). *See* Br.54. That statute provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain the operation of* [8 U.S.C. §§ 1221–1231], other than with respect to the application of such provisions to an individual alien[.]" *Id*. (emphasis added). Section 1252(f)(1)

does not apply here because the district court's order does not "enjoin or restrain the operation" of the INA. Instead, the court held that Section 1225(b)(1)(A)(iii) must be read consistently with the APA's procedural requirements and that Defendants violated the law by failing to comply with those requirements. Section 1252(f)(1) therefore "poses no bar." App.324 n.37. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) (Section 1252(f)(1) does not bar injunctions against "conduct [that] is not authorized by the statutes"); *Grace*, 344 F. Supp. 3d at 143 (same); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (same).[21]

### C.    Plaintiffs Will Suffer Irreparable Harm Absent the Injunction, and the Balance of Equities Strongly Supports the Injunction.

Finally, the risk of irreparable harm to Plaintiffs and remaining injunction factors strongly support the preliminary injunction. The district court correctly identified several irreparable harms.[22] The court found that Plaintiffs' members would imminently face expedited removal under the Rule. App.312–313; *see also* ECF 13-3–13-5; 28-2–28-4 (Plaintiff and Plaintiff member declarations). Members

---

[21] Defendants cite *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018), but there the Sixth Circuit held that the district court had created new restraints on the agency "out of thin air" that did "not exist in the statute." *See id.* 879–80. Here, the district court simply applied the ordinary requirements of the APA.

[22] Defendants do not dispute that, for the purposes of assessing equitable factors, the district court properly looked to evidence not included in the administrative record. *See, e.g.*, *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 24 (2008) (relying on declarations to assess public interest prong).

without immigration status would face "forcible ejection without warning . . . on a widespread basis," and the traumatic separation from their families and communities. App.313; *see also Bridges v. Wixon*, 326 U.S. 135, 147 (1945) ("[D]eportation may result in the loss of all that makes life worth living." (internal quotation marks omitted)). Even worse, members *with* lawful status would face the same harms, despite their right to remain in this country. App.312; *see also* ECF 13-11; 13-13–13-14; 13-17). Moreover, the court found that Plaintiffs' members are *already* experiencing irreparable harm due to the "threat of being singled out" for expedited removal, causing them to avoid health care appointments and otherwise alter their lives out of fear. App.314 (citing, *inter alia*, ECF 24-1).

Defendants claim the risk that that Plaintiffs' members will be placed in expedited removal is speculative. Br.50-51. However, Defendants' own statements regarding the breadth of the Rule underscore the imminence of these harms. *See, e.g.*, Br.50 (Rule intended to "remove the thousands of aliens arriving in this country illegally and absconding into the interior on a daily basis"). The Rule's scope and Defendants' avowed intentions to apply it broadly establish "that the harm is certain to occur in the near future." *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985); *cf. Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (finding irreparable injury where defendant was "not currently imposing" challenged action, "but [had] done so

more than once, and . . . expressed . . . intent to continue to use the program until a judge stops her"). And for many subject to the Rule—particularly those fearing persecution or torture—"adequate" relief will not be "available at a later date." *See Wis. Gas Co.*, 758 F.2d at 674 (internal quotation marks omitted).[23]

Further, the balance of equities tips sharply in Plaintiffs' favor. Defendants claim that the district court did not acknowledge their assertions regarding immigration enforcement and border security. Br.50. False. The district court correctly found that each of Defendants' claimed harms lacked evidentiary support, were irrelevant, or were outweighed by Plaintiffs' harms. *See* App.316–20. As the district court correctly concluded, "what is missing from the government's showing . . . is a clear link between the rule it has adopted and a problem, at the border or elsewhere, that the [Rule] will plainly solve, supported by evidence that the problem is happening now . . . ." App.318. *See also E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018) (rejecting government's assertions of harm where TRO did "not prohibit the Government from combating illegal entry into the United States" and government's "vague assertions that the Rule may 'deter' this conduct [were] insufficient").

Defendants' claims of harm are undermined by their own decision to delay

---

[23] Defendants cite *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 298 (D.C. Cir. 2006), but that case concerned a denied job promotion that could easily be addressed with compensatory or other relief later.

for more than two years after the Executive Order to issue the Rule, and decline to

enforce the rule for several weeks afterwards. *See* Statement, *supra*, at Part D;

App.317.

Defendants have not shown that the *expansion* of expedited removal

addresses their stated concerns regarding border administration and preventing

illegal entry. App.319. Those interests have long been served by the application of

expedited removal to recent border crossers. The creation of a new enormous

program focused *in the interior* on individuals who have lived in the United States

for longer periods of time does not aid *border* security.[24]

Finally, the public interest is served when administrative agencies comply

with their legal obligations. *See New Jersey v. EPA*, 626 F.2d 1038, 1045 (D.C.

Cir. 1980) ("It is now a commonplace that notice-and-comment rule-making is a

primary method of assuring that an agency's decisions will be informed and

responsive."). And "[o]f course there is a public interest in preventing aliens from

being wrongfully removed, particularly to countries where they are likely to face

substantial harm." *Nken*, 556 U.S. at 436.

---

[24] *Innovation Law Lab v. McAleenan*, 924 F.3d 503 (9th Cir. 2019), in contrast, concerned a program to "process . . . migrants who are currently arriving at the Nation's southern border on a daily basis." *Id.* at 510.  *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981) addressed border patrol stops near the Mexican border.

## CONCLUSION

This Court should affirm the preliminary injunction.

Dated:  January 17, 2020

Trina Realmuto
Kristin Macleod-Ball
American Immigration Council
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

Karolina J. Walters
American Immigration Council
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7520

Jonathan K. Youngwood
Susannah S. Geltman
Joshua Polster
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Adrienne V. Baxley
Simpson Thacher & Bartlett LLP
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5822

Respectfully submitted,

*/s/ Anand V. Balakrishnan*

Anand Balakrishnan
Omar C. Jadwat
Lee Gelernt
Michael Tan
Celso Perez
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600
abalakrishnan@aclu.org

Stephen B. Kang
Julie Veroff
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Arthur B. Spitzer
Scott Michelman
American Civil Liberties Union
Foundation of the District of
Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

*Counsel for Plaintiffs-Appellees*

54

# RULE 32 CERTIFICATION

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

1. This brief contains 11,803 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(e)(1).

2. The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

# CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, I electronically filed the foregoing Answering Brief with the Clerk for the United States Court of Appeals for the DC Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

*/s/Anand Balakrishnan*
Anand Balakrishnan

# ADDENDUM: STATUTORY AND REGULATORY PROVISIONS

## TABLE OF CONTENTS

5 U.S.C. § 553                                             Add. 1

5 U.S.C. § 559                                             Add. 3

5 U.S.C. § 701                                             Add. 4

5 U.S.C. § 706                                             Add. 5

8 U.S.C. § 1154                                            Add. 6

8 U.S.C. § 1225                                            Add. 7

8 U.S.C. § 1252                                            Add. 13

8 C.F.R. § 208.30                                          Add. 17

8 C.F.R. § 235.3                                           Add. 20

# 5 U.S.C. § 553 Rule making

(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

    (1) a military or foreign affairs function of the United States; or

    (2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

    (1) a statement of the time, place, and nature of public rule making proceedings;

    (2) reference to the legal authority under which the rule is proposed; and

    (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

    Except when notice or hearing is required by statute, this subsection does not apply—

        (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

        (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the

record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except--

    (1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

    (2) interpretative rules and statements of policy; or

    (3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

**5 U.S.C. § 559 Effect on other laws; effect of subsequent statute**

This subchapter, chapter 7, and sections 1305, 3105, 3344, 4301(2)(E), 5372, and 7521 of this title, and the provisions of section 5335(a)(B) of this title that relate to administrative law judges, do not limit or repeal additional requirements imposed by statute or otherwise recognized by law. Except as otherwise required by law, requirements or privileges relating to evidence or procedure apply equally to agencies and persons. Each agency is granted the authority necessary to comply with the requirements of this subchapter through the issuance of rules or otherwise. Subsequent statute may not be held to supersede or modify this subchapter, chapter 7, sections 1305, 3105, 3344, 4301(2)(E), 5372, or 7521 of this title, or the provisions of section 5335(a)(B) of this title that relate to administrative law judges, except to the extent that it does so expressly.

## 5 U.S.C. § 701 Application; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—

    (1) statutes preclude judicial review; or

    (2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

    (A) the Congress;
    (B) the courts of the United States;
    (C) the governments of the territories or possessions of the United States;
    (D) the government of the District of Columbia;
    (E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;
    (F) courts martial and military commissions;
    (G) military authority exercised in the field in time of war or in occupied territory; or
    (H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891-1902, and former section 1641(b)(2), of title 50, appendix;1 and

(2) "person", "rule", "order", "license", "sanction", "relief", and "agency action" have the meanings given them by section 551 of this title.

## 5 U.S.C. § 706 Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (B) contrary to constitutional right, power, privilege, or immunity;

> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

> (D) without observance of procedure required by law;

> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## 8 U.S.C. § 1154 Procedure for granting immigrant status

**(a) Petitioning procedure**
(1)(A)(i) Except as provided in clause (viii), any citizen of the United States claiming that an alien is entitled to classification by reason of a relationship described in paragraph (1), (3), or (4) of section 1153(a) of this title or to an immediate relative status under section 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification.

[. . .]

(viii)(I) Clause (i) shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed.

### 8 U.S.C. § 1225 Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing

**(a) Inspection**

**(1) Aliens treated as applicants for admission**

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

**(2) Stowaways**

An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 1229a of this title.

**(3) Inspection**

All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

**(4) Withdrawal of application for admission**

An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

**(5) Statements**

An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the

applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

**(b) Inspection of applicants for admission**

**(1) Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled**

**(A) Screening**

**(i) In general**

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

**(ii) Claims for asylum**

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

**(iii) Application to certain other aliens**

**(I) In general**

The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.

**(II) Aliens described**

An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or

Addendum 8

paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

**(B) Asylum interviews**

**(i) Conduct by asylum officers**

An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii), either at a port of entry or at such other place designated by the Attorney General.

**(ii) Referral of certain aliens**

If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

**(iii) Removal without further review if no credible fear of persecution**

**(I) In general**

Subject to subclause (III), if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review.

**(II) Record of determination**

The officer shall prepare a written record of a determination under subclause (I). Such record shall include a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in the light of such facts, the alien has not established a credible fear of persecution. A copy of the officer's interview notes shall be attached to the written summary.

**(III) Review of determination**

The Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge of a

determination under subclause (I) that the alien does not have a credible fear of persecution. Such review shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or by telephonic or video connection. Review shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination under subclause (I).

### (IV) Mandatory detention

Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

### (iv) Information about interviews

The Attorney General shall provide information concerning the asylum interview described in this subparagraph to aliens who may be eligible. An alien who is eligible for such interview may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, according to regulations prescribed by the Attorney General. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process.

### (v) "Credible fear of persecution" defined

For purposes of this subparagraph, the term "credible fear of persecution" means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title.

### (C) Limitation on administrative review

Except as provided in subparagraph (B)(iii)(III), a removal order entered in accordance with subparagraph (A)(i) or (B)(iii)(I) is not subject to administrative appeal, except that the Attorney General shall provide by regulation for prompt review of such an order under subparagraph (A)(i) against an alien who claims under oath, or as permitted under penalty of perjury under section 1746 of Title 28, after having been warned of the penalties for falsely making such

Addendum 10

claim under such conditions, to have been lawfully admitted for permanent residence, to have been admitted as a refugee under section 1157 of this title, or to have been granted asylum under section 1158 of this title.

**(D) Limit on collateral attacks**

In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

**(E) "Asylum officer" defined**

As used in this paragraph, the term "asylum officer" means an immigration officer who--

(i) has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 1158 of this title, and

(ii) is supervised by an officer who meets the condition described in clause (i) and has had substantial experience adjudicating asylum applications.

**(F) Exception**

Subparagraph (A) shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry.

**(G) Commonwealth of the Northern Mariana Islands**

Nothing in this subsection shall be construed to authorize or require any person described in section 1158(e) of this title to be permitted to apply for asylum under section 1158 of this title at any time before January 1, 2014.

**(2) Inspection of other aliens**

**(A) In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a

doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

**(B) Exception**
Subparagraph (A) shall not apply to an alien--
      (i) who is a crewman,
      (ii) to whom paragraph (1) applies, or
      (iii) who is a stowaway.

**(C) Treatment of aliens arriving from contiguous territory**
In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

**(3) Challenge of decision**
The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

## 8 U.S.C. § 1252. Judicial review of orders of removal

**(a) Applicable provisions**

**(1) General orders of removal**
Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of Title 28, except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of such title.

**(2) Matters not subject to judicial review**

**(A) Review relating to section 1225(b)(1)**
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—

(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

(ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

(iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

(iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

**(B) Denials of discretionary relief**
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the

judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

[…]

## (e) Judicial review of orders under section 1225(b)(1)

### (1) Limitations on relief

Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may—

(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection, or

(B) certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection.

### (2) Habeas corpus proceedings

Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—

(A) whether the petitioner is an alien,

(B) whether the petitioner was ordered removed under such section, and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

**(3) Challenges on validity of the system**

**(A) In general**
Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or
(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

**(B) Deadlines for bringing actions**
Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

**(C) Notice of appeal**
A notice of appeal of an order issued by the District Court under this paragraph may be filed not later than 30 days after the date of issuance of such order.

**(D) Expeditious consideration of cases**
It shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any case considered under this paragraph.

**(4) Decision**

In any case where the court determines that the petitioner--

(A) is an alien who was not ordered removed under section 1225(b)(1) of this title, or

(B) has demonstrated by a preponderance of the evidence that the alien is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 1229a of this title. Any alien who is provided a hearing under section 1229a of this title pursuant to this paragraph may thereafter obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1).

**(5) Scope of inquiry**

In determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

**(f) Limit on injunctive relief**

**(1) In general**

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

**(2) Particular cases**

Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

### 8 C.F.R. § 208.30 Credible fear determinations involving stowaways and applicants for admission [. . . .]

**(d) Interview.**
The asylum officer, as defined in section 235(b)(1)(E) of the Act, will conduct the interview in a nonadversarial manner, separate and apart from the general public. The purpose of the interview shall be to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture, and shall conduct the interview as follows:

(1) If the officer conducting the credible fear interview determines that the alien is unable to participate effectively in the interview because of illness, fatigue, or other impediments, the officer may reschedule the interview.

(2) At the time of the interview, the asylum officer shall verify that the alien has received Form M–444, Information about Credible Fear Interview in Expedited Removal Cases. The officer shall also determine that the alien has an understanding of the credible fear determination process.

(3) The alien may be required to register his or her identity.

(4) The alien may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, and may present other evidence, if available. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process. Any person or persons with whom the alien chooses to consult may be present at the interview and may be permitted, in the discretion of the asylum officer, to present a statement at the end of the interview. The asylum officer, in his or her discretion, may place reasonable limits on the number of persons who may be present at the interview and on the length of the statement.

(5) If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language chosen by the alien, the asylum officer shall arrange for the assistance of an interpreter in conducting the interview. The interpreter must be at least 18 years of age and may not be the applicant's attorney or representative of record, a witness testifying on the applicant's behalf, a representative or

Addendum 17

employee of the applicant's country of nationality, or, if the applicant is stateless, the applicant's country of last habitual residence.

(6) The asylum officer shall create a summary of the material facts as stated by the applicant. At the conclusion of the interview, the officer shall review the summary with the alien and provide the alien with an opportunity to correct any errors therein.

[…]

**(g) Procedures for a negative credible fear finding.**

(1) If an alien is found not to have a credible fear of persecution or torture, the asylum officer shall provide the alien with a written notice of decision and inquire whether the alien wishes to have an immigration judge review the negative decision, using Form I–869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge. The alien shall indicate whether he or she desires such review on Form I–869. A refusal by the alien to make such indication shall be considered a request for review.

(i) If the alien requests such review, or refuses to either request or decline such review, the asylum officer shall arrange for detention of the alien and serve him or her with a Form I–863, Notice of Referral to Immigration Judge, for review of the credible fear determination in accordance with paragraph (f)(2) of this section.

(ii) If the alien is not a stowaway and does not request a review by an immigration judge, the officer shall order the alien removed and issue a Form I–860, Notice and Order of Expedited Removal, after review by a supervisory asylum officer.

(iii) If the alien is a stowaway and the alien does not request a review by an immigration judge, the asylum officer shall refer the alien to the district director for completion of removal proceedings in accordance with section 235(a)(2) of the Act.

**(2) Review by immigration judge of a negative credible fear finding.**

(i) Immigration judges will review negative credible fear findings as provided in 8 CFR 1208.30(g)(2).

(ii) The record of the negative credible fear determination, including copies of the Form I–863, the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based shall be provided to the immigration judge with the negative determination.

## 8 C.F.R. § 235.3 Inadmissible aliens and expedited removal.

**(b) Expedited removal—**

**(1) Applicability.** The expedited removal provisions shall apply to the following classes of aliens who are determined to be inadmissible under section 212(a)(6)(C) or (7) of the Act:

(i) Arriving aliens, as defined in 8 CFR 1.2;

(ii) As specifically designated by the Commissioner, aliens who arrive in, attempt to enter, or have entered the United States without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, and who have not established to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the 2–year period immediately prior to the date of determination of inadmissibility. The Commissioner shall have the sole discretion to apply the provisions of section 235(b)(1) of the Act, at any time, to any class of aliens described in this section. The Commissioner's designation shall become effective upon publication of a notice in the Federal Register. However, if the Commissioner determines, in the exercise of discretion, that the delay caused by publication would adversely affect the interests of the United States or the effective enforcement of the immigration laws, the Commissioner's designation shall become effective immediately upon issuance, and shall be published in the Federal Register as soon as practicable thereafter. When these provisions are in effect for aliens who enter without inspection, the burden of proof rests with the alien to affirmatively show that he or she has the required continuous physical presence in the United States. Any absence from the United States shall serve to break the period of continuous physical presence. An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2–year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.

**(2) Determination of inadmissibility—**

Addendum 20

**(i) Record of proceeding.** An alien who is arriving in the United States, or other alien as designated pursuant to paragraph (b)(1)(ii) of this section, who is determined to be inadmissible under section 212(a)(6)(C) or 212(a)(7) of the Act (except an alien for whom documentary requirements are waived under § 211.1(b)(3) or § 212.1 of this chapter), shall be ordered removed from the United States in accordance with section 235(b)(1) of the Act. In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien. This shall be accomplished by means of a sworn statement using Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I–860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien.

**(ii) No entitlement to hearings and appeals.** Except as otherwise provided in this section, such alien is not entitled to a hearing before an immigration judge in proceedings conducted pursuant to section 240 of the Act, or to an appeal of the expedited removal order to the Board of Immigration Appeals.

**(iii) Detention and parole of alien in expedited removal.** An alien whose inadmissibility is being considered under this section or who has been ordered removed pursuant to this section shall be detained

pending determination and removal, except that parole of such alien, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

**(3) Additional charges of inadmissibility.** In the expedited removal process, the Service may not charge an alien with any additional grounds of inadmissibility other than section 212(a)(6)(C) or 212(a)(7) of the Act. If an alien appears to be inadmissible under other grounds contained in section 212(a) of the Act, and if the Service wishes to pursue such additional grounds of inadmissibility, the alien shall be detained and referred for a removal hearing before an immigration judge pursuant to sections 235(b)(2) and 240 of the Act for inquiry into all charges. Once the alien is in removal proceedings under section 240 of the Act, the Service is not precluded from lodging additional charges against the alien. Nothing in this paragraph shall preclude the Service from pursuing such additional grounds of inadmissibility against the alien in any subsequent attempt to reenter the United States, provided the additional grounds of inadmissibility still exist.

**(4) Claim of asylum or fear of persecution or torture.** If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with 8 CFR 208.30. The examining immigration officer shall record sufficient information in the sworn statement to establish and record that the alien has indicated such intention, fear, or concern, and to establish the alien's inadmissibility.

   **(i) Referral.** The referring officer shall provide the alien with a written disclosure on Form M–444, Information About Credible Fear Interview, describing:
      (A) The purpose of the referral and description of the credible fear interview process;
      (B) The right to consult with other persons prior to the interview and any review thereof at no expense to the United States Government;

(C) The right to request a review by an immigration judge of the asylum officer's credible fear determination; and
(D) The consequences of failure to establish a credible fear of persecution or torture.

**(ii) Detention pending credible fear interview.** Pending the credible fear determination by an asylum officer and any review of that determination by an immigration judge, the alien shall be detained. Parole of such alien in accordance with section 212(d)(5) of the Act may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective. Prior to the interview, the alien shall be given time to contact and consult with any person or persons of his or her choosing. Such consultation shall be made available in accordance with the policies and procedures of the detention facility where the alien is detained, shall be at no expense to the government, and shall not unreasonably delay the process.

**(5) Claim to lawful permanent resident, refugee, or asylee status or U.S. citizenship—**
**(i) Verification of status.** If an applicant for admission who is subject to expedited removal pursuant to section 235(b)(1) of the Act claims to have been lawfully admitted for permanent residence, admitted as a refugee under section 207 of the Act, granted asylum under section 208 of the Act, or claims to be a U.S. citizen, the immigration officer shall attempt to verify the alien's claim. Such verification shall include a check of all available Service data systems and any other means available to the officer. An alien whose claim to lawful permanent resident, refugee, asylee status, or U.S. citizen status cannot be verified will be advised of the penalties for perjury, and will be placed under oath or allowed to make a declaration as permitted under 28 U.S.C. 1746, concerning his or her lawful admission for permanent residence, admission as a refugee under section 207 of the Act, grant of asylum status under section 208 of the Act, or claim to U.S. citizenship. A written statement shall be taken from the alien in the alien's own language and handwriting, stating that he or she declares, certifies, verifies, or states that the claim is true and correct. The immigration officer shall issue an expedited order of removal under section 235(b)(1)(A)(i) of the Act and refer the alien to the

Addendum 23

immigration judge for review of the order in accordance with paragraph (b)(5)(iv) of this section and § 235.6(a)(2)(ii). The person shall be detained pending review of the expedited removal order under this section. Parole of such person, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

**(ii) Verified lawful permanent residents.** If the claim to lawful permanent resident status is verified, and such status has not been terminated in exclusion, deportation, or removal proceedings, the examining immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act. The examining immigration officer will determine in accordance with section 101(a)(13)(C) of the Act whether the alien is considered to be making an application for admission. If the alien is determined to be seeking admission and the alien is otherwise admissible, except that he or she is not in possession of the required documentation, a discretionary waiver of documentary requirements may be considered in accordance with section 211(b) of the Act and § 211.1(b)(3) of this chapter or the alien's inspection may be deferred to an onward office for presentation of the required documents. If the alien appears to be inadmissible, the immigration officer may initiate removal proceedings against the alien under section 240 of the Act.

**(iii) Verified refugees and asylees.** If a check of Service records or other means indicates that the alien has been granted refugee status or asylee status, and such status has not been terminated in deportation, exclusion, or removal proceedings, the immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act. If the alien is not in possession of a valid, unexpired refugee travel document, the examining immigration officer may accept an application for a refugee travel document in accordance with § 223.2(b)(2)(ii) of this chapter. If accepted, the immigration officer shall readmit the refugee or asylee in accordance with § 223.3(d)(2)(i) of this chapter. If the alien is determined not to be eligible to file an application for a refugee travel document the immigration officer may initiate removal proceedings against the alien under section 240 of the Act.

Addendum 24

**(iv) Review of order for claimed lawful permanent residents, refugees, asylees, or U.S. citizens.** A person whose claim to U.S. citizenship has been verified may not be ordered removed. When an alien whose status has not been verified but who is claiming under oath or under penalty of perjury to be a lawful permanent resident, refugee, asylee, or U.S. citizen is ordered removed pursuant to section 235(b)(1) of the Act, the case will be referred to an immigration judge for review of the expedited removal order under section 235(b)(1)(C) of the Act and § 235.6(a)(2)(ii). If the immigration judge determines that the alien has never been admitted as a lawful permanent resident or as a refugee, granted asylum status, or is not a U.S. citizen, the order issued by the immigration officer will be affirmed and the Service will remove the alien. There is no appeal from the decision of the immigration judge. If the immigration judge determines that the alien was once so admitted as a lawful permanent resident or as a refugee, or was granted asylum status, or is a U.S. citizen, and such status has not been terminated by final administrative action, the immigration judge will terminate proceedings and vacate the expedited removal order. The Service may initiate removal proceedings against such an alien, but not against a person determined to be a U.S. citizen, in proceedings under section 240 of the Act. During removal proceedings, the immigration judge may consider any waivers, exceptions, or requests for relief for which the alien is eligible.

**(6) Opportunity for alien to establish that he or she was admitted or paroled into the United States.** If the Commissioner determines that the expedited removal provisions of section 235(b)(1) of the Act shall apply to any or all aliens described in paragraph (b)(2)(ii) of this section, such alien will be given a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States following inspection at a port-of-entry. The alien will be allowed to present evidence or provide sufficient information to support the claim. Such evidence may consist of documentation in the possession of the alien, the Service, or a third party. The examining immigration officer will consider all such evidence and information, make further inquiry if necessary, and will attempt to verify the alien's status through a check of all available Service data systems. The burden rests with the alien to satisfy the examining immigration

Addendum 25

officer of the claim of lawful admission or parole. If the alien establishes that he or she was lawfully admitted or paroled, the case will be examined to determine if grounds of deportability under section 237(a) of the Act are applicable, or if paroled, whether such parole has been, or should be, terminated, and whether the alien is inadmissible under section 212(a) of the Act. An alien who cannot satisfy the examining officer that he or she was lawfully admitted or paroled will be ordered removed pursuant to section 235(b)(1) of the Act.

**(7) Review of expedited removal orders.** Any removal order entered by an examining immigration officer pursuant to section 235(b)(1) of the Act must be reviewed and approved by the appropriate supervisor before the order is considered final. Such supervisory review shall not be delegated below the level of the second line supervisor, or a person acting in that capacity. The supervisory review shall include a review of the sworn statement and any answers and statements made by the alien regarding a fear of removal or return. The supervisory review and approval of an expedited removal order for an alien described in section 235(b)(1)(A)(iii) of the Act must include a review of any claim of lawful admission or parole and any evidence or information presented to support such a claim, prior to approval of the order. In such cases, the supervisor may request additional information from any source and may require further interview of the alien.

**(8) Removal procedures relating to expedited removal.** An alien ordered removed pursuant to section 235(b)(1) of the Act shall be removed from the United States in accordance with section 241(c) of the Act and 8 CFR part 241.

**(9) Waivers of documentary requirements.** Nothing in this section limits the discretionary authority of the Attorney General, including authority under sections 211(b) or 212(d) of the Act, to waive the documentary requirements for arriving aliens.

**(10) Applicant for admission under section 217 of the Act.** The provisions of § 235.3(b) do not apply to an applicant for admission under section 217 of the Act.