**No. 19-5298**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

MAKE THE ROAD NEW YORK,
*et al.*,
*Plaintiffs-Appellees*,

*v.*

CHAD WOLF, *et al.*,
*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 18-cv-2369
The Hon. Ketanji Brown Jackson

**APPELLANTS' REPLY BRIEF**

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Phone: (202) 307-4293
E-mail: erez.r.reuveni@usdoj.gov

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

GLOSSARY OF ABBREVIATIONS ................................................................. viii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................ 1

ARGUMENT ................................................................................................... 5

I.      The District Court Lacked Jurisdiction Over This Case ......................... 5

II.     The District Court Erred When It Concluded that the Secretary was Required to Engage in Notice-and-Comment Rulemaking .................... 11

III.    The District Court Erred in Concluding that the Designation Is Arbitrary and Capricious ........................................................................ 19

IV.    The District Court Erred in Entering a Universal Injunction Extending to Non-Parties ............................................................................................. 23

CONCLUSION ............................................................................................... 29

RULE 32 CERTIFICATION .............................................................................

CERTIFICATE OF SERVICE ...........................................................................

# TABLE OF AUTHORITIES

## CASE LAW

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986) ....................................................... 20

*Adams v. U.S. Forest Serv.*,
    671 F.3d 1138 (9th Cir. 2012)........................................................... 6

*Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*,
    663 F.3d 476 (D.C. Cir. 2011) ......................................................... 21

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008)......................................................................... 25

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
    934 F.3d 649 (D.C. Cir. 2019) ..................................................... 4, 22

*Am. Chem. Council v. DOT*,
    468 F.3d 810 (D.C. Cir. 2006) ......................................................... 24

*Am. Immigration Lawyers Ass'n v. Reno*,
    199 F.3d 1352 (D.C. Cir. 2000) ........................................... 1, 2, 8, 9

*Amgen, Inc. v. Smith*,
    357 F.3d 103 (D.C. Cir. 2004) ......................................................... 10

*Asiana Airlines v. FAA*,
    134 F.3d 393 (D.C. Cir. 1998) ......................................................... 15

*Bakran v. Sec'y, United States Dep't of Homeland Sec.*,
    894 F.3d 562 (3d Cir. 2018)............................................................. 20

*Bourdon v. United States Dep't of Homeland Sec.,*
    940 F.3d 542 (11th Cir. 2019).............................................12, 13, 14

*Bremer v. Johnson*,
    834 F.3d 925 (8th Cir. 2016)...............................................12, 14, 15

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) .......................................................... 24

*Camp v. Pitts*,
  411 U.S. 138 (1973) ....................................................................... 20

*Chamber of Commerce of U.S. v. S.E.C.*,
  443 F.3d 890 (D.C. Cir. 2006) ...................................................... 17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ....................................................................... 20

*Clarian Health West, LLC v. Hargan*,
  878 F.3d 346 (D.C. Cir. 2017) ...................................................... 16

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) .................................................................. 18

*EarthLink, Inc. v. F.C.C.*,
  462 F.3d 1 (D.C. Cir. 2006) .......................................................... 18

*East Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) .......................................................... 27

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ....................................................................... 23

*Florida Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ....................................................................... 21

*Gebhardt v. Nielsen*,
  879 F.3d 980 (9th Cir. 2018) .......................................................... 11

*Hamama v. Adducci*,
  912 F.3d 869 (6th Cir. 2018) .......................................................... 27

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ....................................................................... 19

*INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*,
  502 U.S. 183 (1991)........................................................................ 22

*Lincoln v. Vigil*,
  508 U.S. 182 (1993)........................................................................ 16

*McNary v. Haitian Refugee Ctr.*,
  498 U.S. 479 (1991)................................................................... 12, 13

*Nat'l Min. Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) ...................................................... 16

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998) ................................................... 5, 23

*Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*,
  435 F.3d 326 (D.C. Cir. 2006) ...................................................... 24

*Nielsen v. Preap*,
  139 S. Ct. 954 (2019)..................................................................... 25

*Oceana, Inc. v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ................................................... 21, 22

*Reno v. Catholic Soc. Servs., Inc.*,
  509 U.S. 43 (1993)......................................................................... 13

*Sorenson Commc'ns Inc. v. F.C.C.*,
  755 F.3d 702 (D.C. Cir. 2014) ...................................................... 18

*Syncor Int'l Corp. v. Shalala*,
  127 F.3d 90 (D.C. Cir. 1997) ........................................................ 16

*Union Neighbors United, Inc. v. Jewell*,
  831 F.3d 564 (D.C. Cir. 2016) ........................................................ 6

*United States Ass'n of Reptile Keepers, Inc. v. Jewell*,
  106 F. Supp. 3d 125 (D.D.C. 2015), *aff'd*, 852 F.3d 1131 (D.C. Cir. 2017)...... 23

*United States v. Cortez,*
   449 U.S. 411 (1981) .................................................................. 28

*United States v. Emor,*
   785 F.3d 671 (D.C. Cir. 2015) ................................................... 9

## FEDERAL STATUTES

5 U.S.C. § 553(b)(B) ................................................................ 11, 16, 17

7 U.S.C. § 706(2)(A) ..................................................................... 23

8 U.S.C. § 1151–1381 ..................................................................... 2

8 U.S.C. § 1221-1232 .................................................................... 26

8 U.S.C. § 1225(b)(1) .................................................................... 22

8 U.S.C. § 1225(b)(1)(A)(i) ............................................................ 27

8 U.S.C. § 1225(b)(1)(A)(ii) ........................................................... 28

8 U.S.C. § 1225(b)(1)(A)(iii) ............................................................ 1

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ....................................................... 17

8 U.S.C. § 1225(b)(1)(B) ................................................................ 28

8 U.S.C. § 1252(a)(2)(A) ................................................................ 19

8 U.S.C. § 1252(a)(2)(B)(ii) ........................................................... 2, 5

8 U.S.C. § 1252(e)(1) .................................................................... 25

8 U.S.C. § 1252(e)(1)(A) .................................................................. 7

8 U.S.C. § 1252(e)(1)(B) .................................................................. 7

8 U.S.C. § 1252(e)(2) .................................................................... 19

8 U.S.C. § 1252(e)(3) ........................................................ 1, 25

8 U.S.C. § 1252(e)(3)(A) ....................................................... 7

**FEDERAL REGULATIONS**

8 C.F.R. § 208.30 ............................................................ 28

8 C.F.R. § 235.3 ............................................................. 22

8 C.F.R. § 235.3(b)(1) ....................................................... 28

8 C.F.R. § 235.3(b)(4)-(6) ................................................... 28

8 C.F.R. § 235.3(b)(ii) ...................................................... 17

**FEDERAL RULES FOR APPELLATE PROCEDURE**

Fed. R. App. P. 32(a)(5) ..................................................... 30

Fed. R. App. P. 32(a)(6) ..................................................... 30

Fed. R. App. P. 32(a)(7)(B) ................................................... 1

**FEDERAL REGISTER**

84 Fed. Reg. 35,411 ......................................................... 28

84 Fed. Reg. 35,411-14 .................................................... 4, 22

84 Fed. Reg. 35,412 ......................................................... 18

84 Fed. Reg. 35,413 ......................................................... 17

84 Fed. Reg. 35,413-14 ...................................................... 22

# LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 828 at 209 ............................................................ 7

# MISCELLANEOUS

*IMMIGRATION ENFORCEMENT ACTIONS: 2017*, available at
https://www.dhs.gov/sites/default/files/publications/enforcement_actions_2017.pdf
(Last visited Jan. 31, 2020) .................................................................. 22

*IMMIGRATION ENFORCEMENT ACTIONS: 2009*, available at
https://www.dhs.gov/sites/default/files/publications/Enforcement_Actions_
2009.pdf (Last visited Jan. 31, 2020).................................................... 22

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| A.M. Tr. | Hearing Transcript. A.M. Session, ECF 32, App.40-136 |
| APA | Administrative Procedure Act |
| App. | Appendix, followed by page numbers |
| AR | Administrative Record, ECF 26 |
| AWA | Adam Walsh Act |
| Br. | Brief of Appellees |
| Board | Board of Immigration Appeals |
| Compl. | Complaint, ECF 1, App.1-40 |
| DHS | Department of Homeland Security |
| DOJ | Department of Justice |
| ECF | Docket Entry for District Court, followed by page numbers |
| Gov't Br. | Brief of Appellants |
| IJ | Immigration Judge |
| INA | Immigration and Nationality Act |
| INS | Immigration and Naturalization Service |
| Mot. | Motion for Preliminary Injunction, ECF 13-1 |

| | |
|---|---|
| Op. | District Court's Memorandum Opinion, ECF 40, App.212-337 |
| Order | District Court's Order Preliminary Injunction, ECF 41, App.338 |
| P.M. Tr. | Hearing Transcript. P.M. Session, ECF 33, App.137-211 |
| Secretary | Acting Secretary of Homeland Security |
| USCIS | United States Citizenship and Immigration Services |

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court should vacate the district court's nationwide preliminary injunction enjoining the Acting Secretary of Homeland Security's exercise of his "sole and unreviewable discretion" to designate certain aliens illegally present in the United States for processing for expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(iii). Plaintiffs' contrary arguments are unavailing.

The district court lacked jurisdiction over this case. Gov't Br. 22-32. Plaintiffs invoke 8 U.S.C. § 1252(e)(3), which authorizes "[j]udicial review" in D.C. district court "of determinations under section 1225(b) of this title and its implementation." But section 1252(e)(3) does not permit suit by organizations. Section 1252(e)(3) requires not just an "implementation" of the expedited removal statute (section 1225(b)) but *also* an expedited-removal "determination"—which can be made only for a person. Gov't Br. 22-28. Section 1252(e)(3) therefore permits suit "by, and only by, aliens against whom ... new [expedited removal] procedures ha[ve] been applied." *Am. Immigration Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352, 1360 (D.C. Cir. 2000). Plaintiffs contend that organizations must be allowed to invoke section 1252(e)(3), because otherwise the Department of Homeland Security (DHS) could "shelter [its] own decisions from review" by "announcing a national policy" but not applying it to anyone before section 1252(e)(3)'s 60-day limitations period lapsed. Br. 20. This Court already rejected

that argument in *AILA*, Gov't Br. 27-28, and the argument in any event has no force here because DHS has yet to implement the designation, so any suggestion that the 60-day deadline may bar an appropriate suit is conjectural. Gov't Br. 28-29. Plaintiffs contend that *AILA* does not control because that case addressed third-party standing. Br. 21-23. That too is wrong: this Court's holding turned on its interpretation of section 1252. 199 F.3d at 1360, 1363; Gov't Br. 25-27.

The district court also erred in holding that its jurisdiction was not barred by 8 U.S.C. § 1252(a)(2)(B)(ii), which provides that "no court shall have jurisdiction to review ... any ... decision or action of ... the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of ... the Secretary." Gov't Br. 29-32. Plaintiffs contend that this provision bars review only of "discretionary" decisions involving "denial of immigration relief." Br. 24-25. But by its terms section 1252(a)(2)(B)(ii) strips district courts of jurisdiction to review *any* "decision or action ... specified under this subchapter," that is, 8 U.S.C. §§ 1151–1381, "to be in the discretion of the" Secretary, and is not limited to "denial[s]" of immigration relief. Gov't Br. 29-32.

Plaintiffs also contend that even if the decision to designate aliens for expedited removal under section 1225(b)(1)(A)(iii) is subject to the Secretary's "discretion," that discretion is limited to the "designation" itself, and not to the process used to issue the designation. Br. 26; *see also* Br. 26-29, 35-36. But

section 1225(b)(1)(A)(iii) provides that "[s]uch designation shall be in the *sole and unreviewable discretion* of the [Secretary] and may be modified at any time." (Emphasis added.)  The courts of appeals are unanimous in holding that the phrase "sole and unreviewable discretion" means that the *process* employed by the Secretary in issuing the designation, Gov't Br. 32-34, and the reasons for it, Gov't Br. 41-43, are committed to agency discretion, such that notice-and-comment and arbitrary-and-capricious claims under the APA are not cognizable.

Plaintiffs' claims also fail on the merits.  Gov't Br. 34-40, 43-46.  The designation is (on top of the reason given above) exempt from notice-and-comment requirements because section 1225(b)(1)(A)(iii) displaces the default notice-and-comment requirement, because the designation is a statement of policy, and because in making the designation the Secretary properly invoked the good-cause exception to notice-and-comment procedures.  Gov't Br. 34-40.  Plaintiffs contend that section 1225(b)(1)(A)(iii) is not "so clearly different" from "the APA" that Congress "intended to displace" the APA. Br. 30-31.  But Congress made its intention to displace clear when it granted the Secretary "sole and unreviewable discretion" to make new designations.  Gov't Br. 33.  Plaintiffs also contend that the designation is a legislative rule because it expands the class of aliens who can be "subject to expedited removal."  Br. 31-32.  But the designation merely advises the public that DHS has exercised its discretionary authority to allow invocation of

expedited removal to the full extent permitted under section 1225(b)(1)(A)(iii) going forward, and makes clear that it does not require officers to exercise discretion in any particular way. Gov't Br. 34-36. Plaintiffs also assert that DHS lacked "good cause" to forego notice-and-comment rulemaking, Br. 32-35, but such procedures would have been impracticable given the plain text of section 1225(b)(1)(A)(iii), which provides the secretary "sole and unreviewable discretion" to issue or modify a designation "at any time," and in any event, would have caused the very harms the rule sought to avoid. Gov't Br. 36-40.

The district court also erred in finding the designation arbitrary-and-capricious. Gov't Br. 41-47. The Secretary explained why he invoked section 1225(b)(1)(A)(iii), 84 Fed. Reg. at 35,411-14, and the record supports his decision. Gov't Br. 41-47. In asserting otherwise, Plaintiffs point to extra-record evidence and contend that the Secretary was required to consider their belief that the expedited removal system is "deeply flawed" as part of his decision-making process. Br. 38; *see also* Br. 37-42. But APA review is limited to the record before the Secretary when the decision was made, Gov't Br. 45-46, and "the fact that [Plaintiffs] can point to [cases] in which the rule might lead to an arbitrary result does not render the rule facially invalid." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 667-68 (D.C. Cir. 2019).

Finally, the district court's nationwide injunction defies Article III and equitable principles, and is irreconcilable with the INA's prohibition on injunctions of the Secretary's designation authority. Gov't Br. 47-57. Plaintiffs rely on *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) to assert that the APA requires that a rule be enjoined nationwide at the preliminary-injunction stage if found likely to be unlawful. Br. 42-43. But that case involved a *final judgment* and said nothing about APA relief at the preliminary-injunction stage. Gov't Br. 55-57. In any event, the INA itself precludes any such relief under the APA or otherwise. Gov't Br. 50-55.

## ARGUMENT

## I.     The District Court Lacked Jurisdiction Over This Case.

The district court lacked jurisdiction over this case. Gov't Br. 22-32. Organizational plaintiffs may not invoke section 1252(e)(3). Gov't Br. 22-27. And the designation is "specified" to be "in the discretion of" the Secretary, and so review is barred under 8 U.S.C. § 1252(a)(2)(B)(ii). Gov't Br. 29-32.

Plaintiffs make several contrary arguments, Br. 18-25, but each fails.

*First*, Plaintiffs contend that section 1252(e)(3)(A) authorizes challenges to implementations of section 1225(b)(1), including the designation, because it authorizes challenge to "its [*i.e.* section 1225(b)(1)'s] implementation." Br. 18-19; *see also* Br. 19-20. But the statute authorizes challenges to "determinations under

section 1225(b) of this title *and* its implementation." "'And' does not mean 'or,'" and Congress "would have used the word 'or' had it intended the disjunctive" reading Plaintiffs' propose. *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1145 (9th Cir. 2012); *see Union Neighbors United, Inc. v. Jewell*, 831 F.3d 564, 582 (D.C. Cir. 2016) ("the statute uses the conjunctive 'and' ... suggesting that the terms should be read together, not as a sequence"). Section 1252(e)(3) thus requires not just an "implementation" of the expedited removal statute (section 1225(b)) but *also* an expedited-removal "determination"—which can be made only for a person. Gov't Br. 22-28.

Other statutory features confirm that in section 1252(e) Congress allowed suit only by aliens subject to determinations under section 1225(b)(1). Section 1252(e) is titled "Judicial review of *orders* under section 1225(b)(1)." (Emphasis added.) Section 1252(e)(1)(A) similarly refers to "*order[s]* to exclude an alien in accordance with section 1225(b)(1) of this title," and limits what relief a court may issue, including under section 1252(e)(3), when reviewing such orders. (Emphasis added.) An expedited removal *order*—like an expedited removal *determination*— can be issued only for a person. Plaintiffs contend that section 1252(e)(3)'s title, "challenges on [the] validity of the system," means that neither an "order" nor a "determination" is a requirement for suit under section 1252(e)(3). Br. 19-20. That argument ignores the just-quoted textual provisions and thus demands more

6

from the subsection's title than it can bear. That title is simply descriptive: a challenge to the "validity of the system" is a type of challenge to an order of expedited removal, namely a challenge to "the validity of procedures under section [1225](b)(1)." H.R. Conf. Rep. No. 828 at 220, 104th Cong., 2d Sess. (1996). Congress was clear: "Section [1252](e) provides rules for judicial review of *orders of removal* under section [1225](b)(1)." *Id.* (emphasis added).

Were it otherwise, section 1252(e)(3) would authorize judicial review of statutes and regulations in a vacuum, without any actual individual who had been subject to the challenged procedures or record through which to assess the legality of those procedures. Indeed, Plaintiffs' contrary view renders superfluous the comprehensive and limited review scheme for expedited removal orders that Congress laid out in section 1252—including bars as to injunctive relief other than as to aliens in actual removal proceedings, 8 U.S.C. § 1252(e)(1)(A), (f), and class actions, *id.* § 1252(e)(1)(B). On Plaintiffs' view, persons or organizations seeking to challenge expedited removal procedures, but who are not subject to an expedited removal order, are not covered by any of the carefully drawn limitations on judicial review set forth in the section 1252(e), and can bring lawsuits—like this one— challenging expedited removal procedures subject to no restrictions whatever. Congress clearly rejected that view, requiring a "determination[] under section 1225(b)(1)," 8 U.S.C. § 1252(e)(3)(A), and establishing limitations on judicial

review that "contemplated that lawsuits challenging its enactment would be brought, if at all, by individual aliens who—during the sixty-day period—were aggrieved by the statute's implementation." *AILA*, 199 F.3d at 1359-60.

*Second*, Plaintiffs contend that organizations must be able to challenge implementations of section 1225(b)(1) because otherwise Defendants "would have a free hand to shelter their own decisions from review." Br. 20. Plaintiffs claim that if only individual aliens can invoke section 1252(e)(3), then "Defendants could announce a national policy but put only a single noncitizen in expedited removal without public notice," wait until the "61st day after that lone deportation," and then assert that the 60-day time bar had run. Br. 20-21. As the government has explained, however, Gov't Br. 27-28, this Court has already rejected that reasoning as "a large stretch," concluding that even if "there [was] no possibility of bringing a challenge at all" if not brought within 60 days, then that "is precisely what Congress intended." *AILA*, 199 F.3d at 1363. Plaintiffs are also wrong that any such hypothetical could plausibly come to pass. Because the designation was never in fact implemented, App.74, 93-94, 115, the 60-day clock has not yet begun to run. Gov't Br. 28-29. Plaintiffs suggest that the designation was implemented as of the date it appeared in the Federal Register. Br. 20. But to "implement" something does not mean just to publish it; it means "to give practical effect to and ensure of actual fulfillment by concrete measures." Webster's Third International

Dictionary 1134 (1987).  And here, when the district court put the government to the "choice" of agreeing to delay implementation of the designation until it issued its decision, App.201, the designation had not been implemented because DHS officers had not yet been trained, and so no immigration officer at DHS had authority to implement the designation.  App.93.

*Third*, Plaintiffs contend that this Court's holding in *AILA*—that section 1252(e)(3) may be invoked "by, and only by, aliens against whom ... new [expedited removal] procedures ha[ve] been applied," 199 F.3d at 1360—does not prevent suit here because *AILA* "addressed a third-party standing claim."  Br. 21; *see also* Br. 22-23.  It is true that *AILA*'s ultimate decision was framed in terms of third-party standing, but the Court's statutory interpretation of section 1252 is inseparable from its ultimate holding.[1]  Gov't Br. 26-27.

*Fourth*, Plaintiffs argue that section 1252(a)(2)(B)(ii), which provides that "no court shall have jurisdiction to review ... any ... decision or action of ... the Secretary of Homeland Security the authority for which is specified under this

---

[1] Plaintiffs contend that they have "established Article III associational standing." Br. 23; *but see* ECF 25, Opp. 20-25 (Plaintiffs failed to identify a single member of their organizations).  But even if correct, *see AILA*, 199 F.3d at 1357 (organizations lacked associational standing based on allegations "that members of the associations might some day be subject to [expedited] removal"), it is irrelevant. That Plaintiffs might have Article III—that is, constitutional—standing does not mean that they have established the Court's "statutory ... power to adjudicate the

subchapter to be in the discretion of ... the Secretary," does not preclude jurisdiction. Br. 24-25. They contend that section 1252(a)(2)(B)(ii) bars review only of "discretionary" decisions and not "review of a legal claim." Br. 24. But even if the question of whether an action is discretionary is a legal question, if the agency action is in fact discretionary, then it is subject to section 1252(a)(2)(B)(ii). *See Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004). Plaintiffs also contend that section 1252(a)(2)(B)(ii) "does not apply because it bars review of only discretionary denials of immigration relief," meaning "substantive decisions on a noncitizen's right [to] remain in the United States." Br. 25. Plaintiffs cite no authority for that claim, and for good reason: by its terms, section 1252(a)(2)(B)(ii) reaches *all* actions or decisions specified "to be in the discretion" of the Secretary "under the authority of sections 1151 through 1378 of Title 8." Gov't Br. 30-31. Many such grants of discretion do not involve "denials of discretionary relief" concerning an alien's "right [to] remain in the United States," but are nevertheless subject to section 1252(a)(2)(B)(ii). *Id.*

The district court lacked jurisdiction, so its injunction should be vacated in full.

---

case." *United States v. Emor*, 785 F.3d 671, 676–77 (D.C. Cir. 2015). Section 1252(e)(3) precludes that showing.

**II.    The District Court Erred When It Concluded that the Secretary was Required to Engage in Notice-and-Comment Rulemaking.**

The district court erred when it concluded that the designation is a substantive rule required to undergo notice-and-comment procedures. Gov't Br. 32-40. The designation is not subject to notice-and-comment procedures because it is committed to the Secretary's "sole and unreviewable discretion," Gov't Br. 32-33, it is a statement of policy, Gov't Br. 34-36, and it is exempt from notice-and-comment procedures under 5 U.S.C. § 553(b)(B), Gov't Br. 36-40. Plaintiffs' contrary arguments, Br. 26-35, lack merit.

*First*, Plaintiffs contend that, in providing that a designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time," Congress did not "clear[ly]" provide for discretion over "the act or process of designating," and so section 1225(b)(1)(A)(iii) must be read to "accord[] discretion narrowly over 'such designation." Br. 26; *see* Br. 25-27. But the use of the phrase "sole and unreviewable discretion" means that the process employed by the Secretary in issuing the designation, Gov't Br. 32-34, is committed to agency discretion. Plaintiffs' "notice-and-comment' claims "challenge[] *how* the Secretary exercises—or has exercised—his or her 'sole and unreviewable discretion,'" and are therefore barred. *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018) (emphasis added); *see Bremer v. Johnson*, 834 F.3d 925, 930-31 (8th Cir. 2016) (similar).

11

Plaintiffs suggest that *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479 (1991) supports their reading, Br. 26-27, but they are mistaken. In *McNary*, the Supreme Court ruled that a prohibition on district court review "of a determination *respecting an application*" did not preclude review of "collateral challenges" to an agency's procedures in adjudicating that application. 498 U.S. at 492 (emphasis added). Seizing on the Court's reasoning that the reference to "a determination" in the challenged statute described "a single act rather than a group of decisions or a practice or procedure employed in making decisions," *id*, Plaintiffs assert that the designation in section 1225(b)(1)(A)(iii) is indistinguishable from the "determination" at issue in *McNary*.

But unlike the statute in *McNary*, section 1225(b)(1)(A)(iii) does not refer narrowly to "an application," nor does it contain companion provisions implying that broader procedural decisions about how to adjudicate eligibility are outside the scope of the Secretary's discretion. And *McNary* "analyzed the meaning of the word 'determination'" coupled with the phrase "an application," nouns that "do[] not appear in" section 1225(b)(1)(A)(iii). *See Bourdon*, 940 F.3d at 542 n.2. Unlike in *McNary*, "designate" as used in section 1225(b)(1)(A)(iii) is a verb, which means "to indicate and set apart for a specific purpose, office, or duty" or to "distinguish as to class." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 313 (10th ed.1994); *see also* DESIGNATE, Black's Law Dictionary (11th ed. 2019) ("To

choose (someone or something) for a particular job or purpose"). These definitions show that Congress, by choosing the verb "designate"—rather than a noun like "determination" or "application" that refer only to "a single act," *McNary*, 498 U.S. at 492, or "final conclusion," *Bourdon*, 940 F.3d at 542—was referring not just to the final *designation*, but also the act of *designating*. *See Bourdon*, 940 F.3d at 542. And even under *McNary*, courts lack jurisdiction at least until "the [agency] ... appl[ies] the [challenged] regulation to" a specific alien. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 44, 59 (1993) (limiting *McNary*).

Plaintiffs also assert that other cases concluding that the use of the phrase "sole and unreviewable" bars notice-and-comment claims are distinguishable because they construe the meaning of "sole and unreviewable" in a different statute, the Adam Walsh Act (AWA). Br. 27-29. The AWA provides that the general rule under the INA permitting a U.S. citizen to petition for alien family members to receive immediate-relative status does "not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the [Secretary], in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Plaintiffs contend that the AWA's use of the term "determines" instead of "designates" distinguishes those cases, because "determine" in section 1154(a)(1)(A)(viii)(I) is a noun that "extend[s] discretion to

the act of the determination rather than only to the final determination," whereas section 1225(b)(1)(A)(iii)'s use of "designation" "refer[s] to a single final decision." Br. 28.

But as just explained, to designate is a verb, not a noun. And as the cases Plaintiffs attempt to distinguish explain, "determines" as used in the AWA, is also a verb. *E.g.*, *Bourdon*, 940 F.3d at 542. Thus, just as in the AWA, the "sole and unreviewable" action is not just the final act, but also the process of acting. *See id.* Just as in the AWA, in section 1225(b)(1)(A)(iii) "[t]here is no stark use of indefinite articles in the text to suggest that the grant of discretion is narrowly confined to a single act." *Bremer*, 834 F.3d at 931. And just as in the AWA, "sole and unreviewable" in section 1225(b)(1)(A)(iii) "modifies the word 'discretion,'" "as opposed to 'decision' or any other word that would mark the conclusion of the process rather than the process itself." *Bourdon*, 940 F.3d at 542. Section 1225(b)(1)(A)(iii) "is [thus] written in a way that makes the Secretary's exercise of his discretion over the decision-making process itself unreviewable." *Id.* at 543.

Finally, Plaintiffs suggest section 1225(b)(1)(A)(iii)'s provision that "[s]uch designation shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time" shows that that "procedure surrounding the substantive decision" is reviewable. Br. 28-29. But the two cases Plaintiffs cite for that proposition, Br. 29, do not address a statute using the phrase "sole and

unreviewable discretion."   And, as explained, that phrase, coupled with "at any time," makes clear Congress's intent to shield both the final designation decision, and the process for effecting such designations, from judicial review under the APA.  Gov't Br. 32-33.

*Second*, Plaintiffs contend that even if section 1225(b)(1)(A)(iii) affords the Secretary discretion, Congress did not not "provide an express statement that" the APA's "notice-and comment requirements" "do not apply."   Br. 30-31.   That argument fails for the reasons just discussed: "[b]y granting 'sole and unreviewable discretion' to make the [designation], Congress conferred on the Secretary the 'power to make decisions without anyone else's advice and consent.'"   *Bremer*, 834 F.3d at 930-31.   Therefore, "Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm," even if it did not use explicit magic words to do so.   *See Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998).

*Third*, Plaintiffs argue that the designation is a legislative rule because it "imposes legally binding obligations or prohibitions on regulated parties that would be the basis for an enforcement action."   Br. at 31-32.   But as the government has explained, Gov't Br. 34-36, the designation merely "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power."   *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993).   Plaintiffs

contend that the designation is a legislative rule because, "before [it was made], DHS officers had no discretion to put a noncitizen who was present for more than 14 days into expedited removal" and the designation "now permits what was previously prohibited." Br. 32. But DHS has for many years had authority to designate aliens for expedited removal and has not "promulgated substantive rules" above and beyond those already legislated by Congress, and so has not "modifie[d] or add[ed]" to any legal norm." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 96 (D.C. Cir. 1997); *see* Gov't Br. 35-36. No immigration officer is required under the designation to process an amenable alien under the designation—officers are "genuinely left free to exercise discretion," *Clarian Health West, LLC v. Hargan*, 878 F.3d 346, 356 (D.C. Cir. 2017)—and so the designation merely explains "how [the agency] will exercise its broad enforcement discretion ... under some extant statute or rule." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014).

*Fourth*, Plaintiffs assert that the Secretary lacked "good cause" to forego notice-and-comment rulemaking. Br. 32-34. Plaintiffs contend that notice-and-comment procedures are not "impracticable," 5 U.S.C. § 553(b)(B), because "Defendants are free to modify a designation 'at any time,' so long as they proceed through notice-and-comment." Br. 33. But, as the government has demonstrated, Gov't Br. 36-37, the designation cannot be "modified at any time," 8 U.S.C.

§ 1225(b)(1)(A)(iii)(I), or be "effective immediately," 8 C.F.R. § 235.3(b)(ii), if the Secretary must undertake notice-and-comment rulemaking before issuing it. That is not the approach that is appropriate in this context, where Congress expected the Executive Branch to "respond rapidly, effectively, and flexibly to border security and public safety challenges." 84 Fed. Reg. at 35,413.

Plaintiffs also contend that the Secretary failed to demonstrate that notice-and-comment procedures were "contrary to the public interest," 5 U.S.C. § 553(b)(B). Br. 33; *see also* Br. 34-36. They maintain that the Secretary's finding that "delayed implementation could lead to a surge in migration across the southern border during a notice-and-comment period," threatening "national security and public safety," and causing possible "destabilizing effect[s] on the region," and "significant loss of human life," 84 Fed. Reg. at 35,413, "strains credulity," because then-Secretary Kelly announced an aspiration to expand expedited removal in February 2017, but DHS did not do so until July 2019. Br. 12, 33-35. That claim is baseless. Nothing requires the Secretary to act at a specific time because a prior Secretary established goals for the agency. And it is backwards. The good-cause exception is predictive—it concerns situations where "the very announcement of a proposed rule itself can be expected," to cause the predicted harms. *Chamber of Commerce of U.S. v. S.E.C.*, 443 F.3d 890, 908

(D.C. Cir. 2006). It is therefore assessed based on the agency's predictive judgments made when the designation was issued.

As to the facts when the Secretary took action, Plaintiffs contend Defendants have "failed to meet [their] burden" of showing good cause. Br. 34. But they offer nothing more than disagreements with the agency's expertise and predictive judgments, *see id.*, which "are entitled to particularly deferential review." *EarthLink, Inc. v. F.C.C.*, 462 F.3d 1, 12 (D.C. Cir. 2006). The Secretary explained the "ongoing humanitarian and security crisis" at our southern border, the exigencies DHS faced, and the incentives that aliens have to respond to immigration policies quickly, "creat[ing] a tremendous pull factor that is spurring this illegal immigration," "incentive[ize aliens] to enter unlawfully [and] also to attempt to travel quickly into the interior of the United States in an effort to avoid the application of expedited removal." 84 Fed. Reg. at 35412; Gov't Br. 38-39. That is more than sufficient to satisfy good cause, *see Sorenson Commc'ns Inc. v. F.C.C.*, 755 F.3d 702, 706 (D.C. Cir. 2014), and Plaintiffs' second-guessing of the record has no place in APA review, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2571 (2019).

## III. The District Court Erred in Concluding that the Designation Is Arbitrary and Capricious.

The district court erred when it concluded that the designation was subject to arbitrary-and-capricious review and that DHS acted "irrational[ly]" in issuing the

designation. Gov't Br. 40-46. That conclusion is entirely misplaced because the designation is a decision that "is committed to agency discretion by law," and, in any event, the designation satisfies the deferential arbitrary-and-capricious review standard. *Id.* Plaintiffs' arguments to the contrary, Br. 35-41, lack merit.

*First*, Plaintiffs contend that the designation decision under section 1225(b)(1)(A)(iii) is not "committed to agency discretion by law," and thus is subject to arbitrary-and-capricious review, because "[t]he expedited removal statutes delineates a process by which officers decide whether expedited removal applies," which supplies "law to apply." Br. 35-36. But DHS's discretion to decide whether to place someone in expedited removal proceedings is not at issue here, and in any event, would not be subject to judicial review. *See* 8 U.S.C. § 1252(a)(2)(A), (e)(2). Rather, Plaintiffs are challenging the Secretary's "sole and unreviewable discretion" to designate aliens as eligible for expedited removal "at any time." As the government has explained, Gov't Br. 41-43, that standard provides "no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). As multiple courts of appeals have held—in cases that Plaintiffs do not address—when the Secretary's decision is at his "sole and unreviewable discretion," the decision is "committed to

agency discretion by law," and not subject to arbitrary-and-capricious review. *See,*
*e.g.*, *Bakran*, 894 F.3d at 562; *see* Gov't Br. 41-43 (collecting cases).[2]

*Second*, Plaintiffs argue that the designation is arbitrary and capricious
because the Secretary did not consider what Plaintiffs believe to be the "numerous
problems with the expedited removal system," and the potential impact of
"apply[ing] it to a new population," which, according to Plaintiffs, is "textbook
arbitrary and capricious action."  Br. 37-39.  Plaintiffs are wrong.

To begin, Plaintiffs may not amass self-serving, extra-record materials based
on outliers, compile that into a parallel record, and then submit it to the district
court as a basis for arguing that the Secretary failed to consider relevant materials.
APA review is limited to the "record that was before the Secretary at the time he
made his decision," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S.
402, 420 (1971), "not some new record made initially in the reviewing court,"
*Camp v. Pitts*, 411 U.S. 138, 142 (1973), and so the Court cannot find the
designation unlawful based on those materials.

Plaintiffs contend that they may rely on extra-record materials because the
"administrative record is incomplete."  Br. 40-41.  But "the designation of the
Administrative Record, like any established administrative procedure, is entitled to

---

[2] *Abourezk v. Reagan*, 785 F.2d 1043, 1051 (D.C. Cir. 1986), Br. 35, did not
involve "sole and unreviewable discretion" to take specific action "at any time."

a presumption of administrative regularity." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). Plaintiffs have not now, let alone in district court by motion, demonstrated "bad faith" by the government, *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011), or made a "substantial showing" that "the record is incomplete." *Oceana*, 920 F.3d at 865. Plaintiffs thus may not submit—and the district court abused its discretion in relying on—extra-record materials as part of arbitrary-and-capricious review. And even if the record was incomplete, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," not to create a new record on appeal.[3] *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Regardless, even considering Plaintiffs' extra-record materials and their assertion that there are "problems with the expedited removal system," Br. 37, the designation satisfies arbitrary-and-capricious review. Gov't Br. 43-45. "[T]he fact that [plaintiffs] can point to" outlier cases "in which the rule might lead to an arbitrary result does not render the rule facially invalid." *Am. Bankers.*, 934 F.3d at 667-68. Millions of aliens have been subject to expedited removal since its

---

[3] Plaintiffs cite no authority for their contention that the Secretary was on notice of their extra-record materials because they sent a "letter" to a general DHS mailbox, Br. 41, which, again, is contrary to the presumption of regularity DHS is entitled to. *Oceana*, 920 F.3d at 865.

inception.[4]  That Plaintiffs identify a tiny subset of cases involving outlier factual circumstances among those millions of cases, Br. 8-11, cannot render the designation unlawful as to all aliens subject to it.  *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 188 (1991).  In any event, the Secretary *did* canvass pre-existing regulations and policies governing aliens to whom the designation would apply, and elaborated on procedures available to aliens who believe they are not properly subject to the designation.  *See* 84 Fed. Reg. at 35,413-14 (citing and discussing provisions of 8 U.S.C. § 1225(b)(1) and 8 C.F.R. § 235.3).  And the Secretary considered whether there were good reasons not to extend the discretionary provision for expedited removal to the full scope authorized by Congress.  *See* 84 Fed. Reg. at 354,11-14.  That easily satisfies the "reasoned explanation" requirement, because the designation "is permissible under the statute," the record shows "good reasons for it," and the "agency believes [the designation is] better" than the previous state of affairs, "which the conscious change of course adequately indicates."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

---

[4] *See* IMMIGRATION ENFORCEMENT ACTIONS: 2017 12, *available at* https://www.dhs.gov/sites/default/files/publications/enforcement_actions_2017.pdf; IMMIGRATION ENFORCEMENT ACTIONS: 2009 4, *available at* https://www.dhs.gov/sites/default/files/publications/Enforcement_Actions_2009.pdf.

The district court erred in ruling that the designation is arbitrary and capricious.

## IV.    The District Court Erred in Entering a Universal Injunction Extending to Non-Parties

Even if an injunction were warranted, the district court erred in issuing a nationwide preliminary injunction benefitting non-parties: such relief defies Article III and equitable principles, is not required under the APA, and is precluded by the INA.  Gov't Br. 46-57.  Plaintiffs' contrary arguments, Br. 42-52, lack merit.

*First*, Plaintiffs assert that the potential remedy in APA cases on *final* judgement—that the court "set aside agency action," 5 U.S.C. § 706(2)(A)— applies to preliminary injunctions.  Br. 42-43.  Plaintiffs rely on *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998), Br. 42, but that decision involved a final judgement, and did not purport to reach preliminary injunctions.  145 F.3d at 1409.  In this case "the [district] [c]ourt has not finally determined that the [designation] is unlawful," so "the need for narrow tailoring ... is particularly important," and any "injunction should be limited in scope to protect only" parties to the case.  *United States Ass'n of Reptile Keepers, Inc. v. Jewell*, 106 F. Supp. 3d 125, 128 (D.D.C. 2015), *aff'd*, 852 F.3d 1131 (D.C. Cir. 2017).  Indeed, this Court has—even in the *final judgment* context—held that "district court should not [enjoin an] agency from applying challenged [a] regulation to any party when an injunction covering plaintiff alone adequately protects it from the

feared prosecution." *Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006). That is the case here: an injunction limited to the plaintiffs' bona fide members placed in expedited removal based on the designation provides them "complete relief." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). Plaintiffs contend that they should not have to "disclose their [members'] identities" who may be subject to the designation, Br. 44, but that is information necessary to determine if individuals have "suffered [the] injury-in-fact" that is the predicate for an injunction, *see Am. Chem. Council v. DOT*, 468 F.3d 810, 820 (D.C. Cir. 2006), and their refusal to do so provides no basis for a nationwide injunction.

Plaintiffs next contend that section 1252 does not bar injunctive relief. Br. 44-48. As the government has explained, that is wrong. Gov't Br. 51-54. Plaintiffs contend that section 1252(e)(1)—which bars the entry of "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title *except as specifically authorized in a subsequent paragraph of this subsection*" (emphasis added)—does not bar an injunction under section 1252(e)(3) because "[t]his is not an individual action pertaining to an order to exclude an alien." Br. 45-46. But as explained, section 1252(e), in which section 1252(e)(3) appears, is titled "Judicial review of

orders under section 1225(b)(1)," and so that is precisely what a section 1252(e)(3) case is.

Plaintiffs further contend that section 1252(e)(1) does not bar injunctive relief because the phrase "specifically authorized in a subsequent paragraph" refers to "actions" allowed under section 1252(e), and not "relief" authorized under section 1252(e). *Id.* That is wrong. The phrase "except as" in section 1252(e)(1) modifies "no court may enter ... declaratory, injunctive, or other equitable relief," not the singular noun "action." Indeed, "an adverb cannot modify a noun," *Nielsen v. Preap*, 139 S. Ct. 954, 964 (2019), and so the "except as" clause—an adverbial clause—can only refer to "relief ... as specifically authorized in a subsequent paragraph." 8 U.S.C. § 1252(e)(1).

Next, Plaintiffs argue that Defendants' reading renders section 1252(e)(4)(B) "superfluous," because if Defendants are correct, then that section would not need to explicitly provide that if a court finds that an alien should prevail in an individual habeas case under section 1252(e)(2), "the court may order no remedy or relief other than to require that the petitioner be provided a hearing [under section 1229a]." Br. 48. But there is nothing unusual about a provision that "removes any doubt" on the issue, *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008). Section 1252(e)(4)(B) clarifies the sole permissible "equitable relief ... specifically authorized in a subsequent paragraph" for a claim under section

1252(e)(2), just as section 1252(e)(3) removes any doubt that a "determination" is the only available remedy under that provision.

Plaintiffs contend that the government has "not [said] what kind of relief they believe a 'determination' to be." Br. 45-46. But the government did just that. Gov't Br. 51-52 ("determination" does not encompass "interim [injunctive] relief" or "vacatur of agency action"). Plaintiffs also claim that a "determination" must include an injunction because otherwise "no interim injunctive relief would be available at all—even for individual plaintiffs who would otherwise be removed to torture or persecution pursuant to an illegal policy." Br. 46. That too is wrong. As the government explained, section 1252(f), which provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions part IV of this subchapter [i.e., 8 U.S.C. §§ 1221-1232] *other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated*" (emphasis added), provides for such relief. Gov't Br. 52. Plaintiffs assert that section 1252(f) does not apply because a nationwide injunction does not "enjoin or restrain the operation" of section 1225(b)(1), Br. 48-49, but that is exactly what it does: it rewrites section 1225(b)(1)(A)(iii) to include limitations on the government's authority "that [do] not exist in the statute." *Hamama v. Adducci*, 912 F.3d 869, 879-80 (6th Cir. 2018). Regardless, section 1252(f) preserves jurisdiction as to

"individual alien[s] against whom proceedings" under section 1225(b)(1) "have been initiated," so Plaintiffs' argument fails.

Finally, Plaintiffs contend that they will suffer irreparable harm and that the balance of interests supports an injunction. Br. 49-52. They assert that their members could "face forcible ejection." Br. 49-50. That claim rests on vague speculations that some unidentified "members" "could" at some future date be subject to the immigration laws of this country *if* the Executive decides to enforce the statute as to them *and* places them in expedited removal. Gov't Br. 50-51. Plaintiffs claim that their members fear "being singled out for expedited removal." Br. 50. But that is not cognizable harm: Congress has determined that certain aliens here less than two years are subject to expedited removal procedures, 8 U.S.C. § 1225(b)(1)(A)(i), and aliens lack any "right" to be present "illegally." *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 764 (9th Cir. 2018). Plaintiffs also claim that "many subject to the rule" fear "persecution or torture." Br. 51. But Plaintiffs identify no member of their organization who is presently seeking asylum, and even if they did, the statute and regulations provide ample procedures for identifying such claims before removal occurs—as well as whether an alien has been present for more than two years or has been admitted or paroled to this country and thus should not subject to the designation—so such harm is

speculative.  *See* 8 U.S.C. § 1225(b)(1)(A)(ii), (B); 8 C.F.R. §§ 208.30, 235.3(b)(1), (4)-(6).

Plaintiffs also contend that these speculative harms outweigh the profound harm to the government's ability to enforce the immigration laws because "Defendants have not shown that the expansion of expedited removal addressed their stated concerns regarding border administration and preventing illegal entry." Br. 52.  But the Secretary explained, citing evidence and experience, that the designation was needed to combat DHS's "limited ... resources" to address the "increasing number of aliens ... apprehended within the United States" at a time of an "ongoing crisis at the southern border."  84 Fed. Reg. at 35,411.  The injunction therefore frustrates the "public interest in effective measures to prevent the entry of illegal aliens" at the Nation's borders.  *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981).  The district court failed even to acknowledge these harms.  Plaintiffs have not made up that shortfall and have not demonstrated that an injunction is necessary for them—let alone nationwide for non-parties.

## CONCLUSION

The Court should reverse and vacate the district's court injunction.

Dated: January 31, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Phone: (202) 307-4293
E-mail: erez.r.reuveni@usdoj.gov

KATHRYNE GRAY
ARCHITH RAMKUMAR
Trial Attorneys

*Attorneys for Defendant-Appellants*

# RULE 32 CERTIFICATION

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

1.     This brief contains 6,499 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(e)(1).

2.     The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2019, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division