# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 6, 2020                    Decided June 23, 2020

No. 19-5298

MAKE THE ROAD NEW YORK, ET AL.,
APPELLEES

v.

CHAD F. WOLF, ACTING SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY, IN HIS OFFICIAL CAPACITY, ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02369)

———

*Scott G. Stewart*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellants. With him on the briefs was *Erez Reuveni*, Assistant Director, U.S. Department of Justice.

*Michael M. Hethmon* was on the brief for *amicus curiae* Immigration Reform Law Institute in support of appellants.

*Anand Balakrishnan* argued the cause for appellees. With him on the brief were *Omar C. Jadwat, Michael Tan, Celso Perez, Trina Realmuto, Kristin Macleod-Ball, Karolina J. Walters, Stephen B. Kang, Julie Veroff, Arthur B. Spitzer, Scott*

2

*Michelman*, *Jonathan K. Youngwood*, *Susannah S. Geltman*, *Joshua Polster*, and *Adrienne V. Baxley*.

*Xavier Becerra*, Attorney General, Office of the Attorney General for the State of California, *Antonette Benita Cordero*, *Laura Faer*, *Vilma Palma-Solana*, *Anthony Seferian*, Deputy Attorneys General, Office of the Attorney General for the State of California, *William Tong*, Attorney General, Office of the Attorney General for the State of Connecticut, *Clare Kindall*, Solicitor General for the State of Connecticut, *Clare E. Connors*, Attorney General, Office of the Attorney General for the State of Hawaii, *Kimberly Tsumoto Guidry*, Solicitor General for the State of Hawaii, *Aaron M. Frey*, Attorney General, Office of the Attorney General for the State of Maine, *Laura E. Jensen*, Assistant Attorney General, Office of the Attorney General for the State of Maine, *Philip J. Weiser*, Attorney General, Office of the Attorney General for the State of Colorado, *Eric R. Olson*, Solicitor General for the State of Colorado, *Kathleen Jennings*, Attorney General, Office of the Attorney General for the State of Delaware, *Christian Douglas Wright*, Director of Impact Litigation, Office of the Attorney General for the State of Delaware, *Kwame Raoul*, Attorney General, Office of the Attorney General for the State of Illinois, *Sarah A. Hunger*, Deputy Solicitor General for the State of Illinois, *Maura Healey*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Robert E. Toone*, Assistant Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Keith Ellison*, Attorney General, Office of the Attorney General for the State of Minnesota, *Kathryn Iverson Landrum*, Assistant Attorney General, Office of the Attorney General for the State of Minnesota, *Gurbir S. Grewal*, Attorney General, Office of the Attorney General for the State of New Jersey, *Glenn J. Moramarco*, Assistant Attorney General, Office of the Attorney General for the State of New Jersey, *Brian E. Frosh*,

3

Attorney General, Office of the Attorney General for the State
of Maryland, *Adam D. Snyder*, Deputy Chief of Litigation,
Office of the Attorney General for the State of Maryland, *Dana
Nessel*, Attorney General, Office of the Attorney General for
the State of Michigan, *Fadwa A. Hammoud*, Solicitor General
for the State of Michigan, *Aaron D. Ford*, Attorney General,
Office of the Attorney General for the State of Nevada, *Heidi
Parry Stern*, Solicitor General for the State of Nevada, *Letitia
James*, Attorney General, Office of the Attorney General for
the State of New York, *Steven C. Wu*, Deputy Solicitor General
for the State of New York, *Josh Shapiro*, Attorney General,
Office of the Attorney General for the Commonwealth of
Pennsylvania, *Aimee D. Thomson*, Deputy Attorney General,
Office of the Attorney General for the Commonwealth of
Pennsylvania, *Thomas J. Donovan, Jr.*, Attorney General,
Office of the Attorney General for the State of Vermont,
*Benjamin D. Battles*, Solicitor General for the State of
Vermont, *Hector Balderas*, Attorney General, Office of the
Attorney General for the State of New Mexico, *Tania Maestas*,
Chief Deputy Attorney General, *Brian E. McMath*, Assistant
Attorney General, Office of the Attorney General for the State
of New Mexico, *Ellen F. Rosenblum*, Attorney General, Office
of the Attorney General for the State of Oregon, *Jona
Maukonen*, Assistant Attorney General, Office of the Attorney
General for the State of Oregon, *Peter F. Neronha*, Attorney
General, Office of the Attorney General for the State of Rhode
Island, *Adam D. Roach*, Special Assistant Attorney General,
Office of the Attorney General for the State of Rhode Island,
*Robert W. Ferguson*, Attorney General, Office of the Attorney
General for the State of Washington, *Noah Guzzo Purcell*,
Solicitor General for the State of Washington, *Mark R.
Herring*, Attorney General, Office of the Attorney General for
the Commonwealth of Virginia, *Toby J. Heytens*, Solicitor
General for the Commonwealth of Virginia, *Karl A. Racine*,
Attorney General, Office of the Attorney General for the

4

District of Columbia, and *Loren L. AliKhan*, Solicitor General for the District of Columbia, were on the brief for *amici curiae* The State of California, et al. in support of appellees.

Richard Caldarone, *Paul J. Nathanson*, and *Kenneth L. Wainstein* were on the brief for *amici curiae* The Tahirih Justice Center, et al. in support of appellees.

William J. Trunk and *Megan D. Browder* were on the brief for *amici curiae* Former Homeland Security and Immigration Officials in support of appellees.

Before: MILLETT and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

Dissenting opinion filed by *Circuit Judge* RAO.

MILLETT, *Circuit Judge*:  Federal law commits to the "sole and unreviewable discretion" of the Secretary of Homeland Security the decision whether to subject certain individuals present in the United States without documentation to "expedited removal." 8 U.S.C. § 1225(b)(1)(A)(iii)(I).  In July 2019, the Secretary decided to expand the reach of the expedited removal process to its statutory limit, sweeping in all individuals without documentation who have resided in the United States for less than two years.

Three organizations whose members are covered by that expansion ("Associations") filed suit, contending that the Secretary's decision violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1225(a)–(b), 1362, the Due Process Clause of the Fifth Amendment, U.S. CONST.

5

Amend. V, and the Suspension Clause, U.S. CONST., Art. I, § 9, cl. 2. The district court granted a preliminary injunction against the expansion based only on the APA claims, leaving the INA and constitutional claims unaddressed.

We hold that the district court properly exercised jurisdiction over the Associations' case. But because Congress committed the judgment whether to expand expedited removal to the Secretary's "sole and unreviewable discretion," 8 U.S.C. § 1225(b)(1)(A)(iii)(I), the Secretary's decision is not subject to review under the APA's standards for agency decisionmaking. Nor is it subject to the APA's notice-and-comment rulemaking requirements. For those reasons, we reverse the district court's grant of a preliminary injunction and remand for further proceedings consistent with this decision.

**I**

**A**

**1**

Congress created the process of "expedited removal" as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 302, 110 Stat. 3009-546, 3009-579 (1996) (codified at 8 U.S.C. §§ 1225, 1252). Before IIRIRA, an individual in the United States without proper documentation could be considered "deportable," 8 U.S.C. § 1251(a) (1995), if, among other things, that person had "entered the United States without inspection or at any time or place other than as designated by the Attorney General[,]" *see id.* § 1251(a)(1)(B) (1995). A determination of deportability entailed a hearing before a special inquiry officer in which the individual had the right to be represented, to examine the government's evidence, and to present evidence on his or her behalf. *See id.* § 1252(b) (1995).

6

An officer's determination that an individual was deportable was subject to judicial review.  *See id.* § 1105a (1995).

Congress adopted IIRIRA's expedited removal scheme to substantially shorten and speed up the removal process. Expedited removal may be applied to those "who [are] arriving in the United States[,]" 8 U.S.C. § 1225(b)(1)(A)(i), as well as to individuals who are not admitted or paroled and who have "not affirmatively shown" to the immigration officer's satisfaction that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[,]" *id.* § 1225(b)(1)(A)(iii)(II).  IIRIRA leaves it to the Secretary to designate which groups of individuals who fall within the two-year statutory range will be subject to expedited removal, in a provision we shall refer to as the "Designation Provision."  *See id.* § 1225(b)(1)(A)(iii)(I) ("The Attorney General *may apply* [expedited removal] to any or all aliens described in [§ 1225(b)(1)(A)(iii)(II)].") (emphasis added).  Any such decision about the scope of expedited removal's operation within statutory limits is expressly committed to the Secretary's "sole and unreviewable discretion," and the Secretary may modify such a decision "at any time."  *Id.*[1]

Expedited removal lives up to its name.  Under IIRIRA, an immigration officer may determine that an individual is inadmissible because she does not have a valid entry document or other suitable travel document, or because she has obtained a visa through misrepresentation.  *See* 8 U.S.C. § 1225(b)(1)(A)(i); *see also id.* § 1182(a)(6)(C), (7).  If that individual falls within the class of persons subject to expedited

---

[1] IIRIRA confers this authority on the Attorney General, but that power has since been transferred to the Secretary of Homeland Security.  *See* 8 U.S.C. § 1103(a); *see also* 6 U.S.C. § 251; *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

7

removal, an immigration "officer shall order the alien removed * * * without further hearing or review unless the alien indicates either an intention to apply for asylum * * * or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). Absent such an indication, all that stands between that individual and removal is a paper review by the officer's supervisor. *See* 8 C.F.R. § 235.3(b)(7).

The process is scarcely more involved for individuals who assert an intention to apply for asylum or a fear of persecution. *See* 8 U.S.C. § 1225(b)(1)(A). Those persons are referred for an interview with an immigration officer who decides whether they have a "credible fear of persecution[.]" *Id.* § 1225(b)(1)(A)(ii), (B)(ii). The interviewing officer prepares a written record of the credible-fear determination, including the facts relied upon and the officer's analysis. *See id.* § 1225(b)(1)(B)(iii)(II). If the officer finds no credible fear of persecution, the individual's only recourse is review by an immigration judge. *See id.* § 1225(b)(1)(B)(iii)(III). That highly expedited review is meant to conclude within 24 hours. *Id.* The immigration judge's review is final—no administrative or judicial review follows. *See id.* § 1225(b)(1)(C); *id.* § 1252(a)(2)(A)(iii).

Because of the Executive Branch's past concerns about expedited removal's administrability and accuracy in application, the Secretary had long chosen to apply those abrupt procedures only to narrow classes of individuals. *See* Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10,312, 10,313 (March 6, 1997). In particular, the government has expressed concerns that the "application of the expedited removal provisions" to individuals "already in the United States will involve more complex determinations of fact and will be more difficult to manage[.]" *Id.* For that reason, the Secretary initially opted to apply expedited removal only to

8

"arriving" individuals, defined as those "who seek[] admission to or transit through the United States * * * at a port-of-entry," or who are "interdicted in international or United States waters and brought into the United States by any means[.]" *Id.* at 10,313, 10,330; *see also id.* at 10,313 (rejecting one commenter's suggestion that the definition of "arriving alien" "be expanded to include aliens who have been present for less than 24 hours" because of the "difficulty not only in establishing that the alien entered without inspection, but also in determining the exact time of the alien's arrival").

In 2002, the Secretary expanded expedited removal to all unadmitted individuals who arrived by sea and who had been continuously present in the United States for less than two years. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68,924, 68,925–68,926 (Nov. 13, 2002).

In 2004, the Secretary again expanded expedited removal to include all individuals, not paroled or admitted, who were encountered within fourteen days of entry and within 100 air miles of any United States international border. *See* Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877, 48,879 (Aug. 11, 2004). With the exception of expedited removal's expansion to Cuban nationals, the 2004 designation remained in place for the next fifteen years. *See* Designating Aliens for Expedited Removal, 84 Fed. Reg. 35,409 (July 23, 2019); *see also* Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea, 82 Fed. Reg. 4902, 4904 (Jan. 17, 2017).

9

**2**

On January 25, 2017, President Trump directed the then-Secretary of Homeland Security John Kelly to expand expedited removal to its full statutory limits. *See* Exec. Order No. 13,767, Border Security and Immigration Enforcement Improvements, 82 Fed. Reg. 8793, 8796 (Jan. 30, 2017).

That directive, though, remained unimplemented for the next two and a half years. Not until July 2019 did the then-Acting Secretary Kevin McAleenan publish an announcement in the Federal Register expanding expedited removal to its full statutory limits so that it would reach all covered individuals who had been in the United States for less than two continuous years. *See* 84 Fed. Reg. at 35,413–35,414. The Secretary cited as the basis for his decision the "increasing numbers" of individuals who "have been detained after being apprehended within the interior of the United States[.]" *Id.* at 35,411. The Secretary also emphasized how fast such expedited removals occur—on average, within 11.4 days. *Id.* Like prior expansions, the July 2019 notice—which we will refer to as the "Expansion Designation"—went into immediate effect. *Id.* at 35,413.

**3**

IIRIRA also adopted a web of jurisdictional provisions governing review of both the Secretary's designation decisions and of removals. Three of them are at issue here.

First, 8 U.S.C. § 1252(a)(2)(A) is the jurisdictional provision that governs the expedited removal program. It provides that "no court shall have jurisdiction to review" matters relating to expedited removal, including "procedures and policies adopted by the [Secretary] to implement the [expedited removal] provisions of section 1225(b)(1)[.]" 8

10

U.S.C. § 1252(a)(2)(A)(iv); *see also id.* § 1252(a)(2)(A)(i)–(iii).

Second, Subsection 1252(a)(2)(A)'s bar on judicial review of the expedited removal process is subject to enumerated exceptions. *See* 8 U.S.C. § 1252(a)(2)(A)(i, ii, & iv); *see also id.* § 1252(e). As relevant here, Congress expressly provided that an action may be "instituted in the United States District Court for the District of Columbia" to review whether "any regulation issued to implement [Section 1225(b)] is constitutional," and whether "a regulation, or a written policy directive, written policy guideline, or written procedure issued by * * * [the Secretary] to implement" Section 1225(b) "is otherwise in violation of law." *Id.* § 1252(e)(3)(A).

Third, Subsection 1252(a)(2)(B) bars judicial review of "any judgment regarding the granting of relief" under various statutory provisions involving "[d]enials of discretionary relief," and "any other decision or action of the * * * Secretary * * * the authority for which is specified under this subchapter to be in the discretion of the * * * Secretary," other than a grant of asylum. *See* 8 U.S.C. § 1252(a)(2)(B). That bar on judicial review does not apply to "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals[.]" *Id.* § 1252(a)(2)(D).

**B**

In August 2019, shortly after the Secretary issued the Expansion Designation, several organizations filed suit on behalf of their individual members against the Secretary, the Attorney General, and three other federal officials within the Department of Homeland Security. The Associations are Make the Road New York, La Union Del Pueblo Entero, and WeCount!. Each one is a membership organization that advocates on behalf of its members in immigrant communities

11

and that includes among its members individuals directly covered by the new expedited removal designation.

The Associations asserted multiple claims, including statutory claims under the APA and the INA, along with two constitutional claims. Specifically, the Associations contend that the Secretary violated the APA by failing both (i) to engage in reasoned decisionmaking, and (ii) to promulgate the Expansion Designation through notice-and-comment rulemaking. The Associations also alleged violations of (i) the INA, 8 U.S.C. §§ 1225(a)–(b), 1362, contending that the expansion impermissibly deprived individuals of a meaningful pre-removal process and restricted the participation of counsel; (ii) the Due Process Clause of the Fifth Amendment, U.S. CONST. Amend. V, for failure to provide meaningful process prior to removal; and (iii) the Suspension Clause, U.S. CONST. Art. I, § 9, cl. 2, because the designation deprived individuals of the right to seek judicial review of a removal order. The Associations requested, among other things, a declaration that the Expansion Designation was contrary to law, vacatur of the Expansion Designation, and an injunction barring its application to the expanded group of individuals. J.A. 38–39.

Because the Expansion Designation took effect immediately, the Associations promptly moved for a preliminary injunction. After conducting a hearing, the district court granted a preliminary injunction, determining that the Associations were likely to succeed in establishing jurisdiction and on the merits of their APA claims, and that the balance of interests favored the Associations. Given those rulings, the court found it unnecessary at that time to address the Associations' INA and constitutional claims.[2]

_____

[2] Because the district court only addressed the APA notice-and-comment rulemaking and reasoned decisionmaking claims, *see*

12

Regarding jurisdiction, the district court held that it had jurisdiction to consider the claims under 28 U.S.C. § 1331, and that the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(A) by their express terms do not apply to constitutional and statutory challenges to regulations, written policy directives, and written policy guidelines issued by the Secretary to implement expedited removal.  *See Make the Road*, 405 F. Supp. 3d at 28 ("[T]his court has little doubt that [the Associations'] APA claims assailing DHS's July 23rd Notice qualify as challenges to 'a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General *to implement*' section 1225(b).") (quoting 8 U.S.C. § 1252(e)(3)(A)(ii)).

The district court also determined that the Associations had standing to litigate on behalf of their members who are subject to the Expansion Designation, pointing to three declarations from the Associations' members stating that they were subject to and adversely affected by the new designation. The court further found that depriving those individuals of the more robust procedural protections afforded in regular removal proceedings was a "recognized harm[.]"  *Make the Road*, 405 F. Supp. 3d at 33.  Nor was there anything "speculative about a threatened injury if the one who makes the threat

---

*Make the Road New York v. McAleenan*, 405 F. Supp. 3d 1, 25 n.12 (D.D.C. 2019), and the parties did not address any other claims in their briefing to this court, we do not address the pending constitutional and INA claims for the first time on appeal.  *See Liberty Property Trust v. Republic Properties Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009) ("Although we * * * have the discretion to consider questions of law that were not passed upon by the District Court, this court's normal rule is to avoid such consideration.") (formatting modified); *see also Washington Alliance of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 346 (D.C. Cir. 2018) (similar).

13

simultaneously and unequivocally states that he intends to inflict the threatened harm as soon as possible and without further warning" on such individuals. *Id.* at 34.

The court next found that the APA provided a cause of action to challenge the Expansion Designation, even though the decision was statutorily committed to the Secretary's "sole and unreviewable discretion[.]" *See Make the Road*, 405 F. Supp. 3d at 39–43. In the district court's view, it was "more likely that Congress intended to confer [on] the agency the ultimate authority to *make* the decision of who will be subject to expedited removal under the statute, which is not the same thing as giving the agency sole discretion to determine the *manner* in which that decision will be made." *Id.* at 39. In the district court's estimation, the Associations' APA claims were related to the process and not to the substance of the Expansion Designation itself.

Moving to the merits, the district court concluded that the Associations were likely to succeed on their notice-and-comment rulemaking and arbitrary and capricious claims. The court determined that the Expansion Designation was a substantive rule, not a general statement of policy, and no good cause existed to justify the failure to proceed through notice-and-comment rulemaking. The court also ruled that the Expansion Designation was not a product of reasoned decisionmaking because the Secretary failed to weigh "the considerable *downsides* of adopting a policy that, in many respects, could significantly impact people's everyday lives in many substantial, tangible, and foreseeable ways." *Make the Road*, 405 F. Supp. 3d at 55.

Finally, the district court ruled that the balance of interests favored issuing a preliminary injunction. The Associations' members would be subject to irreparable harm when the

14

Expansion Designation subjected them to expedited removal. And while the public had an interest in the efficient administration of immigration laws, the public also "ha[d] a significant interest in avoiding the erroneous application of a policy that can result in the swift and largely unreviewable deportation * * * of members of the public that have established strong ties to their communities." *Make the Road*, 405 F. Supp. 3d at 65.

Based on those determinations, the district court preliminarily enjoined the Secretary from enforcing the Expansion Designation against all newly covered individuals.

The Secretary filed a timely notice of appeal. *See* 8 U.S.C. § 1252(e)(3)(C). Upon the joint request of the parties, the district court stayed further proceedings pending the disposition of this statutorily expedited appeal. *Id.* § 1252(e)(3)(D).

**II**

The district court exercised federal question jurisdiction over the APA claims under 28 U.S.C. § 1331. This court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

We review the issuance of a preliminary injunction for an abuse of discretion. *See, e.g.*, *Atlas Air, Inc. v. International Bhd. of Teamsters*, 928 F.3d 1102, 1112 (D.C. Cir. 2019). The district court's underlying legal conclusions are reviewed *de novo*, while its factual findings are reviewed for clear error. *Id.*

**III**

To obtain a preliminary injunction, the Associations must establish that (1) they are likely to succeed on the merits of their APA claims, (2) their members are likely to suffer

15

irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As part of establishing a likelihood of success on the merits, the Associations must first demonstrate a likelihood of success in establishing jurisdiction. *See, e.g.*, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

We hold that the Associations established jurisdiction for their APA claims. But they do not have a likelihood of success on their APA notice-and-comment and reasoned decisionmaking claims because the Secretary's decision to expand the scope of expedited removal within statutory limits is committed to agency discretion by law.

**A**

On the question of jurisdiction, we decide this case against the backdrop of "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)); *see id.* ("Consider first" the presumption in favor of judicial review.); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018) ("[W]e begin with 'the strong presumption in favor of judicial review.") (quoting *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016)).[3]

---

[3] *See also NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013) (beginning analysis by "bear[ing] in mind the presumption favoring judicial review of agency action"); *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011) ("When considering whether a statute bars judicial review, '[w]e begin with the strong presumption that Congress intends judicial review of

16

That presumption means that, "when a statutory provision 'is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles:  that executive determinations generally are subject to judicial review.'"  *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (quoting *Kucana*, 558 U.S. at 251); *see also* HON. HARRY T. EDWARDS & LINDA A. ELLIOTT, FEDERAL STANDARDS OF REVIEW:  REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS, Part 2, Chapter XII, Section A (database updated Feb. 2018) ("And, '[b]ecause the presumption favoring interpretations of statutes to allow judicial review of administrative action is well-settled,' Congress is assumed to 'legislate[] with knowledge of [it].'") (quoting *Kucana*, 558 U.S. at 251–252).

That "well-settled" and "strong presumption" in favor of judicial review is so embedded in the law that it applies even when determining the scope of statutory provisions specifically designed to limit judicial review.  *See Guerrero-Lasprilla*, 140 S. Ct. at 1068; *see also Kucana*, 558 U.S. at 251–252; *American Clinical Lab. Ass'n v. Azar*, 931 F.3d 1195, 1204 (D.C. Cir. 2019); *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011) ("Th[e] presumption applies even where, as here, the statute expressly prohibits

---

administrative action.'") (quoting *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986)); *cf. Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 45–46 (2000) (Thomas, J., concurring) (It is a "longstanding canon that judicial review of executive action will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress," and noting that the Court had applied the presumption in the immigration context, "notwithstanding the statute's express prohibition of judicial review") (formatting modified).

17

judicial review—in other words, the presumption dictates that such provisions must be read narrowly.").

The Supreme Court has "'consistently applied' the presumption of reviewability to immigration statutes," including the very statute at issue here, 8 U.S.C. § 1252(a), and the very subsection on which the dissenting opinion relies. *See Guerrero-Lasprilla*, 140 S. Ct. at 1069–1070; *see also Kucana*, 558 U.S. at 251–252 (also applying the presumption to Subsection 1252(a)(2)(B)); *cf. McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (applying presumption to a predecessor INA provision).

That "well-settled" presumption can be overcome only by "clear and convincing evidence" of congressional intent to preclude judicial review. *See, e.g.*, *Kucana*, 558 U.S. at 252 (quoting *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 64 (1993)).

Foundational tenets of statutory construction likewise apply with equal force in the jurisdictional context. That means that, when interpreting a jurisdiction-stripping provision, we start with the text, and then read those words in light of the statutory structure and context. *See Guerrero-Lasprilla*, 140 S. Ct. at 1070–1071; *see also Kucana*, 558 U.S. at 245 (same); Oral Arg. Tr. 74:15–17 (Secretary agreeing that the provisions are "not divorced," and that the court must "read the entire context of the statute").

Applying those principles of statutory construction, we hold that IIRIRA's text and statutory structure expressly preserve the district court's jurisdiction under 28 U.S.C. § 1331 over the Associations' APA challenges.

18

**1**

While the statutory provisions at issue are complex, straightforward rules of statutory construction knit them together and, at every turn, expressly preserve jurisdiction over challenges like the Associations' claims of legal or constitutional error in the Secretary's rules implementing expedited removal.

*First*, the statute's plain language says that there is jurisdiction. In the midst of a statutory section that largely limits and channels judicial relief directly into the federal appellate courts or habeas corpus proceedings, Congress specifically provided in the expedited removal context for more traditional judicial review of "[c]hallenges on validity of the system[.]" 8 U.S.C. § 1252(e)(3) (formatting modified). For those claims, Congress authorized "[j]udicial review" by means of "an action instituted in the United States District Court for the District of Columbia[.]" *Id.* § 1252(e)(3)(A).[4]

---

[4] Subsection 1252(e)(3)(A) provides in full:

**(3)  Challenges On Validity Of The System**

**(A)  In general**

Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the

19

That review specifically includes "determinations under section 1225(b) of this title and *its* implementation[.]" 8 U.S.C. § 1252(e)(3)(A) (emphasis added).  The natural meaning of the singular "its" points directly to litigation over Section 1225(b)'s implementation.  *See United States v. Barnes*, 295 F.3d 1354, 1364 (D.C. Cir. 2002).  "[S]ection 1225(b) of this title" is also the last antecedent to which the word "its" refers.  *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (Under the "rule of the last antecedent," a clause or phrase "should ordinarily be read as modifying only the noun or phrase that it immediately follows[.]").[5]

*Second*, a basic rule of statutory construction is to "[r]ead on."  *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012); *see Local Union 1261, Dist. 22, United Mine Workers v. Federal Mine Safety & Health Review Comm'n*, 917 F.2d 42, 45 (D.C. Cir. 1990) ("If the first rule of statutory construction is 'Read,' the second rule is 'Read On!'").  The ensuing provisions of Subsection 1252(e)(3)(A) confirm that the Subsection's opening paragraph means what it says.  Congress enumerated the judicial challenges the provision allows, which include whether "any regulation issued to implement such section[] is constitutional," and whether "a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the [Secretary] to implement [expedited removal]

_____

Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e).

[5] There is no dispute that jurisdiction under this provision extends as well to this court's appellate review of a district court decision.  *See* 8 U.S.C. § 1252(e)(3)(C)–(D).

20

is not consistent with applicable provisions of [the INA] or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A)(ii).

*Third*, earlier in Section 1252, Congress underscored its preservation of judicial review over legal challenges to the rules implementing the expedited removal system by thrice qualifying its limitations on judicial review "relating to section 1225(b)(1)" by emphasizing that review is barred "except as provided in subsection (e)[.]"   8 U.S.C. § 1252(a)(2)(A) (formatting modified); *see also id.* § 1252(a)(2)(A)(i, ii, & iv).

**2**

Notwithstanding Subsection 1252(e)(3)'s plain textual coverage of the types of legal and constitutional claims leveled by the Associations, the Secretary points back to the general limitations on judicial review catalogued in Subsection 1252(a)(2).  That argument does not work.

The Secretary is correct that Subsection 1252(a)(2) identifies three categories of "[m]atters not subject to judicial review."  *See* 8 U.S.C. § 1252(a)(2)(A)–(C).  Those include matters relating to (A) expedited removal, (B) denials of discretionary relief, and (C) orders against criminals (which the Secretary agrees is not relevant here).  *Id.*  Reading the statute as a whole, the Secretary's argument against judicial review runs aground on the statutory text.

*(i)  Subsection A*

Subsection A is entitled "[r]eview relating to section 1225(b)(1)," and so speaks specifically to and directly governs jurisdiction over challenges to the expedited removal scheme.  8 U.S.C. § 1252(a)(2)(A) (formatting modified).  The Secretary notes that Subsection A generally bars judicial

21

review of (i) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of [expedited] removal"; (ii) "a decision by the [Secretary] to invoke the provisions of such section"; (iii) "the application of [the expedited removal] section to individual aliens, including the [credible-fear determination]"; and (iv) "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)[.]" *Id.* § 1252(a)(2)(A).[6]

Those provisions hurt rather than help the Secretary's argument.  That is because, as noted earlier, romanettes (i), (ii),

---

[6] Subsection A provides in full:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—

(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

(ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

(iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

(iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to

22

and (iv) each expressly reserve jurisdiction "as provided in subsection (e)" for constitutional and legal challenges to the Secretary's rules and procedures implementing the expedited removal system. Those provisions textually embrace the Secretary's decision in the Expansion Designation "to invoke" and "to implement" both in "procedure[] and polic[y]" the full reach of authority conferred by Congress in the expedited removal provision, 8 U.S.C. § 1252(a)(2)(A)(ii & iv). So the statute's plain text steers us right back to the grant of jurisdiction in Subsection 1252(e)(3) over precisely the type of legal claims that the Associations press.[7]

The Secretary resists that straightforward reading in two ways.

First, the Secretary argues that Section 1252(e) only allows the initiation of a lawsuit in district court in Washington, D.C. by an individual during those few short days that the person is in expedited removal proceedings (which almost invariably is conducted somewhere outside of Washington, D.C.). The Secretary points out that Section 1252(e) is titled "[j]udicial review of orders under section 1225(b)(1)[.]" Secretary Br. 22–23. But read as a whole, the text says

---

implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A).

[7] Romanette (iii) applies specifically to a challenge to the "application" of the expedited removal process to an "individual[.]" Those individuals must funnel their challenges to their final orders of removal into habeas corpus review rather than through Section 1252(e). *See* 8 U.S.C. § 1252(a)(2)(A)(iii), (e)(2).

23

otherwise.[8]    While romanettes (i) and (iii) refer to claims pressed by individuals to whom the expedited removal scheme is being "appli[ed]" or an order of removal is being "implement[ed]," the other two romanettes for which review under Subsection 1252(e)(3) is specifically authorized are not textually confined to claims arising from individual removal actions.  *Compare* 8 U.S.C. § 1252(a)(2)(A)(i & iii), *with id.* § 1252(a)(2)(A)(ii) (covering challenges to "a decision by the [Secretary] to invoke the [expedited removal] provisions"), *and id.* 1252(a)(2)(A)(iv) (encompassing claims related to the "procedures and policies adopted by the [Secretary] to implement the [expedited removal] provisions").  So Congress included within Subsection 1252(e)(3) two categories of claims that, by their terms, are not confined to individual expedited-removal proceedings, including specifically the type of legal challenge to the Expansion Designation rule advanced here.  *Id.* § 1252(e)(3)(A)(i and ii).

The dissenting opinion echoes this argument, contending that "Section 1252(e) simply does not address designations * * * rather it explicitly preserves judicial review of policies only in the context of 'determinations[.]'"  Dissent Op. at 15.  But that reading forsakes the text of the statute, which expressly permits review of "determinations under section 1225(b) * * * *and its implementation*," 8 U.S.C. § 1252(e)(3)(A) (emphasis added).    And again in Subsection 1252(a)(2)(A)(iv), the statute expressly assigns to Subsection 1252(e)(3)'s jurisdiction claims that exclusively

---

[8] Section headings "are tools available for the resolution of a doubt about the meaning of a statute."  *Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)).  But they "cannot substitute for the operative text of the statute."  *Id.*; *see also Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he title of a statute * * * cannot limit the plain meaning of the text.").

24

involve challenges to "procedures and policies adopted by the [Secretary] to implement [the statute]" divorced from any individual determination. *Id.* § 1252(a)(2)(A)(iv).

Second, the Secretary points to this court's rejection of a challenge to an expedited-removal rule in *American Immigration Lawyers Association v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000). That mixes apples and oranges. *American Immigration* rejected third-party organizational standing by the American Immigration Lawyers Association itself as a basis to sue under Subsection 1252(e)(3). *See id.* at 1354. The case did not address associational standing to prosecute a case on behalf of individuals directly regulated and affected by the challenged rule. *Id.* at 1357 (explaining that the Association alleged that the challenged rule violated "not their rights or the rights of their members, but the constitutional and statutory rights of unnamed aliens who were or might be subject to the statute and regulations").

In fact, *American Immigration* specifically contemplated that litigation could be brought by affected individuals themselves. *See* 199 F.3d at 1359 ("From all we can gather, Congress must have contemplated that lawsuits challenging [actions] would be brought, if at all, by individual aliens who—during the sixty-day period—were aggrieved by the statute's implementation.").

That makes sense. Whether aggrieved individuals sue on their own or band together through a representative association does not change the nature of the lawsuit as seeking to remedy the individual members' injuries arising from the Expansion Designation. That is because associational (sometimes called "representational") standing is derivative and reflective of individual standing. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("[A]n association may have standing solely as the

representative of its members."); *see also American Legal Found. v. FCC*, 808 F.2d 84, 90 (D.C. Cir. 1987) (Associations can "be described as 'but the medium through which individuals * * * seek to make more effective the expression of their own views[.]'") (quoting *Telecommunications Research & Action Ctr. v. Allnet Commc'n Servs., Inc.*, 806 F.2d 1093, 1095–1096 (D.C. Cir. 1986)).[9]

To sum up, Subsection 1252(e)(3) expressly provides for jurisdiction over the very type of claim that the Associations are bringing on behalf of their individual members.[10]

_____

[9] Associational standing is particularly common in situations like this where proceeding as individuals would identify the plaintiffs to the government as targets of the very enforcement actions they challenge as unlawful.

[10] The dissenting opinion proffers a lengthy analysis of the differences between designations, orders, and determinations, Dissent Op. at 14–16, that not even the Secretary advanced. The dissenting opinion contends that Subsection 1252(e)(3) permits review only of orders of removal and determinations, both of which "are directed to individual aliens[.]" Dissent Op. at 14–15. The plain statutory text says otherwise, specifically providing for review of Section 1225(b)'s "implementation," "regulation[s]," "written policy directive[s], written policy guideline[s], or written procedure[s]." 8 U.S.C. § 1252(e)(3)(A)(i & ii); *see also* H.R. REP. NO. 828, 104th Cong., 2d Sess. 219 (1996) (explaining that "procedures and policies to implement [8 U.S.C. § 1225(b)(1)]" are reviewable under Section 1252(e), while "[i]ndividual determinations under [8 U.S.C. § 1225(b)(1)] may only be reviewed under new [Subsections § 1252(e)(1)–(2)]"). That difference is borne out in the statutory text. Subsection 1252(e)(2), which is titled "[h]abeas corpus proceedings[,]" permits "[j]udicial review of any determination under section 1225(b)(1) of this title[.]" 8 U.S.C. § 1252(e)(2) (formatting modified). By contrast, Subsection 1252(e)(3) sweeps more broadly, permitting "[j]udicial

26

*(ii)  Subsection B*

The Secretary next points to Subsection B of Section 1252 as foreclosing jurisdiction over the Associations' legal challenges.   But that provision addresses what Congress labeled "[d]enials of discretionary relief[.]"   8 U.S.C. § 1252(a)(2)(B) (formatting modified).     The Secretary's decision to exercise his conferred statutory powers to expand the scope of expedited removal, *id.* § 1225(b)(1)(A)(iii)(I), is a general rulemaking governing the removal procedures to be applied in a certain context, not a denial of discretionary relief.

The plain text of Subsection B bears its title out.  That provision is divided into Clause (i) and Clause (ii), which specify the decisions not subject to judicial review.  *See* 8 U.S.C.  § 1252(a)(2)(B)(i & ii).    Clause (i) provides an enumerated list of discretionary forms of individual relief from removal or exclusion that are generally immune from judicial review.   *Id.* § 1252(a)(2)(B)(i).   Those include individual waivers of inadmissibility that were based on certain criminal offenses, *id.* § 1182(h), or based on fraud or misrepresentation, *id.* § 1182(i); cancellation of removal, *id.* § 1229b; permission for voluntary departure, *id.* § 1229c; and adjustment of status, *id.* § 1255.  *See id.* § 1252(a)(2)(B)(i); *see also Kucana*, 558 U.S. at 247–248.    Clause (i) makes no mention of administrative   decisions   generally   implementing   the

---

review of determinations under section 1225(b) of this title *and its implementation*[.]"  *Id.* § 1252(e)(3) (emphasis added) (formatting modified).    Congress knew how to limit judicial review to "determinations" under the statute if it wished but chose not to do so in Section 1252(e)(3).  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

27

expedited-removal procedure or anything of that nature. (Understandably, as that subject is already specifically and exhaustively covered by Subsection A.)

The Secretary relies on Clause (ii), which removes jurisdiction over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"  8 U.S.C. § 1252(a)(2)(B)(ii).

The problem for the Secretary is that the Supreme Court has instructed that Clause (ii)'s reference to "any other decision or action" is a "catchall provision," the meaning of which is "instruct[ed]" by "[t]he [C]lause (i) enumeration." *Kucana*, 558 U.S. at 246–247.  In *Kucana*, the government argued to the Supreme Court that Clause (ii) pertains only to those "substantive decisions * * * made by the Executive in the immigration context as a matter of grace, things that involve whether aliens can stay in the country or not." *Id.*

Based on the statutory structure, the Supreme Court held that those "[o]ther decisions specified by statute 'to be in the discretion of the Attorney General,' and therefore shielded from court oversight by § 1252(a)(2)(B)(ii), are of a like kind" as those identified in Clause (i). *Kucana*, 558 U.S. at 248.  The Court's recitation of the type of decisions covered by Clause (ii) proves the point.  The Court interpreted Clause (ii)'s reach as capturing decisions under "§ 1157(c)(1) (discretion to admit refugees 'determined to be of special humanitarian concern to the United States'); § 1181(b) (discretion to waive requirement of documentation for readmission; [and] § 1182(a)(3)(D)(iii) (discretion to waive, in certain cases, inadmissibility of aliens who have affiliated with a totalitarian party)." *Kucana*, 558 U.S. at 248.

28

That reading is bolstered by the reference at the end of Clause (ii).  After specifying that those types of discretionary decisions are nonreviewable, the provision explicitly carves out from the jurisdictional bar another type of discretionary substantive relief from removal for individuals—asylum claims.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (excluding "the granting of relief under section 1158(a) of this title" from the prohibition on judicial review).

The Supreme Court repeated that understanding of Subsection B's scope recently in *Nasrallah v. Barr*, No. 18-1432, 2020 WL 2814299, at *8 & n.5 (U.S. June 1, 2020).  There, the Court again described Subsection B as barring judicial review of "challenges to *orders denying discretionary relief*, including cancellation of removal, voluntary departure, adjustment of status, certain inadmissibility waivers, and other determinations 'made discretionary by statute.'"  *Id*. at *8 (emphasis added) (quoting *Kucana*, 558 U.S. at 248).  The Court then specifically distinguished the procedures for "*expedited* removal proceedings," which the Court noted are governed by Subsection A and Section 1252(e).  *Id.* at *8 n.5; *see also Kucana*, 558 U.S. at 248 (stating that Subsection B applies not to discretionary judgments about removal *procedures*, but to individualized discretionary judgments regarding relief from removal that, if overturned on judicial review, would "direct the Executive to afford the alien substantive relief" from removal); *Zhu v. Gonzales*, 411 F.3d 292, 293–294 (D.C. Cir. 2005) (applying the ban on judicial review in Clause (ii) to the Attorney General's decision, in response to individual applications, not to exercise his discretion to waive work certification requirements).

In short, the statutory text, confirmed by the Supreme Court's holding in *Kucana* and reaffirmed in *Nasrallah*,

29

focuses Clause (ii)'s bar on individualized forms of discretionary relief from removal or exclusion, which is not the type of generally applicable rulemaking governing removal *procedures* undertaken by the Secretary in this case.[11]

A wider view of Section 1252 affords still more relevant perspective on the Secretary's argument.  Even where it applies, Subsection B's jurisdictional bar does not apply to challenges based on "constitutional claims or questions of law."  8 U.S.C. § 1252(a)(2)(D).  Instead, the statute allows such claims to be "raised upon a petition for review filed with an appropriate court of appeals[.]"  *Id.*; *see also Guerrero-Lasprilla*, 140 S. Ct. at 1068–1069.[12]  That tells us two things.

---

[11] The dissenting opinion asserts that *Kucana* stands for the proposition that all decisions statutorily committed to the Secretary's discretion fall within Subsection B's ambit.  *See* Dissent Op. at 10–11.  But *Kucana* teaches two things—not just one.  First, decisions made discretionary by *regulation* do not fall within Subsection B's jurisdictional bar.  *See Kucana*, 558 U.S. at 237.  Second, Clause (i) "is instructive in determining the meaning of [Clause] (ii)[.]"  *Id.* at 247.  We draw on that second teaching in interpreting Clause (ii)'s reach here.  The dissenting opinion also points to the government's brief in *Kucana*, which identified the Designation Provision as "explicitly grant[ing] the Attorney General * * * 'discretion' to make a certain decision."  *See* 558 U.S. at 247 n.14 (referring generally to Respondent's Br. 19–20 n.11, *Kucana v. Holder*, No. 08-911, 2009 WL 2028903 (July 13, 2009)).  The Designation Provision certainly does confer expansive discretion on the Secretary.  But that footnote served only to distinguish statutory from regulatory conferrals of discretion, which is not an issue in this case.  *Kucana*, 558 U.S. at 247 & n.14.

[12] The dissenting opinion claims that we "mistakenly rel[y]" on Subsection D.  Dissent Op. at 17.  Not so.  As directed by the Supreme Court, we just look to Subsection D as part of the relevant

30

First, whatever Subsection B's jurisdictional bar covers, it is not the type of challenges to the Secretary's regulations, orders, policies, and directives specifically implementing the expedited removal scheme for which Section 1252(e) expressly grants jurisdiction—and that are brought by the Associations here. What IIRIRA does in Section 1252 is route those legal and constitutional challenges to two different fora. Those involving orders denying discretionary relief in individual cases are covered by Subsection B and are routed to federal courts of appeals across the United States. *See* 8 U.S.C. § 1252(a)(2)(D); *see also Nasrallah*, 2020 WL 2814299, at *8 n.5 (treating separately Subsection B's area of application and the statutory provisions that govern in the expedited removal context, including Section 1252(e)). And those challenges pertaining to the expedited removal program must be filed in the District of Columbia district court. *See id.* § 1252(e)(3).[13]

Second, what pervades Subsection 1252(a)(2) is Congress's commitment to preserving the jurisdiction of federal courts to review constitutional and legal challenges to the decisions otherwise covered by its general bars on judicial review. *See Guerrero-Lasprilla*, 140 S. Ct. at 1072–1073 (discussing Congress's calibration of the statute to allow for legal and constitutional challenges in the wake of *INS v. St. Cyr*, 533 U.S. 289 (2001)). The Secretary's and dissenting opinion's proposed interpretation of the statute, by contrast,

---

statutory context. *See Guerrero-Lasprilla*, 140 S. Ct. at 1070–1071; *see also Kucana*, 558 U.S. at 245 (same).

[13] It is well established "that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

31

would broadly preclude such review in the expedited removal context.

**B**

While establishing jurisdiction gets the Associations through the courthouse door, it does not keep them there. They also need a cause of action to prosecute. That is where the Associations' APA notice-and-comment and reasoned decisionmaking claims founder.

**1**

The APA's judicial review provisions, 5 U.S.C. §§ 701–706, "provide 'a limited cause of action for parties adversely affected by agency action.'" *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (quoting *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006)); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 317 n.47 (1979) ("Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331.").

But that cause of action is not available where, among other things, "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Department of Commerce v. New York*, 139 S. Ct. 2551, 2567 (2019); *Oryszak*, 576 F.3d at 525 ("Because the APA does not apply to agency action committed to agency discretion by law, a plaintiff who challenges such an action cannot state a claim under the APA.").

The APA exception for actions committed to agency discretion by law is read "quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Department of Commerce*, 139 S. Ct. at 2568 (quoting *Weyerhaeuser Co. v.*

32

*United States Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018)).

But rare does not mean never.  The Designation Provision, which empowers the Secretary to decide the extent to which expedited removal will operate within statutory bounds, 8 U.S.C.  § 1225(b)(1)(A)(iii)(I),  falls  squarely  within Section 701(a)(2)'s restrictive mold.

The Designation Provision allows the extension of expedited removal procedures "as designated by" the Secretary "to any or all" individuals who have not been admitted or paroled into the United States and who cannot demonstrate that they have been continuously present in the United States for two years.  8 U.S.C. § 1225(b)(1)(A)(iii)(I); *see id.* § 1225(b)(1)(A)(iii)(II).  Critically, "[s]uch designation shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time."  *Id.* § 1225(b)(1)(A)(iii)(I).

There could hardly be a more definitive expression of congressional intent to leave the decision about the scope of expedited removal, within statutory bounds, to the Secretary's independent judgment.  The "forceful phrase 'sole and unreviewable discretion,'" by its exceptional terms, heralds Congress's judgment to commit the decision exclusively to agency discretion.  *See Bourdon v. United States Dep't of Homeland Sec.*, 940 F.3d 537, 542 (11th Cir. 2019).  For example, in *Webster v. Doe*, 486 U.S. 592 (1988), the Supreme Court stressed that an agency's power to terminate an employee whenever the official "shall *deem* such termination necessary or advisable" "fairly exudes deference[.]"  *Id.* at 600; *see also Drake v. Federal Aviation Admin.*, 291 F.3d 59, 72 (D.C. Cir. 2002) (statute that permits an official to act

33

whenever she "*is of the opinion*" affords "virtually unbridled discretion").

Congress's addition of the phrase "and unreviewable discretion" to "sole" doubles down on the confinement of the judgment to one decisionmaker, and one decisionmaker. The natural meaning of the statutory text is that, unless the Secretary crosses the statute's bounds (which is not argued in this appeal), no second opinions are allowed.

Tripling down, Congress teamed "sole and unreviewable discretion" with the additional authority to modify that unreviewable decision "at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). That statutory language confines the judgment to the Secretary's hands and, in so doing, inescapably seeks to withdraw the decision from APA review.

Of course, a statute's grant of "broad discretion to an agency does not render the agency's decisions completely nonreviewable under the 'committed to agency discretion by law' exception" unless the court also determines that the "statutory scheme[,] taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985) (per curiam). If no standards for judging the agency action "are discernable, meaningful judicial review is impossible, and agency action is shielded from the scrutiny of the courts," *Drake*, 291 F.3d at 70, "at least [as] long as the agency's action does not otherwise infringe some constitutional right or protection," *id.* at 72.

The Designation Provision checks that box as well. It provides no discernible standards by which a court could evaluate the Secretary's judgment. In the hunt for applicable guidance, we consider "both the nature of the administrative action at issue and the language and structure of the statute that

34

supplies the applicable legal standards for reviewing that action." *Secretary of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (quoting *Drake*, 291 F.3d at 70).

With respect to the nature of the agency action, the Associations are correct that the designation is not the type of judgment that, as a matter of tradition, is presumptively committed to agency discretion. Certain actions, like refusals to initiate enforcement proceedings, criminal charging decisions, and the allocation of funds from a lump-sum appropriation, have long been regarded as committed to agency discretion. *See Twentymile*, 456 F.3d at 156 & n.6. The designation decision does not fall within one of those almost-automatically-unreviewable categories.

But that does not move the ball far in the Associations' favor. It means only that a "presumption of [APA] reviewability" attaches. *Sierra Club v. Jackson*, 648 F.3d 848, 856 (D.C. Cir. 2011).

So the question becomes whether the language or structure of the statute provides substantive legal standards for a court to apply. The Designation Provision does not. The Provision states only that the Secretary "may" apply expedited removal "to any or all [eligible] aliens" under the statute. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I). The individuals statutorily subject to expedited removal are those "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the[y] ha[ve] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[.]" *Id.* § 1225(b)(1)(A)(iii)(II). The Associations do not allege that the Secretary's expansion of the designation exceeded those statutory bounds.

35

That is it.  Neither the statutory text nor structure provides any other legal standards constraining the Secretary's discretionary judgment.  The statute says only that the Secretary is authorized to designate the groups that fall within statutory bounds in his "sole and unreviewable discretion" and may modify such designation "at any time."  *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I).  In looking for judicially administrable standards by which to judge the Secretary's decision, that language is an empty vessel.

The Associations insist that "[t]he INA is not 'drawn so that it furnishes no meaningful standard.'"  *See* Associations' Response Br. 36 (quoting *Department of Commerce*, 139 S. Ct. at 2568).  But they do not back that up by identifying any such meaningful standard.  Instead, they reason that "[t]he expedited removal statute delineates a process by which officers decide whether expedited removal applies and whether noncitizens should receive further proceedings on their claims for protection or regarding lawful status."  *Id.*  As a result, the Associations claim the Secretary was "required to consider the ability to administer these standards accurately and fairly when applying expedited removal to the new class of noncitizens."  *Id.*

That argument misses the mark.  The standards identified by the Associations apply to the screening process laid out in a different part of Section 1225(b).  *See* 8 U.S.C. § 1225(b)(1)(A)(i)–(ii).  The Secretary's designation authority, however, derives from a separate statutory provision.  *See id.* § 1225(b)(1)(A)(iii).  And Congress deliberately chose in the Designation Provision to commit such enforcement and resource judgments to the Secretary's "sole and unreviewable discretion[.]"  *Id.* § 1225(b)(1)(A)(iii)(I).

36

At bottom, while the Associations want the court to substantively superintend the Secretary's designation judgment even when the Secretary stays within statutory bounds, the search for governing standards comes up empty. That judgment is committed to agency discretion by law and, under Section 701 of the APA, there is no cause of action to evaluate the merits of the Secretary's judgment under APA standards.[14]

**2**

While there is no APA cause of action for substantive review of the Secretary's designation, the Associations separately argue that the Secretary was obligated to make the designation through the formal APA notice-and-comment rulemaking process. The Associations are correct in one respect: Even when a decision is committed to agency discretion by law, and so is immune from substantive review, the agency's decision may still be subject to notice-and-comment rulemaking. *See Lincoln v. Vigil*, 508 U.S. 182, 195 (1993); *see also American Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995) ("[W]e note that under the APA the ultimate availability of substantive judicial review is *distinct* from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply."). But

---

[14] Because there is no argument before us that the Secretary's designation decision exceeded the bounds of statutory authority granted by the INA and because the district court did not address the Associations' statutory claims under the INA and constitutional claims in granting a preliminary injunction, *see Make the Road*, 405 F. Supp. 3d at 25 n.12, we do not address whether there would be a cause of action under the APA or otherwise if the Secretary expanded expedited removal beyond the statute's bounds or otherwise violated the INA, or if the Secretary's actions were unconstitutional.

here, the statute renders the formal notice-and-comment rulemaking regime inapplicable.

For starters, a central purpose of notice-and-comment rulemaking is to subject agency decisionmaking to public input and to obligate the agency to consider and respond to the material comments and concerns that are voiced. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("An agency must consider and respond to significant comments received during the period for public comment."); *see also Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials Safety Admin.*, 741 F.3d 1309, 1312 (D.C. Cir. 2014) ("An agency's failure to respond to relevant and significant public comments generally 'demonstrates that the agency's decision was not based on a consideration of the relevant factors.'") (quoting *Thompson v. Clark*, 741 F.2d 401, 409 (D.C. Cir. 1984)).

But the Designation Provision is explicit that the Secretary is under no duty to consider the views of others in expanding or contracting the scope of the designation. That decision is in the Secretary's "sole" discretion. 8 U.S.C. § 1225(b)(1)(A)(iii)(I). That means that the Secretary alone has the power to make the designation entirely independent of the views of others.

On top of that, "part of the purpose of notice and comment rulemaking is to ensure the parties develop a record for judicial review." *American Clinical Lab.*, 931 F.3d at 1206; *see also International Union, United Mine Workers v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005) ("[Rulemaking n]otice requirements are designed * * * to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review.").

38

Yet there is no need to create a record for judicial review where there is no cause of action for substantive judicial review of the designation decision. The decision is in the Secretary's "unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii)(I).

Finally, the Secretary is permitted to modify the designation "at any time," 8 U.S.C. § 1225(b)(1)(A)(iii)(I), which in this context necessarily means without taking the time to first go through the usually lengthy notice-and-comment rulemaking process. The power to modify "at any time" and in his "sole discretion" also means that the Secretary would be free to ignore the comments that the notice-and-comment process produces. Under those circumstances, the notice-and-comment procedure would be an empty, yet time-consuming, exercise—all form and no substance. Where Congress leaves the notice-and-comment process no work to do and expressly authorizes the Executive Branch to exercise its unreviewable discretion "at any time," the APA does not require an agency to undertake the process for its own sake.

One last point. The dissenting opinion discusses, at length, whether the district court possessed authority to issue an injunction and whether nationwide injunctions are appropriate. It seems rather obvious that, having held that there is no APA cause of action for the Associations to pursue in this appeal, we need not address whether an injunctive remedy would be available if there were a cause of action.

Of course, to the extent the dissenting opinion implies some jurisdictionally troublesome lack of redressability, Dissent Op. at 18, then we must dispel that concern. Which is easily done.

Section 1252(f) prohibits only injunctions against "the operation of the provisions of part IV of this subchapter" as amended by IIRIRA. 8 U.S.C. § 1252(f). It does not proscribe

39

issuance of a declaratory judgment, which the Associations sought here, *see* J.A. 38–39. The Supreme Court has specifically held that Section 1252(f) does not bar declaratory relief. *Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019). So, like the Supreme Court, we "need not resolve whether we would have jurisdiction" to enter an injunction to establish Article III redressability because the district court "had jurisdiction to entertain the plaintiffs' request for declaratory relief[.]" *Id.*; *see also Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[I]t is apparent that the jurisdictional limitations in [Section 1252(f)] do not encompass declaratory relief."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010) (holding that Section 1252(f) covers only injunctive relief); *Arevalo v. Aschroft*, 344 F.3d 1, 7 (1st Cir. 2003) (same).

## IV

We hold that the district court properly exercised jurisdiction under 8 U.S.C. § 1252(e) over the Associations' claims, but that there is no cause of action under the APA to scrutinize the Secretary's designation decision so long as it falls within statutory and constitutional bounds. We therefore reverse the district court's grant of a preliminary injunction and remand for further proceedings consistent with this opinion.

*So ordered.*

Rao, *Circuit Judge*, dissenting: Citing national security and resource allocation concerns, the Secretary of Homeland Security designated additional aliens for expedited removal from our borders. *See* 84 Fed. Reg. 35,409 (July 23, 2019) ("Expansion Designation"). Although no alien has been removed under the new designation, several immigrant rights organizations ("plaintiffs") brought a preenforcement challenge to the Secretary's policy. The district court granted a nationwide preliminary injunction halting enforcement of the Expansion Designation. While the majority reverses the district court's preliminary injunction on the merits, I would dismiss plaintiffs' claims at the threshold. The Immigration and Nationality Act ("INA") expressly bars the courts from reviewing the Secretary's discretionary decisions regarding expedited removal. One of the few checks on the independent judiciary comes from Congress's ability to set the jurisdiction of the inferior federal courts. Because the majority exercises jurisdiction over a claim that Congress explicitly withholds from our review, I respectfully dissent.

I.

Although the majority begins with the statutory presumption of reviewability, I begin from a different starting point, the constitutional power of Congress to strip lower federal courts of jurisdiction over a class of cases. The Constitution vests Congress with the power "[t]o constitute Tribunals inferior to the supreme Court," U.S. Const. art. I, § 8, cl. 9, a power that naturally "includes [the] lesser power to 'limit the jurisdiction of those Courts,'" *Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812)). *See also Sheldon v. Sill*, 49 U.S. 441, 449 (1850); John Harrison, *The Power of Congress to Limit the Jurisdiction of Federal Courts and the Text of Article III*, 64 U. Chi. L. Rev. 203, 209 (1997) ("Congress may give [inferior federal courts] all the jurisdiction the Constitution

2

permits, or none at all, or anything in between, as far as Article III is concerned.").

Under our Constitution, inferior federal courts have no power except that which is specifically granted by Congress. "[O]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Bowles v. Russell*, 551 U.S. 205, 211 (2007) (quotation omitted); *Hudson*, 11 U.S. (7 Cranch) at 33 ("All … Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them."). In consequence, Congress may withhold inferior federal court jurisdiction "in the exact degrees and character which to Congress may seem proper for the public good." *Cary v. Curtis*, 44 U.S. 236, 245 (1845). Indeed, "[t]o deny this position would be to elevate the judicial over the legislative branch of the government, and to give to the former powers limited by its own discretion merely." *Id.* Congress's power to confer or to withhold inferior federal court jurisdiction is a vital element of the Constitution's structure of separated and limited powers. *See Patchak*, 138 S. Ct. at 907 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).[1]

---

[1] Congress, of course, cannot "violate other constitutional provisions" in the exercise of its control over jurisdiction. *Patchak*, 138 S. Ct. at 906. Neither plaintiffs nor the majority suggest that the INA's denial of jurisdiction over this non-habeas preenforcement challenge would transgress a constitutional boundary. Nor could they, given Congress's broad power over immigration and longstanding limits on judicial review. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 856 (2018) (Thomas, J., concurring in part and concurring in the judgment) ("[I]n the context of deportation … limits on the courts' jurisdiction have existed for almost as long as federal immigration laws, and … this Court has repeatedly affirmed the constitutionality of those limits."); *see also Zadvydas v. Davis*,

3

Congress's constitutional power over inferior federal jurisdiction means any presumption of reviewability must give way to "clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quotation marks omitted); *Kucana v. Holder*, 558 U.S. 233, 252 (2010). Despite this fundamental precept, the majority begins its analysis with the presumption of reviewability and then interprets each separate jurisdiction stripping provision in light of that presumption. Maj. Op. 15–17. Yet the presumption, originally a creature of the Administrative Procedure Act, does not operate to place a thumb on the scale when interpreting jurisdiction stripping provisions. For example, in *Kucana v. Holder*, the Supreme Court looked to the presumption only after an extensive discussion of the text and structure of the INA, and to dispel "[a]ny lingering doubt about the proper interpretation." 558 U.S. at 251. And as the majority notes, the presumption applies only when a statute is "reasonably susceptible to divergent interpretation." Maj. Op. 16 (quoting *Guerrero-Lasprilla*, 140 S. Ct. at 1069). The majority does not cite a single case in which a court employs the presumption at the outset to evade a clear jurisdiction stripping provision. Maj. Op. 15–17.[2] The

_____

533 U.S. 678, 687 (2001) (noting these longstanding limits on review).

[2] The cases cited by the majority provide no support for applying the presumption to statutory text that explicitly strips jurisdiction. The majority's reliance upon *Guerrero-Lasprilla* is particularly misleading. Maj. Op. 15. Interpreting the INA's jurisdictional provisions, the Court first "consider[ed] the statute's language." *Guerrero-Lasprilla*, 140 S. Ct. at 1068. Only after concluding that nothing in the "language of the statute" stripped jurisdiction, did the Court refer to the presumption. Far from considering the presumption at the outset or as part of its textual analysis, the Court used it "first" only in a series of rebuttals against the government's counterarguments. *Id.* at 1069–70. *See also SAS Inst., Inc. v. Iancu*,

4

Supreme Court employs the presumption in the immigration context only after examining the text and structure of a jurisdiction stripping statute and finding an ambiguity, or sometimes in response to litigants' counterarguments. *See, e.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494–96 (1991) (analyzing first the text of the INA and only employing the presumption to rebut the petitioner's argument); *see also Guerrero-Lasprilla*, 140 S. Ct. at 1069 (same).

In the non-habeas INA context, this court, like the Supreme Court, either leaves the presumption of reviewability as a final consideration or declines to apply it at all. *See, e.g.*, *Nasrallah v. Barr*, No. 18-1432, 2020 WL 2814299, at *8 & n.5 (U.S. June 1, 2020) (interpreting INA jurisdiction stripping provision with no mention of the presumption); *Kucana*, 558 U.S. at 251–52 (looking to the presumption only to resolve "lingering doubt"); *Zhu v. Gonzales*, 411 F.3d 292, 294 (D.C. Cir. 2005) (holding that section 1252(a)(2)(B) stripped jurisdiction without mentioning the presumption). Whatever the merits of applying the APA's presumption of reviewability to a discretionary immigration policy determination, it can be employed only as a tiebreaker, a last resort in the face of ambiguous text. Although the majority places great weight upon the presumption of reviewability, it has no application

138 S. Ct. 1348, 1359 (2018) (applying a precedent holding that an administrative no-appeal provision in the America Invents Act does not preclude judicial review); *NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013) (noting in review of a jurisdiction stripping provision, "[w]e begin, as we must, with the text of the statute" and when "[t]he language is not ambiguous … this court simply is not at liberty to displace, or to improve upon, the jurisdictional choices of Congress") (quotation marks omitted); *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011) (holding that a statute stripped jurisdiction because it is "not 'reasonably susceptible to divergent interpretation'") (quoting *Kucana*, 558 U.S. at 251).

5

here, where the statute's plain meaning is not ambiguous and not susceptible to divergent interpretations. As discussed below, Congress could hardly have been clearer in systematically leaving expedited removal designations to the Secretary's discretion and then removing discretionary decisions from judicial review. The majority ignores a fundamental constitutional limit on the courts in favor of a presumption of recent mint and uncertain grounding.[3]

While courts should not shy from exercising jurisdiction properly conferred, we cannot decide cases explicitly withheld from our decision. The Supreme Court has explained that we must interpret jurisdiction stripping statutes to mean what they say. *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968) ("[A] jurisdictional statute … must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes."); *Bruner v. United States*, 343 U.S. 112, 116 (1952) ("[W]hen [the] terms [of a jurisdiction stripping statute] are unambiguous we may not speculate on probabilities of intention.") (quoting *Merchants' Ins. Co. v. Ritchie*, 72 U.S. 541, 545 (1866)). In the immigration context no less than other areas, "[j]udicial review provisions … are jurisdictional in nature and must be construed with strict fidelity to their terms." *Stone v. INS*, 514 U.S. 386, 405 (1995); *see also Kokkonen v.*

---

[3] The presumption of reviewability is rooted in the Administrative Procedure Act rather than the Constitution. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967). It has since drifted into the jurisdictional setting. *See, e.g.*, *Guerrero-Lasprilla*, 140 S. Ct. at 1077–78 (Thomas, J., dissenting). The Supreme Court, however, has long held the presumption in favor of review must yield when it conflicts with Congress's plenary power over jurisdiction and the political branches' power over immigration. *See Heikkila v. Barber*, 345 U.S. 229, 234 (1953) (noting that the APA presumption of reviewability does not displace Congress's plenary power over jurisdiction and the political branches' control over aliens).

6

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal jurisdiction "is not to be expanded by judicial decree"). A narrow reading of jurisdiction stripping provisions runs the danger that inferior federal courts will arrogate to themselves a power withheld by Congress.[4] With these principles in mind, I evaluate whether this court has jurisdiction over plaintiffs' challenge to the Expansion Designation.

II.

In 1996, "Congress amended the INA aggressively to expedite removal of aliens lacking a legal basis to remain in the United States." *Kucana*, 558 U.S. at 249. These amendments to the INA established a category of aliens eligible for an expedited removal process that substantially shortens the time between the apprehension and deportation of an illegally present alien. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 302, 110 Stat. 3009-546, 3009-579 (1996) (codified at 8 U.S.C. § 1225). The statutory class includes aliens who entered the United States unlawfully and have been physically present in the country for less than a continuous two-year period. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Section 1225(b) entrusts the Secretary of Homeland Security with the "sole and unreviewable" discretion to designate which aliens within the

---

[4] The Supreme Court has long admonished that lower courts should exercise only the jurisdiction conferred by Congress. *Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922) ("The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part.") (citations omitted); *cf. Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10 (1799) ("[T]he fair presumption is … that a cause is without [an inferior federal court's] jurisdiction, until the contrary appears.").

7

statutory class will be subject to expedited removal proceedings. *Id.* § 1225(b)(1)(A)(iii)(I). In section 1252, also added by IIRIRA, Congress reinforced the Secretary's authority by stripping the courts of jurisdiction to review discretionary policies and various other decisions relating to the expedited removal provisions, subject only to limited exceptions. *See id.* §§ 1252(a)(2)(A), (B).

Following the Supreme Court's approach in *Kucana*, 558 U.S. 233, which also interpreted section 1252's jurisdiction stripping provisions, I look to the text and structure of the INA and conclude that Congress withdrew judicial review over plaintiffs' challenge to the Expansion Designation. First, section 1252(a)(2)(B) withdraws jurisdiction to review any decision committed to the Secretary's discretion by the INA. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Because the Expansion Designation was committed to the Secretary's "sole and unreviewable discretion," we have no jurisdiction to review it. *See id.* § 1225(b)(1)(A)(iii)(I). Second, section 1252(a)(2)(A) precludes challenges to the Secretary's policies implementing expedited removal, unless the challenge is brought in the context of an individual determination. *See id.* §§ 1252(a)(2)(A), 1252(e)(3)(A). Because the Expansion Designation is a policy implementing expedited removal and no individual determination has been made here, we have no jurisdiction under section 1252(a)(2)(A). Finally, there is no longstanding tradition of judicial review of expedited removal designations. Contrary to the majority's strained reading, Congress stripped jurisdiction from the federal courts to consider this preenforcement challenge to the Expansion Designation.

8

A.

While the INA is complex, it unambiguously strips the federal courts of jurisdiction to review the Secretary's Expansion Designation. *See Kucana*, 558 U.S. at 243–45 (looking first to the INA's text). Quite simply, Congress left expedited removal to the Secretary's discretion and then barred discretionary decisions from judicial review.

Under the INA, expedited removal designations are committed to the Secretary's "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Since the inclusion of the expedited removal provision, the Secretary has designated various subgroups of aliens for expedited removal. *See* Maj. Op. 7–9. The Expansion Designation under review is a further exercise of this discretionary authority to extend expedited removal to inadmissible aliens within "the full remaining scope of [the Department's] statutory authority" subject to "limited exceptions." 84 Fed. Reg. at 35,409.

Section 1252(a)(2)(B) explicitly shields a wide range of discretionary decisions from judicial review, namely "any other decision or action of … the Secretary of Homeland Security the authority for which is specified under this subchapter[5] to be in the discretion of … the Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii). The phrase "*any* other" "suggests a broad meaning." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218–19 (2008) (quotation marks omitted). The term "any other" is so broad the Court has found it displaces "the rule of *ejusdem generis*" because such "expansive language offers no indication whatever that Congress intended [a] limiting construction" of the class of covered subjects. *Harrison v. PPG*

---

[5] "[T]his subchapter" refers to 8 U.S.C. §§ 1151–1381. The expedited removal provision is codified at 8 U.S.C. § 1225.

9

*Indus., Inc.*, 446 U.S. 578, 588–89 (1980). By including the sweeping phrase "any other," the statute removes power to review any discretionary decision assigned to the Secretary by the INA. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). As the majority recognizes, Maj. Op. 32–33, expedited removal designations are explicitly assigned to the Secretary's "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Reading section 1252(a)(2)(B) and the expedited removal provision together provides a clear statutory directive withdrawing judicial review over the Secretary's Expansion Designation.

Moreover, this interpretation is consistent with the Supreme Court's analysis of section 1252(a)(2)(B). In *Kucana*, the Court held that the term "any other decision" "barred court review of discretionary decisions only when Congress itself set out the [Secretary's] discretionary authority in the statute." 558 U.S. at 247 (interpreting 8 U.S.C. § 1252(a)(2)(B)). The Court defined the type of decisions protected by this "catchall provision" to broadly include "those made discretionary by statute" rather than those made discretionary by regulation. *Id.* at 246–48. The Expansion Designation unmistakably fits within this class because the INA, rather than a regulation, confers upon the Secretary the "sole and unreviewable discretion" to designate aliens for expedited removal.

Similarly, in *Zhu v. Gonzales*, this court enforced section 1252(a)(2)(B)'s jurisdiction stripping provision according to its terms. 411 F.3d at 294–95. We held it was a discretionary decision for purposes of section 1252(a)(2)(B) when the Attorney General[6] used his authority to waive certain

---

[6] The Attorney General's INA authority over the "detention and removal program" was transferred to the Secretary of Homeland

10

requirements he "deems … to be in the national interest." *Id.* at 293 (quoting 8 U.S.C. § 1153(b)(2)(B)(i)). We first noted that a provision need not specifically use the term "discretion" to bring a decision within the jurisdictional bar of section 1252(a)(2)(B). *Id.* at 294–95. It was enough that the statute entrusted the decision to the Attorney General's "expertise and judgment unfettered by any statutory standard whatsoever." *Id.* at 295.[7] Here the INA is even more explicit and places the designation of expedited removal in the "sole and unreviewable discretion" of the Secretary. The majority's interpretation cannot be reconciled with our decision in *Zhu*.

Moreover, the Court in *Kucana* clarified that discretionary decisions such as the Expansion Designation would not be subject to judicial review. The Court construed the "character of the decisions" insulated from judicial review by section 1252(a)(2)(B) to include "substantive decisions … made by the Executive in the immigration context as a matter of grace, things that involve whether aliens can stay in the country or not." *Kucana*, 558 U.S. at 247 (internal quotation marks omitted).[8] The Secretary's designation authority over

---

Security under the Homeland Security Act of 2002. *See* 6 U.S.C. §§ 251, 557.

[7] After determining "§ 1252(a)(2)(B)(ii) precludes judicial review," the *Zhu* court explained it need not reach the government's argument that the Attorney General's decision was "committed to agency discretion by law" under the APA. 411 F.3d at 294.

[8] In determining that the INA included numerous "decisions falling within § 1252(a)(2)(B)'s compass," the Court cited the respondent's identification of "over thirty provisions in the relevant subchapter of the INA" that "explicitly grant the Attorney General … 'discretion' to make a certain decision." *Kucana*, 558 U.S. at 247 n.14 (quoting Brief for Respondent 19–20 & n.11). One of the "thirty provisions" was the expedited removal designation provision at issue here, 8

11

expedited removal involves precisely this type of substantive discretionary policy. *Kucana* therefore undermines the majority's interpretation of section 1252(a)(2)(B) to cover only "individualized forms of discretionary relief from removal or exclusion" and not broader policy decisions such as the Expansion Designation. Maj. Op. 29. The text plainly bars judicial review of more than individual claims because it bars review of "any other decision or action" of the Secretary "regardless of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B).

The majority also asserts that the Expansion Designation is not "of a like kind" as the other decisions covered by section 1252(a)(2)(B), Maj. Op. 27, but the Court expressly defined the "genre" of decisions shielded from review as "those made discretionary by legislation." *Kucana*, 558 U.S. at 246–47. No party disputes that the text of the INA, not a regulation, entrusts the Secretary with discretion over designating aliens for expedited removal. Therefore, consistent with *Kucana*, plaintiffs' challenge to the Expansion Designation is barred by section 1252(a)(2)(B).

Finally, the majority's reliance upon *Nasrallah v. Barr*, 2020 WL 2814299, is misplaced. Maj. Op. 28, 30. The Court explicitly stated that its decision "has no effect" on the jurisdiction stripping provisions of sections 1252(a)(2)(A) and (B). *See Nasrallah*, 2020 WL 2814299, at 8 & n.5.[9]

---

U.S.C. § 1225(b)(1)(A)(iii)(I). Brief for Respondent 19–20 n.11, *Kucana v. Holder*, 2009 WL 2028903 (U.S. 2009).

[9] Contrary to the majority's assertion, Maj. Op. 28, *Nasrallah* did not interpret section 1252(a)(2)(B) to apply only to "orders," a reading that would ignore the statute's text, which explicitly applies to "any other [discretionary] decision or action." 8 U.S.C. § 1252(a)(2)(B). The Court addressed section 1252(a)(2)(B) to answer a potential

12

B.

The structure and context of the INA's jurisdictional provisions also confirm that the Secretary's Expansion Designation is barred from judicial review. *Cf. Kucana*, 558 U.S. at 245 (looking to statutory context in interpreting section 1252(a)(2)(B)). Section 1252(a)(2) includes two jurisdiction stripping provisions that are relevant here. As I have already explained, the Secretary's Expansion Designation plainly falls within section 1252(a)(2)(B) because it is a discretionary policy. The majority maintains, however, that the Expansion Designation fits *only* within section 1252(a)(2)(A), which applies to expedited removal decisions, and that jurisdiction is preserved through one of the exceptions found in section 1252(e). Maj. Op. 18–25. Yet as the majority's analysis proves, the Expansion Designation is *both* a discretionary action and an action that pertains to expedited removal, and therefore fits within both sections 1252(a)(2)(A) and (B). Because both provisions begin with the clause "Notwithstanding any other provision of law," 8 U.S.C. §§ 1252(a)(2)(A), (B), jurisdiction can be ousted by either provision, but jurisdiction can be preserved only by finding an exception to both provisions.

This interpretation is directly supported by the Supreme Court's recent decision in *Nasrallah*, which maintains that each of section 1252(a)(2)'s jurisdiction stripping provisions can serve as an independent ground to bar jurisdiction. *See* 2020 WL 2814299, at *8 & n.5 (noting that even if a claim is not

_____

"slippery slope" argument: "If factual challenges to [Convention Against Torture] orders may be reviewed, what other orders will now be subject to factual challenges in the courts of appeals?" *Nasrallah*, 2020 WL 2814299, at *8. In addressing orders, the Court did not thereby eliminate section 1252(a)(2)(B)'s application to other discretionary decisions or actions, such as the Expansion Designation.

13

barred under section 1252(a)(2)(C), it can be independently
barred under sections 1252(a)(2)(A) or (B)). *Nasrallah*
reinforces that even if jurisdiction over the expedited removal
designation is not precluded by section 1252(a)(2)(A), it is still
independently precluded by section 1252(a)(2)(B).

Thus, even assuming the majority is correct that an
exception to section 1252(a)(2)(A) preserves jurisdiction over
the Expansion Designation, the majority fails to explain how
section 1252(a)(2)(B) does not bar jurisdiction, since it applies
"notwithstanding" anything in section 1252(a)(2)(A). The best
reading of the statute must harmonize the application of both
of these provisions to the Secretary's Expansion Designation,
because "there can be no justification for needlessly rendering
[these two provisions] in conflict if they can be interpreted
harmoniously." Antonin Scalia & Bryan A. Garner, READING
LAW: THE INTERPRETATION OF LEGAL TEXTS 180 (2012). The
plain meaning of sections 1252(a)(2)(A) and (B) readily allows
such harmonization because both sections prohibit judicial
review of the Secretary's designation policies regarding
expedited removal.

Although the jurisdictional ouster in section 1252(a)(2)(B)
is sufficient to bar judicial review of plaintiffs' claims, it
provides useful context to explain how jurisdiction over the
Expansion Designation is also barred by section 1252(a)(2)(A),
which states that "no court shall have jurisdiction to review …
except as provided in subsection (e), procedures and policies
adopted by the [Secretary] to implement the provisions of
section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(iv). The
Expansion Designation is a policy adopted by the Secretary to
implement the expedited removal provision, section
1225(b)(1). Therefore, we have no jurisdiction to review the
Designation, unless an exception can be found in section

14

1252(e). Contrary to the majority's arguments, section 1252(e) does not save jurisdiction here.

Section 1252(e) covers "Judicial review of orders under section 1225(b)(1)." *Id.* § 1252(e). In section 1225(b)(1), Congress created three classes of decisions: orders of removal, determinations, and designations. *See id.* § 1225(b)(1). Orders of removal and determinations are directed to individual aliens, while designations apply broadly to "any or all aliens" designated by the Secretary for expedited removal. *Id.* § 1225(b)(1)(A)(iii)(I). Moreover, the power to enter determinations and orders of removal is placed in immigration officers while designations are entrusted exclusively to the Secretary's discretion.[10] Both section 1252(a)(2)(A) and section 1252(e) treat these three types of decisions differently.

---

[10] Section 1225(b) authorizes immigration officers to make several "determination[s]," all of which are made in the context of an individual alien. For example, immigration officers can "determine[]" that an alien … is inadmissible" and can also "determine[]" whether "an alien has a credible fear of persecution." 8 U.S.C. §§ 1225(b)(1)(A)(i), (b)(1)(B)(ii). Immigration officers may also enter "orders" of removal to an individual alien. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(B)(iii)(I) ("[T]he officer shall order the alien removed."). Finally, the Secretary is authorized to make two "designations": the expedited removal designation, *id.* § 1225(b)(1)(A)(iii)(I), and the designation of where asylum interviews will take place, *id.* § 1225(b)(1)(B)(i). "Designations" thus differ from "orders" and "determinations" in two ways. First, they apply broadly rather than in the context of an individual alien. Second, they are assigned to the Secretary rather than an immigration officer. Contrary to the majority's implication, Maj. Op. 25 n.10, when properly presented with a case concerning the scope of a statute, judges have an obligation to read the words of that statute, with or without assistance from the Executive Branch.

15

As relevant here, the Expansion Designation fits within section 1252(a)(2)(A)(iv), which precludes review of "procedures and policies" implementing expedited removal, except as preserved by section 1252(e). Section 1252(e) expressly addresses orders and determinations. It constrains review of orders, *id.* § 1252(e)(5), and grants review of certain aspects of determinations, *id.* § 1252(e)(2), (3). Yet section 1252(e) nowhere authorizes judicial review of an expedited removal "designation." Instead, it allows courts to review a "written policy directive," which arguably would include the Expansion Designation, but clarifies that such review is authorized solely in the context of individual "determinations under section 1225(b) … and its implementation." *Id.* § 1252(e)(3)(A). Thus, an expedited removal "determination" is a necessary condition to obtain judicial review of a policy regarding expedited removal.

Section 1252(e) simply does not address designations, which are discretionary policies of the Secretary; rather it explicitly preserves judicial review of policies only in the context of "determinations," a term with a specific meaning under section 1225(b). *See supra* n.10. Contrary to the majority, the term "its implementation" cannot be read expansively to include the Secretary's "designations," because these are a separate category of decisions regarding expedited removal.[11] It would be inconsistent with the text and structure

---

[11] The majority reads section 1252(e)'s authorization of challenges to "determinations under section 1225(b) … and its implementation" to allow for a preenforcement challenge to designations in the absence of an individual determination. This reading, however, renders the term "determinations" surplusage. Section 1252(e) allows a court to overturn an individual determination only on the ground that a written policy or procedure is contrary to law; it does not allow an alien to challenge the factual or legal conclusions underpinning the determination. The "determination" is thus the

16

of the statute for Congress to permit preenforcement challenges to policies such as the Expansion Designation in a subpart that allows limited review only of individual determinations.

Because section 1252(e) does not revive jurisdiction for preenforcement challenges to designation policies, the Expansion Designation cannot be reviewed under the plain meaning of section 1252(a)(2)(A), which bars judicial review of policies implementing expedited removal. *See* 8 U.S.C. § 1252(a)(2)(A)(iv).

Thus, both sections 1252(a)(2)(A) and (B) bar judicial review of this suit.[12] Congress coherently and systematically removed jurisdiction to review the Secretary's Expansion Designation in the absence of any affected individual. As this court has previously explained, the structure of section 1252

_____

necessary procedural vehicle to challenge policies implementing the INA. If an alien or group could rely on the phrase "its implementation" to bring a challenge absent an individual determination, the term "determinations under section 1225(b)" would be superfluous. 8 U.S.C. § 1252(e)(3)(A); *see also Am. Immigration Lawyers Ass'n (AILA) v. Reno*, 199 F.3d 1352, 1359–60 (D.C. Cir. 2000).

[12] The majority's attempt to use the general-specific canon of interpretation, Maj. Op. 30 n.13, fails because the canon applies only when statutory provisions conflict. *See* READING LAW 183 (general-specific canon applies only "when the attribution of no permissible meaning can eliminate the conflict"). Here the provisions read together create no conflict, but instead consistently strip the courts of jurisdiction over plaintiffs' preenforcement suit. Moreover, it is hardly clear that one provision here is general and the other specific. *Compare* 8 U.S.C. § 1252(a)(2)(A) (addressing expedited removal), *with id.* § 1252(a)(2)(B) (addressing discretionary decisions). The Expansion Designation is both an expedited removal policy and a discretionary policy, a fact the majority's reading cannot square.

17

demonstrates that "Congress meant to allow actions only by aliens who have been subjected to the summary procedures contained in § 1225(b) and its implementing regulations." *Am. Immigration Lawyers Ass'n (AILA) v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000).

In addition, the majority mistakenly relies on section 1252(a)(2)(D).[13] Maj. Op. 29–30. This section allows review of certain constitutional and legal claims "raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). But it has no applicability to expedited removal designations, which can be reviewed, if at all, only in an action brought in federal district court pursuant to the procedures set forth in section 1252(e). *See* 8 U.S.C. § 1252(a)(2)(A). To the extent the majority suggests the structure of section 1252(a)(2) evinces a commitment to preserve review, the Supreme Court has reached precisely the opposite conclusion: "[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts— indeed, that that can fairly be said to be the theme of the legislation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486–87 (1999) (citing, *inter alia*, 8 U.S.C. §§ 1252(a)(2)(A), (B)).

Reading on in the statute, section 1252(f) further confirms that courts cannot engage in preenforcement review of the legal

---

[13] Congress added section 1252(a)(2)(D) to provide an "adequate substitute for habeas." *Guerrero-Lasprilla*, 140 S. Ct. at 1071–72 (internal quotation marks omitted). Contrary to the majority's assertion, Maj. Op. 29–30, this provision tells us little about this case because "[i]mmigration law has long drawn a distinction between … declaratory and injunctive relief … and habeas relief." *Jennings*, 138 S. Ct. at 858 (Thomas, J., concurring in part and concurring in the judgment) (citing *INS v. St. Cyr*, 533 U.S. 289, 309–10 (2001)); *see also Heikkila*, 345 U.S. at 230.

18

validity of an expedited removal designation. 8 U.S.C. § 1252(f)(1). Section 1252(f) allows for injunctive relief only "with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." *Id.* Yet no individual proceedings have been initiated against any member of the plaintiff organizations. *Cf. AILA*, 199 F.3d at 1359 (noting that section 1252(f) bolsters the conclusion that "Congress must have contemplated that lawsuits challenging its enactment would be brought, if at all, by individual aliens who … were aggrieved by the statute's implementation").

Congress cannot confer jurisdiction on the courts to issue a merely advisory opinion; but that would be the consequence of reading section 1252(e)(3)(A) to confer jurisdiction over plaintiffs' suit. Even if the court found the Expansion Designation to be unlawful, it is precluded from providing any injunctive relief. *See* 8 U.S.C. § 1252(f)(1); *cf. AILA*, 199 F.3d at 1359–60 ("Congress meant to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied.").

The text and structure of the INA's jurisdiction stripping provisions demonstrate that we lack the authority to review plaintiffs' claims regarding the Expansion Designation.

C.

Reading the INA's jurisdictional bars to bar jurisdiction is further supported by the fact that there is no "longstanding exercise of judicial review" of expedited removal designations. *Kucana*, 558 U.S. at 237. Twenty years ago, this court upheld the expedited removal system generally against constitutional challenge. *See AILA*, 199 F.3d 1352. Since that time, no court has examined the merits of the Secretary's expedited removal designations. *See* 82 Fed. Reg. 4,902 (Jan. 17, 2017); 69 Fed.

19

Reg. 48,877 (Aug. 11, 2004); 67 Fed. Reg. 68,924 (Nov. 13, 2002). Moreover, the Expansion Designation is not like the individual immigration determinations courts generally review. Instead, it is more like an enforcement policy, because the agency must balance different factors, including ordering its immigration priorities, contending with limited resources, and fulfilling statutory requirements. *Cf. Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985).

In the Expansion Designation, the Secretary made clear he was exercising his discretion pursuant to his statutory authority under the INA and "issuing the New Designation to use more effectively and efficiently [the agency's] limited resources to fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders." 84 Fed. Reg. at 35,411. Exercises of enforcement discretion are not ordinarily subject to judicial review. *See, e.g.*, *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1032 (D.C. Cir. 2007) ("These [enforcement] judgments—arising from considerations of resource allocation, agency priorities, and costs of alternatives—are well within the agency's expertise and discretion."); *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986) (Scalia, J.) ("[T]he statement here in question pertains to an agency's exercise of its enforcement discretion—an area in which the courts have traditionally been most reluctant to interfere.").

The INA leaves expedited removal designations to the "sole and unreviewable discretion" of the Secretary and he may modify them "at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Congress clearly placed designations within the class of discretionary enforcement policies not traditionally subject to judicial review. *Cf. Kucana*, 558 U.S. at 237. Such an explicit conferral of discretion "reflects a congressional recognition" that the Secretary "can make necessary adjustments for unforeseen developments and changing requirements" without

20

judicial interference. *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (internal quotation marks omitted). This historical lack of judicial review reinforces the plain meaning of the text and structure of the INA to preclude review of the Secretary's Expansion Designation. *See Kucana*, 558 U.S. at 251–52.

\*\*\*

The majority concludes that plaintiffs' claims are not barred and are properly reviewed under (apparently) either general federal question jurisdiction or jurisdiction conferred directly by the INA. Maj. Op. 18 (citing 28 U.S.C. § 1331), 39 (citing 8 U.S.C. § 1252(e)). Yet the INA strips jurisdiction over discretionary decisions as well as policies to implement expedited removal absent an individual "determination." These provisions separately and independently preclude judicial review of the Expansion Designation and apply "notwithstanding any other provision of law." *See* 8 U.S.C. §§ 1252(a)(2)(A), (B). This means the INA's jurisdictional ousters apply notwithstanding general federal question jurisdiction under section 1331. *See Patchak*, 138 S. Ct. at 905. In sum, neither the INA nor section 1331 allow us to exercise jurisdiction over plaintiffs' suit.

III.

Even on the majority's view that the district court had jurisdiction over plaintiffs' suit, the INA categorically prohibits injunctive relief absent proceedings against an individual alien. The anti-injunction provision states in full:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions

21

> of part IV of this subchapter,[14] as amended by
> the [IIRIRA], other than with respect to the
> application of such provisions to an individual
> alien against whom proceedings under such part
> have been initiated.

8 U.S.C. § 1252(f)(1). This provision speaks in the broadest possible terms and unambiguously prohibits the preenforcement injunction the district court entered here.

The expedited removal provision allows the Secretary in his "sole and unreviewable discretion" to designate classes of aliens up to the statutory maximum for expedited removal "at any time." *Id.* § 1225(b)(1)(A)(iii)(I). The Secretary is entrusted with carrying this provision into operation. *See id.* By enjoining the Secretary's Expansion Designation, the district court "enjoin[ed] … the operation" of the expedited removal provision. *See Nken v. Holder*, 556 U.S. 418, 431–32 (2009) (noting the anti-injunction provision demonstrates congressional "concern[] about the possibility that courts would enjoin application of particular provisions of the INA").

The anti-injunction provision carves out a single exception for "the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). Here, the exception has not been triggered because expedited removal proceedings have not "been initiated" against any member of the plaintiff organizations, nor indeed, against any individual. Thus, no court "other than the Supreme Court" has jurisdiction to enjoin the operation of the Expansion Designation. *Id.*; *see American-Arab Anti-Discrimination Comm.*, 525 U.S. at 481–82 (the

---

[14] "[P]art IV of this subchapter" refers to 8 U.S.C. §§ 1221–1231. The expedited removal provision is codified as 8 U.S.C. § 1225.

22

anti-injunction provision "is nothing more or less than a limit on injunctive relief"); *Padilla v. ICE*, 953 F.3d 1134, 1150 (9th Cir. 2020) ("Congress intended [the anti-injunction provision] to prohibit injunctive relief with respect to organizational plaintiffs."). The anti-injunction provision thus runs in parallel to the jurisdiction stripping provisions, which allow judicial review only in the context of concrete individual "determinations." *See* 8 U.S.C. §§ 1252(a)(2)(A), 1252(e)(3).

The district court reached an opposite conclusion by relying on a dubious distinction between enjoining the statute and enjoining the Secretary from carrying the statute into operation. *See Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 68 n.37 (D.D.C. 2019). If the anti-injunction provision applies only to injunctions restraining the statutory text, it is a nullity, indeed an absurdity, because injunctions run against an officer, not statutory text. The anti-injunction provision prohibits injunctions restraining "*the operation of* the provisions of part IV of this subchapter." 8 U.S.C. § 1252(f)(1). Of course the Expansion Designation is not part of the statute; however, designations are the mechanism by which the Secretary carries his expedited removal authority into "operation." By enjoining the Secretary from issuing the Expansion Designation, the district court "enjoin[ed] or restrain[ed] the operation of" the expedited removal designation provision in violation of the INA.[15] The district

---

[15] The Sixth Circuit rejected a similar argument that "the district court was not enjoining or restraining the statutes" under section 1252(f)(1) as "implausible on its face" because "[t]he district court … created out of thin air a requirement … that does not exist in the statute; and adopted standards that the government must meet." *Hamama v. Adducci*, 912 F.3d 869, 879–80 (6th Cir. 2018). So too here. "If these limitations on what the government can and cannot do under the … provision are not 'restraints,' it is not at all clear what would qualify as a restraint" under section 1252(f). *Id.*

23

court thus not only lacked jurisdiction over the case, it also lacked jurisdiction to enter this injunctive remedy.[16]

* * *

Although I generally agree with the majority's conclusion that the expedited removal designation is committed to agency discretion by law, we have an antecedent duty to ensure jurisdiction. Here, the INA unambiguously withholds jurisdiction over plaintiffs' suit to enjoin the Expansion Designation. Courts must respect limits on their jurisdiction, particularly in areas such as immigration that implicate power traditionally wielded by the political branches. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("[T]he power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (quotation marks omitted); *Heikkila*, 345 U.S. at 233–34 (noting the "peculiarly political nature of the legislative power over aliens"). Decisions of the Supreme Court and this circuit have consistently read the INA's jurisdiction stripping provisions to mean what they say.

---

[16] The district court's entry of nationwide relief is particularly egregious in light of the INA's anti-injunction provision, which explicitly limits relief to an alien "against whom proceedings … have been initiated." 8 U.S.C. § 1252(f)(1). While the legality of nationwide injunctions is in doubt under both the Constitution and federal statutes, *see Trump v. Hawaii*, 138 S. Ct. 2392, 2424–29 (2018) (Thomas, J., concurring), it is especially problematic here given the INA's unambiguous foreclosure of any injunctive relief outside a proceeding against an individual alien. Rather than limiting relief to individual affected aliens, as required by the statute, the district court upended the Secretary's discretion through a "cosmic" injunction extending across the land. *DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay).

24

In light of these precedents, the majority manages to "knit" together an argument to preserve jurisdiction only by glossing over the plain meaning of the INA and relying on the presumption of judicial review. Maj. Op. 18. Yet because Congress possesses plenary authority over the jurisdiction of the lower federal courts, the presumption of reviewability must yield to a clear statement removing jurisdiction. "[W]hat the Congress gives, the Congress may take away." *Knapp Medical Center v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017). With respect to expedited removal, Congress was crystal clear in conferring designations to the Secretary's discretion and barring our review over preenforcement challenges. By disregarding the INA's multi-layered jurisdictional bar, the majority encroaches upon Congress's plenary power over jurisdiction and upon the political branches' authority over immigration. We witness yet another marker on the road to government by injunction. I respectfully dissent.